## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH DEANGELIS, Individually and<br>On Behalf of All Others Similarly Situated, | Civil Action No. 11-CIV-7866 |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION BY CITY OF<br>PHILADELPHIA BOARD OF PENSIONS |
| v. | AND RETIREMENT AND PALISADE<br>STRATEGIC MASTER FUND (CAYMAN) |
| JON S. CORZINE, et al., | LIMITED FOR APPOINTMENT AS LEAD<br>PLAINTIFF UNDER SECTION 27(a)(3)(B) |
| Defendants. | OF THE SECURITIES ACT OF 1933 AND<br>21D(a)(3)(B) OF THE SECURITIES |
| ERNESTO ESPINOZA, Individually and<br>On Behalf of All Others Similarly Situated, | EXCHANGE ACT OF 1934 AND FOR<br>APPROVAL OF LEAD PLAINTIFFS'<br>SELECTION OF LEAD COUNSEL |
| Plaintiff, | |
| v. | |
| JON S. CORZINE, et al., | Civil Action No. 11-CIV-7960 |
| Defendants. | |
| VASIL PETRO, on behalf of himself and<br>all others similarly situated, | |
| Plaintiff, | |
| v. | |
| JON S. CORZINE, et al., | Civil Action No. 11-CIV-8253 |
| Defendants. | |
| DOUBLE D TRADING, LLC, Individually<br>And On Behalf of All Others Similarly<br>Situated, | |
| Plaintiff, | Civil Action No. 11-CIV-8271 |

v.

JON S. CORZINE, et al.,

        Defendants.

------------------------------------------------------

IBEW LOCAL 90 PENSION FUND and PLUMBER'S PIPEFITTERS' LOCAL #562 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

JON S. CORZINE, et al.,

        Defendants.

Civil Action No. 11-cv-08401

------------------------------------------------------

CONTEXT PARTNERS FUND, L.P., on behalf of itself and all others similarly situated,

        Plaintiff,

v.

JON S. CORZINE, et al.,

        Defendants.

Civil Action No. 11-CIV-8888

------------------------------------------------------

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 3

I. MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS ................................ 7

    A. The Procedures Mandated by the PSLRA ..................................................... 7

    B. Movants Satisfy the Requirements of the PSLRA ......................................... 9

        a. Movants Are Believed To Have The Largest Financial Interest In The Relief Sought By The Class ......................................... 9

        b. Movants Satisfy The Requirements Of Rule 23 ........................... 10

            i. Rule 23 Standards ............................................................ 10

            ii. Movant's Claims Are Typical Of The Claims Of The Class ................................................................................. 11

            iii. Movants Will Fairly And Adequately Represent The Interests Of The Class ...................................................... 12

    C. THIS COURT SHOULD APPROVE THE PROPOSED FIXED INCOME LEAD PLAINTIFFS' CHOICE OF LEAD COUNSEL ...................................... 13

II. CONCLUSION ...................................................................................................... 15

i

**TABLE OF AUTHORITIES**

Page(s)

CASES

Chill v. Green Tree,
  181 F.R.D. 398 (Minn. 1998) ..................................................................................11

Eisenberg v. Gagnon,
  766 F.2d 770 (3d Cir. 1985)...................................................................................11

Gluck v. CellStar Corp.,
  976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................11

Greebel v. FTP Software,
  939 F. Supp. 57 (D. Mass. 1996) .............................................................................8

Hoxworth v. Blinder, Robinson & Co., Inc.,
  980 F.2d 912 (3d Cir. 1992)...................................................................................11

In re Cendant Corp. Litig.,
  182 F.R.D. 144 (D.N.J. 1998)...................................................................................9

In re Cendant Corp. Litig.,
  264 F.3d 201 (3rd Cir. 2001) ..................................................................10, 11, 14

In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
  55 F.3d 768 (3rd Cir. 1995) ...................................................................................12

In re Kirschner Medical Corp. Sec. Litig.,
  139 F.R.D. 74 (D. Md. 1991)...........................................................................11, 12

In re MicroStrategy Inc. Sec. Litig.,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ....................................................................13

In re Nice Sys. Ltd. Secs. Litig.,
  188 F.R.D. 206 (D.N.J. 1999).................................................................................10

In re Olsten Corp. Sec. Litig.,
  181 F.R.D. 218 (E.D.N.Y. 1998).............................................................................12

In re Sepracor Inc. Sec. Litig.,
  233 F.R.D. 52 (D. Mass. 2005)...............................................................................10

In re U.S. Bioscience Sec. Litig.,
    Civil Action No. 92-0678 (E.D. Pa.) .................................................................................14

In re: Razorfish, Inc. Sec. Litig.,
    143 F. Supp. 2d. 304 (S.D.N.Y. 2001)............................................................................14

Lax v. First Merchants Acceptance Co.,
    1997 WL 405668 (N.D. Ill. Aug. 11, 1997) ...................................................................13

Lax v. First Merchants Acceptance Corp.,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)..................................................9

Newby v. Enron Corp. (In re Enron Corp. Sec. Litig.),
    2002 U.S. Dist. LEXIS 3688 (S.D. Tex. Feb. 15, 2002) .................................................9

Simpson v. Speciality Retail Concepts, Inc.,
    149 F.R.D. 94 (M.D.N.C. 1993) ....................................................................................12

Wetzel v. Liberty Mutual Ins. Co.,
    508 F.2d 239 (3rd Cir. 1974), cert. denied, 421 U.S. 1011, 95 S. Ct. 2415 (1975)................12

Zinberg v. Washington Bancorp., Inc.,
    138 F.R.D. 397 (D.N.J. 1990).........................................................................................11


STATUTES

15 U.S.C. §77z-1(a) et. seq. ................................................................................. passim

15 U.S.C. § 78u(4) et. seq. ................................................................................... passim

Private Securities Litigation Reform Act of 1995 ............................................... passim

Fed R. Civ. P. 23 .................................................................................................. passim

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION BY CITY OF PHILADELPHIA BOARD OF PENSIONS AND
RETIREMENT AND PALISADE STRATEGIC MASTER FUND (CAYMAN) LIMITED
FOR APPOINTMENT AS LEAD PLAINTIFF UNDER SECTION 27(a)(3)(B) OF THE
SECURITIES ACT OF 1933 AND SECTION 21D(a)(3)(B) OF THE SECURITIES
EXCHANGE ACT OF 1934 AND FOR APPROVAL OF LEAD PLAINTIFFS'
SELECTION OF LEAD COUNSEL**

## INTRODUCTION

Movants City of Philadelphia Board Of Pensions And Retirement ("Board of Pensions")

and Palisade Strategic Master Fund (Cayman) Limited ("Palisade Fund") (together, "Proposed

Fixed Income Lead Plaintiffs" or "Movants") respectfully submit this memorandum of law in

support of their  motion to represent all persons who purchased: (A) notes pursuant to or

traceable to a registration statement filed with the United States Securities and Exchange

Commission ("SEC") by MF Global Holdings Ltd. ("MF Global") dated February 24, 2010

("2010 Registration Statement"), including: (1) the 1.875% Convertible Senior Notes due 2016

("1.875% Convertible Notes"), (2) the 3.375% Convertible Senior Notes due 2018 ("3.375%

Convertible Notes"), and (3) the 6.25% Senior Notes due 2016 ("6.25% Senior Notes")

(together, the "Notes"); and (B) 9.75% Non-Cumulative Convertible Preference Shares, Series B

of MF Global ("9.75% Preferred" or "Preferred Securities"), and to have their chosen counsel,

Berger & Montague, P.C. ("Berger & Montague") approved as Lead Counsel.[1]

---

[1]     As of December 30, 2011, counsel for the Proposed Fixed Income Lead Plaintiffs is not aware of
any complaint on file seeking to represent purchasers of the Preferred Securities.  One of the Movants, the Palisade
Fund, sustained losses of over $6.71 million on the Preferred Securities.

Movants have lost $13,117,673 as a result of purchases of MF Global's Notes and Preferred Securities.[2] To their knowledge, Movants have suffered the largest loss of any member of the MF Global Notes and Preferred Securities class ("Class") seeking appointment as Lead Plaintiff. According to the relevant provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Proposed Fixed Income Lead Plaintiffs are presumptively the "most adequate plaintiff" because, among the purchasers of MF Global Notes and Preferred Securities seeking appointment as Lead Plaintiff, they possess the largest financial interest in the relief sought by the Class. They have a substantial stake in the outcome of this case and will vigorously represent the interests of the Class. They have each signed a certification attesting to their willingness and qualification to participate as a Lead Plaintiff in this action. See Paul Decl. Exhibits A and C. As such, Movants meet the requirements of the PSLRA for appointment as Lead Plaintiff of the Class. Movants are each institutions and representatives of each have spoken prior to the date of this filing and have formed a working relationship and have agreed to work together to prosecute this action on behalf of purchasers of the Notes and Preferred Securities. Movants recognize that representation of purchasers of the Notes and Preferred Securities separate and apart from purchasers of MF Global common stock is crucial because of differing interests and different applicable standards of proof, and have agreed to work cooperatively with any representative of MF Global common stock if such is appointed because of the many similar underlying facts.

---

[2]   The Proposed Fixed Income Lead Plaintiffs' losses for purposes of the current motion are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the enumeration of trading data, as set forth in the sworn certifications of the Proposed Fixed Income Lead Plaintiffs. Damages were calculated by taking the difference between the purchase price and the sale price or the closing price on the date the relevant complaint was filed. The Proposed Fixed Income Lead Plaintiffs' transactions in MF Global's Notes and Preferred Securities are set forth in their certifications, which are attached as Exhibits A and C to the Declaration of Russell D. Paul ("Paul Decl.") submitted herewith. Charts setting forth the Proposed Fixed Income Lead Plaintiffs' losses are set forth at Exhibits B and D to the Paul Decl.

Moreover, the Proposed Fixed Income Lead Plaintiffs satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the Class and they will fairly and adequately represent the interests of the Class.  Movants have retained competent, experienced and nationally recognized counsel with extensive experience and expertise in securities fraud and other class actions to prosecute this securities litigation. Movants seek this Court's approval of their selection of Lead Counsel in order to zealously advance the interests of the Class in this litigation.

As further discussed below, the Proposed Fixed Income Lead Plaintiffs have satisfied each of the requirements of the PSLRA and, therefore, are best qualified for appointment as Lead Plaintiff for the Class, and their choice of counsel should be accepted by this Court.

## STATEMENT OF FACTS

MF Global provided execution and clearing services for exchange-traded and OTC derivative products, non-derivative foreign exchange products and securities.  Jon Corzine, former CEO of Goldman Sachs and former Senator and Governor of New Jersey, joined MF Global in March 2010 as Chairman and CEO.  Corzine was purportedly attempting to transform MF Global from a futures broker into a boutique investment bank.  However, while attempting this transformation, Corzine and certain other directors and officers of MF Global failed to disclose that the Company was undercapitalized, exposed to excessive risk due to its massive investments in debts issued by certain European governments, and did not have proper risk controls in place to manage these risks.

3

On November 4, 2011, *The Wall Street Journal* reported that MF Global may have engaged in "window dressing" in order to artificially lower the quarter-ending debt levels reported to shareholders.  Specifically, the article stated that:

> For the past two years, MF Global Holdings Ltd. may have disguised its debt levels to investors by temporarily slashing the debt it was carrying before publicly reporting its finances each quarter, according to an analysis by The Wall Street Journal.
>
> The activity, referred to in the financial industry as "window dressing," suggests that the troubled financial firm was shouldering more risk and using more borrowed funds to facilitate its trading than investors could easily detect from the firm's regulatory filings.
>
> * * *
>
> For now, there is no indication that MF Global's investments of customer assets contributed to the discrepancy.  People familiar with the investigation say MF Global may have taken cash from customer accounts to meet margin calls sparked by ratings downgrades and the declining value of its big bets on European government debt.
>
> Still, the firm's aggressive approach to the issue speaks to its strong appetite for risk, even as European markets spiraled lower this summer.
>
> But that appetite was not always completely apparent to investors.  The Journal analysis shows that MF Global consistently had short-term borrowings that were much lower at the ends of its fiscal quarters than its average and peak levels for the full quarters.
>
> In each of the past seven quarters, from late 2009 to mid-2011, MF Global's quarter-end borrowings were an average 16% lower than the quarterly average, according to the Journal's analysis.  The quarter-end numbers were lower than the peak for each quarter by an average of 24%, according to the analysis.

Thus, since around November 2009, the Company's earnings press releases and quarterly and annual reports contained false and misleading financial information related to its total debt and total liabilities.  This "window dressing" also masked the Company's true risk levels.

4

The Company also made false and misleading statements during the class period in its SEC filings regarding the true nature of it exposure to European debt instruments. The Company's SEC filings did not disclose the dollar amounts for the gross purchases of European sovereign debt, instead burying the amounts in percentage figures of a larger base of assets and leaving investors to calculate the numbers themselves. The Company disclosed in a press release on October 25, 2011, the true exposure of $6.3 billion. According to the *Wall Street Journal*, "[t]hat exposure is huge considering the firm took in just $12 million in revenue from principal trading during the last quarter." However, that $6.3 billion exposure was the net amount at risk after hedges. The true exposure was $11.5 billion. Furthermore, the hedges used were short-term hedges that had to be continually rolled over until the bonds matured. This increased the risk of the Company's investment in European debt because there was a chance new short-term hedges couldn't be purchased when needed.

Further, by misrepresenting the Company's exposure to European debt instruments, MF Global had been misstating its capital ratios. MF Global's leverage was so extreme that the true valuation of the European debt instruments would cause the Company to become insolvent.

The Company also made false and misleading statements in its quarterly and annual SEC reports and related Sarbanes Oxley certifications regarding the strength of its internal controls and its risk management framework, and its compliance with regulatory capital requirements. In addition, Defendants made specific public statements that were false, such as when Corzine said during an August 5, 2010 earnings call:

> Systemic exposure for MF Global will be markedly less as highly
> leveraged and concentrated risk held by institutions perceived as too big to
> fail will be constrained. While we also may be constrained by new

5

regulatory environment, the spreading of risks across the system will take
us out of being a collateral victim of a systemic breakdown.  A stronger
system makes for a more secure environment for us.

In truth, the Company's internal and risk controls were not as represented and inadequate

to allow the Company to properly balance risks and rewards as it expanded into risky principal

transactions.  In fact, the Company fired its Chief Risk Officer in January 2011 after he

repeatedly expressed his concerns to the Board about Corzine's growing bet on European bonds.

Further, the Company's repeated assurances of its "strong liquidity position" were false as it was

materially undercapitalized and lacked adequate capital to support its risky transactions,

including its investments in European sovereign debt.  The Company also failed to disclose that

it had been warned by regulators (Finra) that it was operating out of compliance with regulatory

capital requirements and needed to set aside $150 million in additional capital.

Further, in an effort to keep billions of dollars of liabilities off its balance sheet, the

Company engaged in risky repo transactions whereby it borrowed money from investors to

purchase the European sovereign debt, put up that debt as collateral for those loans and then

booked the entire transaction as a sale of the European debt to the investors.  However, this

violates GAAP because a sale only occurs when control is surrendered, and the Company had

not surrendered control of the European debt. By booking the repo transaction as a sale, the

Company's borrowings from investors were kept off the balance sheet.  If the transaction had

been accounted for properly, the borrowings from investors would have remained on the balance

sheet, and the Company's true indebtedness, capital ratios and risk would have been properly

disclosed.

6

In addition, MF Global was not properly segregating its client assets, leading to comingled funds. The Company also may have been diverting customer funds to support is own risky principal transactions, including investments in European sovereign debt.

## I.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

### A.     The Procedures Mandated by the PSLRA

The PSLRA, which is set out in Section 27 of the Securities Act of 1933 and in Section 21D of the Exchange Act, sets forth the specific procedures governing the appointment of Lead Plaintiff(s) and Lead Counsel in securities class action cases. See 15 U.S.C. §77z-1(a)(1) and (a)(3)(B) and 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).[3]

Pursuant to Section 27 of the Securities Act and Section 21D of the Exchange Act, the plaintiff(s) who files the initial action must, within twenty days thereof, publish a notice informing putative class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §77z-1(a)(3)(A)(i) and 15 U.S.C. §78u-4(a)(3)(A)(i). Within sixty days of the publication of the notice, any "person or group of persons" who are members of the putative class may move the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §77z-1(a)(3)(A) and (B), and 15 U.S.C. §78u-4(a)(3)(A) and (B).

Here, counsel in the first-filed action caused the first notice to be published via *PR Newswire* on November 3, 2011. See Paul Decl., Exhibit E. The notice informed purchasers of MF Global securities of their right to seek to serve as Lead Plaintiff by filing a motion "no later

---

[3]     The complaints filed in the above-captioned cases assert claims under both the Securities Act and the Exchange Act.

than January 2, 2011," which became January 3 because the federal courts were closed January 2. The Proposed Fixed Income Lead Plaintiffs have thus timely filed this motion before the expiration of the 60-day period from such publication.

The PSLRA further provides that within ninety days after publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate, the Court shall consider any motion made by a putative class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class. 15 U.S.C. §77z-1(a)(3)(B) and 15 U.S.C. §78u-4(a)(3)(B). In determining who is the "most adequate" plaintiff, the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice ...
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii) and 15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added). See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

Applying the standards, Movants are the most qualified to serve as the lead plaintiff for the Class in this action. During the relevant period, Movants suffered a loss of over $13.1 million on their transactions in MF Global Notes and Preferred Securities. See Paul Decl., Exhibits B & D. This significant loss demonstrates the Proposed Fixed Income Lead Plaintiffs' compelling stake in the litigation. To Movants' knowledge, they have the largest financial

8

interest in the outcome of the litigation of those members of the Class who have come forward and otherwise meet the requirements of Rule 23. Finally, appointment of Movants as lead plaintiffs would advance one of the PSLRA's primary goals of encouraging investors with large financial stakes in the outcome to assume control over securities class actions. Therefore, the Proposed Fixed Income Lead Plaintiffs are presumptively the most adequate plaintiffs for the Class under the PSLRA. <u>See</u> 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb) and 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

**B.      Movants Satisfy the Requirements of the PSLRA**

**a.      Movants Are Believed To Have The Largest Financial Interest In The Relief Sought By The Class**

Based on counsel's knowledge to date, Movants possess the largest and most significant financial interest in the outcome of this litigation of those plaintiffs who purchased the Notes and Preferred Securities at issue and have come forward, and, therefore, is presumed to be the "most adequate" plaintiff. 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb) and 15 U.S.C. §78u(4)(3)(B)(iii)(I)(bb).

Numerous courts have held that the person or group who has the largest financial stake in the litigation, is presumed to be the "most adequate" plaintiff to represent the class. <u>See, e.g.</u>, <u>In re Cendant Corp. Litig.</u>, 182 F.R.D. 144, 145 (D.N.J. 1998); <u>Lax v. First Merchants Acceptance Corp.</u>, 1997 U.S. Dist. LEXIS 11866 at *3 (N.D. Ill. Aug. 6, 1997).

While the PSLRA provides no formula for identifying the movant with the "largest financial interest," courts have recognized that the Court should consider, among other things: (1) the number of shares that the movant purchased during the class period; (2) the total net funds expended by the movants during the class period;(3) the approximate losses suffered by

9

the movant, and (4) number of net shares purchased during the class period.  Newby v. Enron Corp. (In re Enron Corp. Sec. Litig.), 2002 U.S. Dist. LEXIS 3688 at *34 (S.D. Tex. Feb. 15, 2002); see also In re Cendant Corp. Litig., 264 F.3d 201 (3rd Cir. 2001) at 262, citing Lax v. First Merchants Acceptance Corp.; In re Nice Sys. Ltd. Secs. Litig., 188 F.R.D. 206, 217 (D.N.J. 1999).

The Proposed Fixed Income Lead Plaintiffs have suffered a loss of $13,117,673.  See Paul Decl., Exhibits B and D.  Thus, they have a substantial stake in the litigation.  Based on their significant loss, Movants will most effectively represent the interests of the Class and will have the interest and commitment to supervise the litigation.[4]

### b.  Movants Satisfy The Requirements Of Rule 23

### i.  Rule 23 Standards

Section 21(D)(3)(B) of the Exchange Act further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met:

---

[4]    Although one of the Movants, the Board of Pensions, has losses of approximately $46,000 in its transactions in MF Global common stock during the Class Period, and the other Movant, Palisade Fund, has a gain of approximately $3.3 million from its transactions in MF Global common stock during the Class Period (using LIFO), neither Movant seeks to represent a class of purchasers of MF Global common stock.  Moreover, the gains in the common stock are not to be offset against the much larger losses in entirely different fixed income securities that have claims under the 1933 Act which has its own separate statutory measure of damages.  See, e.g., 15 U.S.C. §77k(e); In re Sepracor Inc. Sec. Litig., 233 F.R.D. 52, 54 (D. Mass. 2005) (Lasker, J.).

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the proposed class representative.

Consequently, courts have held that at this preliminary stage of the litigation, the inquiry to the typicality and adequacy prongs of Rule 23(a) should be limited, and the examination of the remaining requirements should be deferred until the plaintiff(s) move for class certification. See, e.g., In re Cendant Corp. Litig., 264 F.3d at 264; Gluck v. CellStar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997) (finding that "[a] comprehensive reading of the statute reveals that, at this stage of the proceedings, [the proposed lead plaintiff] need only make a preliminary showing that it satisfies the typicality and adequacy requirements"); Chill v. Green Tree, 181 F.R.D. 398, 407 (Minn. 1998) ("For purposes [of lead plaintiff analysis] a proposed Lead Plaintiff need only make a preliminary showing that he or she satisfies the typicality and adequacy requirements of Rule 23"). As detailed below, Movants meet the typicality and adequacy requirements of Rule 23.

### ii.   Movant's Claims Are Typical Of The Claims Of The Class

Generally, the typicality requirement is satisfied if the claims arise from the same event, practice or course of conduct that gives rise to the claims of the class members, and are based on the same legal theory. See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir. 1992); Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985); Zinberg v. Washington

Bancorp., Inc., 138 F.R.D. 397, 406-07 (D.N.J. 1990); In re Kirschner Medical Corp. Sec. Litig.,
139 F.R.D. 74, 78-79 (D. Md. 1991).

Movants satisfy this requirement because, like all other members of the Class, they: (1)
purchased MF Global Notes and Preferred Securities during the relevant period; (2) they
purchased the Notes pursuant to a false and misleading registration statement and prospectuses;
and (3) suffered damages thereby. Thus, under Rule 23(a)(3) their claims are typical of those of
other members of the Class since their claims and the claims of the other members of the Class
arise out of the same course of events and are based on the same legal theories. See Simpson v.
Speciality Retail Concepts, Inc., 149 F.R.D. 94, 98 (M.D.N.C. 1993); In re Olsten Corp. Sec.
Litig., 181 F.R.D. 218, 220 (E.D.N.Y. 1998) ("The Court bears a special responsibility to ensure
that the interests of all members of the consolidated securities fraud class action are well-
represented").

### iii.   Movants Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4), the representative party must fairly and adequately protect the
interests of the class. The adequacy of representation turns on two factors: 1) whether the
plaintiff's attorney is qualified, experienced, and generally able to conduct the proposed
litigation; and 2) whether the plaintiff has interests antagonistic to the class. See In re GMC
Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3rd Cir. 1995); Wetzel v. Liberty
Mutual Ins. Co., 508 F.2d 239, 247 (3rd Cir. 1974), cert. denied, 421 U.S. 1011, 95 S. Ct. 2415
(1975); see also, e.g., Simpson, 149 F.R.D. at 102; Kirshner, 139 F.R.D. at 79.

12

Movants meet both these inquiries.  The PSLRA directs this Court to limit its examination of the adequacy of the Proposed Fixed Income Lead Plaintiffs to represent the Class to the existence of any conflicts between the interests of the Proposed Fixed Income Lead Plaintiffs and the members of the Class, and then allow the Lead Plaintiff to retain lead counsel to represent the Class, "subject to the approval of the court."  See 15 U.S.C. §77z-1(a)(3)(B)(v) and 15 U.S.C. §78u4(a)(3)(B)(v).

Movant's interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between their interests and those of the Class.  As detailed above, Movants share numerous common questions of law and fact with the members of the Class and their claims are typical of the claims of other Class members.  Moreover, Movants have selected and retained Berger & Montague to represent them, a firm which is highly experienced in prosecuting securities class actions such as this and whose efforts to date in this action promise vigorous representation of the Class. See Paul Decl., Exhibit F.

**C.    THIS COURT SHOULD APPROVE THE PROPOSED FIXED INCOME LEAD PLAINTIFFS' CHOICE OF LEAD COUNSEL**

The PSLRA vests authority in the Lead Plaintiff, subject to court approval, to select and retain lead counsel.  See 15 U.S.C. §77z-1(a)(3)(B)(v) and 15 U.S.C. §78u-4(a)(3)(B)(v); see also, e.g., Lax v. First Merchants Acceptance Co., 1997 WL 405668 at *5 (N.D. Ill. Aug. 11, 1997).  The Court should not disturb the Proposed Fixed Income Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. §77z-1(a)(3)(B)( iii)(II)(aa) and 15 U.S.C. §78u4(a)(3)(B)(iii)(II)(aa).  See In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("The PSLRA plainly states that a district court's duty is to appoint a lead plaintiff based on the relevant statutory criteria . . . it is the lead

13

plaintiff's duty to select and retain counsel to represent the class . . . a district court should

approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience,

and resources . . .").

Congress' theory in enacting these provisions "was that if an investor with a large

financial stake in the litigation was made lead plaintiff, such a plaintiff--frequently a large

institution or otherwise sophisticated investor--would be motivated to act like a 'real' client,

carefully choosing counsel and monitoring counsel's performance . . ." In re: Razorfish, Inc.

Sec. Litig., 143 F. Supp. 2d. 304, 307 (S.D.N.Y. 2001).

One of the lead plaintiff's most important functions is to "select and retain" lead counsel.

Cendant, 264 F.3d at 265.  The Court should not disturb the Proposed Fixed Income Lead

Plaintiffs' choice of counsel unless necessary to "protect the interests of the [plaintiff] class." 15

U.S.C. §77z-1(a)(3)(B)( iii)(II)(aa) and 15 U.S.C. §78u4(a)(3)(B)(iii)(II)(aa).  Indeed, one of the

best ways for a Court to ensure that [lead plaintiffs] "will fairly and adequately represent the

interests of the Class is to inquire whether the movant has demonstrated a willingness and ability

to select competent class counsel." Cendant, 264 F.3d at 265.  Here, the Proposed Fixed Income

Lead Plaintiffs are seeking the appointment of Berger & Montague as Lead Counsel.

Berger & Montague is a national firm with over 30 years of experience in securities fraud

class action litigation.  It has over 65 lawyers and the resources necessary to litigate a major case

like this one.  Berger & Montague has been repeatedly recognized for its excellent and efficient

representation.  For example, Judge Stewart Dalzell, at the final settlement hearing of  In re U.S.

Bioscience Sec. Litig., Civil Action No. 92-0678 (E.D. Pa.), where Sherrie R. Savett served as

co-lead counsel, stated on April 4, 1994:

The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . ., and the arguments we had on the motion to dismiss [Ms. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come.  (Transcript pp. 39-40.)

Judge Dalzell went on to describe the services of Mrs. Savett as "superb."  (Transcript p. 46.)

See Berger & Montague firm resume at Exhibit F to the Paul Decl.

## II.   CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court: (i) appoint them as Lead Plaintiffs for the Class; (ii) approve their selection of Berger & Montague as Lead Counsel; and (iii) grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: January 3, 2012                    **BERGER & MONTAGUE, P.C.**


s/ Russell D. Paul_____
Sherrie R. Savett
Gary C. Cantor
Russell D. Paul (NY Atty. Reg. # 2361939)
1622 Locust Street
Philadelphia, PA 19103
215-875-3000
215-875-4604 (Fax)

Proposed Lead Counsel for the Class

15