UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH DEANGELIS, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　　　　　Plaintiff,<br><br>　　　　　　　v.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, BRADLEY ABELOW, and MICHAEL G. STOCKMAN.<br><br>　　　　　　　　　　　　　　　　Defendants. | **Case No. 11-cv-07866-VM** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
BY THE BAGWELL GROUP FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Knox Bagwell ("K. Bagwell"); Diana N. Bagwell ("D. Bagwell"); and Mary Ellen Ponder ("Ponder") (collectively the "Bagwell Group") respectfully submits this memorandum in support of its motion for an Order: (1) appointing the Bagwell Group as Lead Plaintiff on behalf of persons or entities who purchased or acquired securities of MF Global Holdings Ltd. ("MF Global" or the "Company") between November 5, 2009 and October 31, 2011, inclusive (the "Class Period"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approving Lead Plaintiff's selection of Pomerantz Haudek Grossman & Gross LLP as Lead Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The Bagwell Group believes that it is the "most adequate plaintiff" under the PSLRA to serve as Lead Plaintiff on behalf of investors in this action. As set forth in more detail below, the Bagwell Group has a significant financial interest in the outcome of this litigation, having sustained a loss of $195,130 on its purchases of MF Global securities during the Class Period (as defined herein). The Certifications required by the PSLRA setting forth the Bagwell Group's transactions in MF Global are attached hereto as Exhibit B. A chart reflecting the calculation of the Bagwell Group's losses is attached hereto as Exhibit C. At this time, the Bagwell Group believes that it is the movant with the largest financial stake in the outcome of this class action.

## FACTUAL BACKGROUND

1

At least seven securities class actions have been filed in the Southern District of New York on behalf of persons or entities who purchased securities of MF Global[1] seeking remedies under the Securities Act of 1933 and/or the Exchange Act.

MF Global provided execution and clearing services for exchange-traded and OTC derivative products, non-derivative foreign exchange products and securities in the cash market. The Company provided access to more than seventy exchanges globally and was a leader by volume on many of the world's largest derivatives exchanges. It was also an active broker-dealer in markets for commodities, fixed income securities, equities, and foreign exchange and

---

[1] The actions are entitled: *Deangelis v. Corzine et al.*, 11-cv-7866-VM; *Espinoza v. Corzine et al.*, 11-cv-7960-VM; *Petro v. Corzine et al.*, 11-cv-8253-VM; *Double D Trading, LLC v. Corzine et al.*, 11-cv-8271-VM; *IBEW Local 90 Pension Fund v. Corzine et al.*, 11-cv-8401-VM; *Daly v. Corzine et al.*, 11-cv-8823-VM; and *Context Partners Fund L.P. v. Corzine et al.*, 11-cv-8888-VM. On November 22, 2011, *Accomazzo v. Corzine et al.*, 11-cv-8467-VM was filed on behalf of persons, other than Defendants, their employees, affiliates and agents, who held money or other assets in MF Global customer accounts as of any time during the period October 24, 2011 through October 31, 2011. On December 5, 2011, *Rodriguez v. Corzine et al.*, 11-cv-8815-VM was filed on behalf of current and former employees of MF Global and its subsidiaries who acquired MF common shares through the 2007 Amended and Restated Long Term Incentive Plan and the Employees Stock Purchase Plan ("ESPP"). Pursuant to this Court's Consolidation Orders, these actions were consolidated for all pretrial purposes with action 11-cv-7866-VM, and all filings in connection with the consolidated action be docketed against the remaining lower numbered case, 11-cv-7866-VM. On December 21, 2011, the *Petro* was voluntarily dismissed.

The *Deangelis* action is on behalf of all investors who purchased or otherwise acquired MF Global common stock between May 20, 2011 and October 28, 2011. The *Espinoza* action is on behalf of all investors who purchased or otherwise acquired MF Global common stock between May 19, 2011 and October 28, 2011. The *Double D Trading, LLC* action is on behalf of all persons or entities who purchased or otherwise acquired the securities of MF Global between November 5, 2009 and October 28, 2011. The *IBEW Local 90 Pension Fund* and *Daly* actions are on behalf of all persons or entities who purchased or otherwise acquired the publicly traded securities of MF Global between February 3, 2011 and October 31, 2011, including those persons or entities who acquired the 1.875% Convertible Senior Notes due 2016 ("1.875% Convertible Notes"); the 3.375% Convertible Senior Notes due 2018 ("3.375% Convertible Notes"); and the 6.25% Senior Notes due 2016 ("6.25% Notes") (collectively, MF Global Notes"), pursuant or traceable to the Company's false and misleading Registration Statement and Prospectuses issued in connection with its February 11, 2011 offering of February Convertible Notes (the "February Convertible Offering"); the August 2, 2011 offering of August Convertible Notes (the "August Convertible Offering"); and its August 8, 2011 offering of Senior Notes (the "Senior Offering") (collectively, the "Offerings"). The *Context Partners Fund L.P.* action is on behalf of all persons and entities, except Defendants and their affiliates, who purchased or otherwise acquired the 3.375% Convertible Notes and/or 6.25% Notes.

Accordingly, the longest most inclusive class period based on the filed actions is November 5, 2009 through October 31, 2011 (the "Class Period"). For the purpose of determining the lead plaintiff, it is proper to use "the longer, most inclusive class period … as it encompasses more potential class members." *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp.2d 398, 402 (S.D.N.Y. 2006). *See also HCL Partners Limited P'ship. V. Leap Wireless Int'l., Inc.*, 2008 U.S. Dist. LEXIS 43615, at *4 n.2 (S.D. Cal. May 22, 2008) (using the longest class period to determine the lead plaintiff.).

2

was one of twenty primary dealers authorized to trade U.S. government securities with the Federal Reserve Bank of New York.  The majority of the Company's revenues were derived from three main sources:  (i) commissions generated from execution and clearing services; (ii) principal transactions revenue, generated both from client facilitation and proprietary activities; and (iii) net interest income from cash balances in client accounts maintained to meet margin requirements as well as interest related to its collateralized financing arrangements and principal transactions activities.

Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company was suffering from serious liquidity pressures as a result of its exposure to the European debt crisis; (2) the Company consistently engaged in "window dressing," whereby its reported debt levels at the end of each quarter were far lower than the debt it held throughout the quarter; (3) the Company had leveraged its equity to a staggering ratio of more than 30:1—comparable to the 30:1 ratio that ultimately sank Lehman Brothers Holdings, Inc.; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

On October 24, 2011, ratings agency Moody's Investor Services downgraded MF Global's credit rating to nearly junk status as a result of concerns that the Company would be unable to "prudently balance risk."

On October 25, 2011, the Company reported a net loss of $186 million for the second quarter ended September 30, 2011 and disclosed that the Company had an exposure of $6.3

3

billion to certain European sovereign debt.  As a result of this news, the Company's share price declined $1.69 per share, or more than 47%, to close at $1.86 on October 25, 2011.

On October 26, 2011, Standard & Poor's announced that it may downgrade MF Global to junk status, citing its "very high" exposure to European sovereign debt.  Similarly, the next day, Fitch Ratings downgraded MF Global's credit rating to junk status as the Company's "increased risk taking activities have resulted in sizable concentrated positions relative to the firm's capital base, leaving MF vulnerable to potential credit deterioration and/or significant margin calls."  As a result of this news, MF Global's stock declined an additional $0.66 per share or more than 35% in three consecutive trading sessions, to close at $1.20 per share on October 28, 2011.

On October 31, 2011, trading in MF Global shares were halted by the New York Stock Exchange.  The Company filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York later that day.

On November 2, 2011, shares of MF Global began trading over-the-counter where it declined $0.95 per share, or more than 79%, to close at $0.25 per share on November 2, 2011.

On November 4, 2011, *The Wall Street Journal* reported that from at least late 2009 to the middle of 2011, the Company engaged in "window dressing"—*i.e.*, artificially manipulating its debt levels to lower the quarter-end debt reported in its financial statements.

**ARGUMENT**

    **I.**    **THE BAGWELL GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as

practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re UBS Auction Rate Sec. Litig.*, 2008 U.S. Dist. LEXIS 56016 (S.D.N.Y. July 16, 2008).

As set forth below, the Bagwell Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff to lead the Class, and therefore, should be appointed Lead Plaintiff.

### A.  The Bagwell Group Is Willing to Serve as a Class Representative

On November 3, 2011, counsel in the first filed action caused a notice ("Notice") to be published over *PRNewswire* pursuant to Sections 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised putative class members that they had until January 3, 2012 to file a motion to be appointed as Lead Plaintiff. *See* Notice attached hereto as Exhibit A.

The Bagwell Group has filed the instant motion pursuant to the Notice, and has attached certifications attesting that its members are willing to serve as class representatives for the Class, and are willing to provide testimony at deposition and trial, if necessary. *See* Certifications

attached hereto as Exhibit B.  Accordingly, the Bagwell Group satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. The Bagwell Group Has The "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *Davidson v. E\*Trade Fin. Corp.*, 2008 U.S. Dist. LEXIS 61265 (S.D.N.Y. July 16, 2008); *In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

The Bagwell Group believes that it has the largest financial interest of any of the movants with regard to the relief sought by the Class.  K. Bagwell (1) purchased 75,000 shares of MF Global securities; (2) expended $106,550 for his purchases of MF Global securities; (3) retained all of his MF Global securities at the end of the Class Period; and (4) suffered a loss of $97,565 as a result of the disclosures of the fraud.  D. Bagwell (1) purchased 70,000 shares of MF Global securities; (2) expended $100,300 for her purchases of MF Global securities; (3) retained all of her MF Global securities at the end of the Class Period; and (4) suffered a loss of $91,914 as a result of the disclosures of the fraud.  Ponder (1) purchased 5,000 shares of MF Global securities; (2) expended $6,250 for her purchases of MF Global securities; (3) retained all of her MF Global securities at the end of the Class Period; and (4) suffered a loss of $5,651 as a result of the disclosures of the fraud.  Collectively, the Bagwell Group suffered a loss of $195,130.  *See* Chart attached hereto as Exhibit C.  Because the Bagwell Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296

(E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997).

### C. The Bagwell Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *Olsten*, 3 F. Supp. 2d at 296.

The Bagwell Group fulfills all of the requirements of Rule 23. The Bagwell Group shares substantially similar questions of law and fact with the members of the Class, and its claims are typical of the members of the class. The Bagwell Group, as did all of the members of

7

the Class, purchased or acquired MF Global securities at prices artificially inflated, maintained, or stabilized by Defendants' misrepresentations and omissions and was damaged thereby. In addition, two of the members of the group, K. Bagwell and D. Bagwell are family members – former husband and wife. Moreover, Ponder and K. Bagwell are business partners who have a relationship predating this lawsuit. These shared claims also satisfy the requirement that the claims of the representative party be typical of the claims of the Class.

Thus, the close alignment of interests between the Bagwell Group and other Class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute this action on behalf of the Class, provide ample reason to grant the Bagwell Group's motion to serve as Lead Plaintiff of the Class.

### D. The Bagwell Group Would Fairly and Adequately Represents the Interests of the Class and Is Not Subject to Unique Defenses.

The presumption in favor of appointing the Bagwell Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

    (aa)    will not fairly and adequately protect the interest of the class; or

    (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The Bagwell Group's ability and desire to fairly and adequately represent the Class have been discussed above. The Bagwell Group is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, the Bagwell Group should be appointed Lead Plaintiff for the Class.

### II. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED.

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Bagwell Group has selected the Pomerantz law firm as Lead Counsel. The Pomerantz firm is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. *See* Pomerantz Resume attached hereto as Exhibit D. As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, the Bagwell Group's counsel has the skill and knowledge which will enable it to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Bagwell Group's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Bagwell Group respectfully requests the Court to issue an Order (a) appointing the Bagwell Group as Lead Plaintiff for the Class; (b) approving the Pomerantz firm as Lead Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: January 3, 2012
New York, New York

Respectfully submitted,

**POMERANTZ HAUDEK
 GROSSMAN & GROSS LLP**

/s/ Marc I. Gross
Marc I. Gross

        Jeremy A. Lieberman
        100 Park Avenue
        New York, New York 10017
        Telephone: (212) 661-1100
        Facsimile: (212) 661-8665

        **POMERANTZ HAUDEK**
         **GROSSMAN & GROSS LLP**
        Patrick V. Dahlstrom
        Ten South LaSalle Street, Suite 3505
        Chicago, Illinois 60603
        Telephone: (312) 377-1181
        Facsimile: (312) 377-1184

        *Attorneys for The Bagwell Group*