UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH DEANGELIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, BRADLEY ABELOW, and MICHAEL G. STOCKMAN,<br><br>Defendants. | Case No.: 1:11-cv-07866-VM<br><br>**Electronically Filed** |
| THIS DOCUMENT RELATES TO:<br><br>All Consolidated Actions. | |

**MEMORANDUM OF LAW IN SUPPORT OF MONICA RODRIGUEZ AND JEROME VRABEL'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF OF A SUBCLASS AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................. 2

ARGUMENT ........................................................................................................................... 3

    I.    THE COURT SHOULD ESTABLISH A SUBCLASS OF EMPLOYEES WHO ACQUIRED MF GLOBAL STOCK THROUGH THE ESPP AND LTIP ............................................................................................................................. 3

    II.    MONICA RODRIGUEZ AND JEROME VRABEL SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE SUBCLASS................................ 5

        A.    The Procedure Required By the PSLRA ...................................................... 5

        B.    Ms. Rodriguez and Mr. Vrabel Satisfy the Requirements of the PSLRA ................................................................................................ 6

            1.    This Motion Is Timely……………....…………………………. 6

            2.    Ms. Rodriquez and Mr. Vrabel Have a Significant Financial Interest in the Litigation…………………………………………..6

            3.    Ms. Rodriquez and Mr. Vrabel Are Typical of the Members of the Subclass and Will Adequately Represent Them……..……….7

            4.    It Is Appropriate to Appoint Ms. Rodriguez and Mr. Vrabel to Jointly Represent the Subclass….………………………………8

    III.    THE COURT SHOULD APPOINT GIRARD GIBBS AND ZAMANSKY & ASSOCIATES TO SERVE AS LEAD COUNSEL TO THE SUBCLASS......... 10

CONCLUSION....................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Freudenberg v. E*Trade Financial Corp.*,
    No. 07 Civ. 8538, et al., 2008 WL 2876373 (S.D.N.Y. July 16, 2008) .................... 5, 9, 10

*In re BP, PLC Securities Litig.*,
    759 F. Supp. 2d 428 (S.D. Tex. 2010) ............................................................................. 5

*In re Cendant Corp. Litig.*,
    264 F. 3d 201 (3d Cir. 2001) ............................................................................................ 6

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F. 2d 285 (2d Cir. 1992) ............................................................................................ 8

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................. 6, 8

*In re Olson Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................. 7

*In re Prudential Sec., Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................................... 8

*Lax v. First Merch. Acceptance Corp.*,
    No. 97 C 2715, et al., 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .................................. 7

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................... 10

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ......................................................................... 7, 8

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................... 5, 6, 8

**INTRODUCTION**

Monica Rodriguez and Jerome Vrabel are former MF Global employees who acquired MF Global securities through the company's employee stock purchase plan ("ESPP") and long-term incentive plan ("LTIP"). They move for appointment as lead plaintiffs for a subclass of MF Global employees who participated in the ESPP and LTIP between May 20, 2010 and October 31, 2011. These employees require separate representation because, although they are members of the classes of persons who purchased or acquired MF Global securities proposed in several of the complaints, they have some claims and interests that are distinct from those who purchased MF Global securities on the open market and other shareholders may not adequately represent the interests of the employees.

The Court has the discretion to create a subclass of investors and to appoint a separate lead plaintiff to represent the subclass. The creation of a subclass to protect MF Global employees is particularly necessary since the alleged diversion of customer funds sanctioned by MF Global officers has drawn national media attention and intense criticism at all levels, including in Congressional hearings. There is a very real concern, in view of the nature of the conduct that caused the firm's collapse, that other shareholders may not adequately represent the interests of the MF Global employees or may prejudice their rights.

Ms. Rodriguez and Mr. Vrabel qualify for appointment as lead plaintiffs of the subclass under the Private Securities Litigation Reform Act (PSLRA) because they filed a timely motion for appointment, have a significant financial interest in the action, and will adequately represent the interests of the proposed subclass. They have known one another for more than nine years and will work cooperatively to vigorously represent the subclass. They therefore request that the Court appoint them as lead plaintiffs to represent MF Global employees who acquired MF

Global securities through the company's employee stock plans and appoint their selected counsel to serve as lead counsel of the subclass.

## FACTUAL BACKGROUND

As described in the *Rodriguez* complaint, MF Global Holdings Ltd. offered MF Global securities to its employees through the ESPP and the LTIP. Employees who participated in the ESPP could defer between 1% to 15% of their pre-tax wages into an escrow account for biannual stock purchases of MF Global common stock at a discounted price. MF Global's Board of Directors oversaw the ESPP and was responsible for appointing and supervising its administrators. The Board's Compensation Committee administered the LTIP, and had discretion to provide eligible employees with various awards, including MF Global shares, options, restricted share units, or cash bonuses. Some employees were compelled to receive a percentage of their regular wages through the LTIP. MF Global actively encouraged its employees to participate in both plans.

In March 2010, Jon S. Corzine joined MF Global as chairman and CEO and implemented a new strategy designed to transform the company from a dedicated commodities and futures broker into an investment bank. Corzine's strategy involved significant increases in the company's proprietary trading activities and risk taking, including a large position in the sovereign debt of Spain, Italy, Belgium, Portugal, and Ireland. By August 2011, the Financial Industry Regulatory Authority (FINRA) informed MF Global that it lacked sufficient capital and liquidity for its activities. Nonetheless, Corzine and other officers and directors made or caused MF Global to make positive statements concerning the company's liquidity, capital position, and risk management. Further, MF Global engaged in "window-dressing" techniques at the end of quarters designed to mask the size and impact of its risky holdings. During the proposed class

period, the company did not disclose the extent to which its capital was impaired, its discussions with FINRA, and its use of customer funds to cover margin calls on its deteriorating proprietary holdings.

On October 24, 2011, Moody's Investor Services downgraded MF Global's credit rating to nearly junk status, and the stock price dropped more than 47%. The next day, the company released its financial results for the second fiscal quarter of 2012, reporting a net loss of $186 million. Following further credit agency downgrades, and continued plummeting of the stock price, MF Global filed a voluntary Chapter 11 bankruptcy petition on October 31, 2011. Most of MF Global's employees have been terminated since the bankruptcy filing.

There has been substantial public scrutiny of MF Global and its top executives in the wake of the company's bankruptcy and the revelation that the company was unable to account for roughly $1.2 billion in customer funds. Corzine, President and COO Bradley Abelow, and CFO Henri Steenkamp have been questioned by House and Senate committees about the missing money. Regulators have asserted that MF Global improperly used its customer's money for its own purposes in the days before declaring bankruptcy.[1]

## ARGUMENT

I. **The Court Should Establish a Subclass of Employees Who Acquired MF Global Stock Through the ESPP and LTIP**

Employees who participated in MF Global's ESPP and LTIP have some different interests and claims from open-market purchasers because of the unique method by which they acquired MF Global securities and the in-house representations made to subclass members concerning the company and participation in the plans. Unlike open-market purchasers, who could freely buy and sell MF Global securities, employees who participated in the company's

---

[1] *See, e.g.,* http://topics.nytimes.com/top/news/business/companies/mf-global-ltd/index.html.

ESPP and LTIP plans acquired MF Global securities under rigid guidelines.  They also had limited ability to sell or otherwise dispose of their shares, and depended on certain defendants to administer the plans reasonably and prudently.

Moreover, open-market purchasers were not exposed to misrepresentations and omissions that defendants made solely to MF Global employees.  During the proposed class period, defendants caused the company to disseminate various non-public documents to employees concerning MF Global's financial condition, business prospects, and the stock plans.  For example, in August and October 2011, the company issued internal documents to employees touting the company's strong financial condition and liquidity.  Documents like these were placed on GX, the company's intranet, and "blast" emailed to employees.

Defendants also internally promoted MF Global's future business prospects and strong financial condition through employee meetings and employee-only conference calls.  At various times, defendants, including Corzine and Abelow, discussed MF Global's financial condition at employee-only meetings held at the company's New York City headquarters and its Chicago commodities trading office, as well as at off-site employee conventions.  Summaries of these meetings were available to employees through GX.  In addition, Corzine led an employee-only conference call in October 2011 to discuss FINRA's demand that the company increase its capital.

Open-market purchasers have no interest in showing that defendants failed to reasonably and prudently administer the plans, or to demonstrate that internal, nonpublic statements were false and misleading.  They may also view the employee investors as potential adversaries because of the conduct that is alleged to have occurred at MF Global, and the employees could be prejudiced by choices made in drafting the complaint, defending motions to dismiss, and

conducting discovery. The court should therefore exercise its discretion to create a separate subclass of these employees and appoint a separate lead plaintiff for the subclass to avoid conflicts and ensure that the employees' interests are fully and fairly advocated. *See In re BP, PLC Securities Litig.*, 759 F. Supp. 2d 428, 438–42 (S.D. Tex. 2010) (where lead plaintiff movants asserted two different class periods and differing theories, the court created a subclass and appointed a separate lead plaintiff to represent the subclass); *Freudenberg v. E*Trade Financial Corp.*, Nos. 07 Civ. 8538, et al., 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008) (appointing a co-lead plaintiff who had standing to pursue claims on behalf of subclasses because of "the possibility that conflicts do ultimately arise").

## II.  Monica Rodriguez and Jerome Vrabel Should Be Appointed Lead Plaintiffs for the Subclass

The Court should appoint Ms. Rodriguez and Mr. Vrabel as lead plaintiff to represent the subclass. They have complied with the PSLRA's requirements, have demonstrated a significant financial interest in this litigation, and otherwise meet the relevant requirements of Rule 23.

### A.  The Procedure Required By the PSLRA

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA also provides that, within 60 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be

"most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Ms. Rodriguez and Mr. Vrabel Satisfy the Requirements of the PSLRA

#### 1. This Motion Is Timely

Notice of the filing of the initial action was published on November 3, 2011. See Declaration of Amanda M. Steiner, Ex. A. This motion was filed within sixty days of the notice's publication. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

#### 2. Ms. Rodriguez and Mr. Vrabel Have a Significant Financial Interest in the Litigation

Identification of the most adequate plaintiff under the PSLRA "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F. 3d 201, 262 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). Courts in the Southern District of New York, however, "overwhelmingly rely" on the following four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period;

6

and (4) the approximate losses suffered.  *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008) (citing *In re Olson Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).  The last factor—the approximate losses suffered—is the most important factor.  *Id.*

Ms. Rodriguez and Mr. Vrabel have a significant financial interest in this case.  Ms. Rodriguez acquired 240 shares of MF Global common stock through the ESPP during the proposed class period (May 20, 2010 through October 31, 2011), and has not sold or otherwise disposed of the shares.  *See* Steiner Decl., Ex. C.  She purchased the shares for $1,579.20 and lost approximately $1,519.20 (based on the closing price of MF Global's stock on November 2, 2011, the first day of trading following the company's bankruptcy).  *See id.*, Ex. E.

Ms. Rodriguez acquired 4,177 restricted share units through the LTIP during the proposed class period at a value of $31,828.74 (based on the closing price of MF Global's stock on the grant date).  *See id.*, Ex. C.  Mr. Vrabel acquired 103,757 restricted share units during the proposed class period with a value of $807,840.06 (based on the closing price of MF Global's stock on the grant dates).  *See id.*, Ex. D.  Ms. Rodriguez lost approximately $30,784.49 and Mr. Vrabel lost approximately $781,900.81 (based on the closing price of MF Global's stock on November 2, 2011).  *See id.*, Ex. E.

Collectively, Ms. Rodriguez and Mr. Vrabel acquired shares valued at $841,248 and lost approximately $814,204.50.  *See id*.

### 3. Ms. Rodriguez and Mr. Vrabel Are Typical of the Members of the Subclass and Will Adequately Represent Them

In addition, Ms. Rodriguez and Mr. Vrabel "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" because their claims are typical of those of the

proposed subclass and they will fairly and adequately represent the interests of the subclass. 15 U.S.C. § 78u-4(a)(3)(B). Typicality exists because each subclass member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). The claims do not have to be identical, "as similarity of legal theory may control even in the face of differences of fact." *In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995); *see also In re Fuwei Films*, 247 F.R.D. at 436 ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted). Ms. Rodriguez participated in MF Global's ESPP and LTIP, and Mr. Vrabel in the LTIP, during the proposed class period, and they allege that they have suffered damages as a consequence. *See* Steiner Decl., Ex. F at ¶ 2. Their claims and the claims of other class members therefore arise out of the same course of events, satisfying the typicality requirement.

Ms. Rodriguez and Mr. Vrabel also satisfy the adequacy requirement because they do not have interest antagonistic to those of other subclass members and they possess sufficient interest to vigorously pursue their claims. *See Varghese*, 588 F. Supp. 2d at 397; *see also* Steiner Decl., Ex. F at ¶¶ 4-5. They have also retained counsel who are well qualified to represent the subclass. *See Varghese*, 588 F. Supp. 2d at 397; *see also* Steiner Decl., Exs. G & H.

### 4. It Is Appropriate to Appoint Ms. Rodriguez and Mr. Vrabel to Jointly Represent the Subclass

Courts are typically cautious about appointing more than one person or entity to serve as lead plaintiff, especially when it appears that the members have been collected by counsel in an effort to aggregate the greatest financial interest in the litigation. *See, e.g.*, *Varghese*, 588 F. Supp. 2d at 391–94. This is not the case with Ms. Rodriguez and Mr. Vrabel, however. Ms. Rodriguez contacted and selected her counsel, and suggested that Mr. Vrabel contact them as

well.  This motion is the product of their shared interest in overseeing this litigation on behalf of other MF Global employees who participated in the ESPP and LTIP and who have suffered similar losses.

Ms. Rodriguez and Mr. Vrabel are two former MF Global employees who have known each other and worked together for more than nine years.  *See* Steiner Decl., Ex. F at ¶ 5.  Because of their long history, they will be able to operate as a cohesive decision-making unit in representing the subclass.  *See Freudenberg*, 2008 WL 2876373, at *5 (appointing a three-member group "who submit that they have a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation").  When she was terminated along with most other MF Global employees in November 2011, Ms. Rodriguez was Vice President, Regional Credit Officer for the Americas.  Mr. Vrabel was Senior Vice President, Agriculture Futures, when he was terminated in November 2011.  They are highly capable of leading this litigation on behalf of the proposed subclass.

Ms. Rodriguez and Mr. Vrabel have also considered how they will work collectively to manage the litigation.  They plan to confer with one another, receive regular reports from counsel, and meet periodically with counsel to ensure that the case is actively and responsibly litigated on behalf of the subclass.  They have discussed their common goals for the litigation and will provide direction to counsel on important matters in the case.  Steiner Decl., Ex. F at ¶ 5.  Because Ms. Rodriguez and Mr. Vrabel have the required cohesiveness and willingness to work collectively to serve as lead plaintiffs, it is appropriate for the Count to appoint them to jointly represent the subclass.

### III. The Court Should Appoint Girard Gibbs and Zamansky & Associates to Serve as Lead Counsel to the Subclass

Ms. Rodriguez and Mr. Vrabel have selected Girard Gibbs and Zamansky & Associates to serve as their counsel for the proposed subclass, subject to Court approval.  Girard Gibbs and Zamansky & Associates are experienced in litigating securities class actions and have successfully prosecuted numerous complex cases on behalf of injured investors.  *See* Steiner Decl., Exs. G & H.  The Court should therefore appoint the firms to serve as lead counsel to the subclass of employees who participated in the ESPP and LTIP.  *See Freudenberg*, 2008 WL 2876373, at *8 (appointing counsel selected by co-lead plaintiff to serve as co-lead counsel); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420–21 (S.D.N.Y. 2004) (same).

### CONCLUSION

Monica Rodriguez and Jerome Vrabel request that the Court establish a subclass of MF Global employees who participated in the company's employee stock purchase plan and long term incentive plan between May 20, 2010 and October 31, 2011, appoint them to serve as lead plaintiffs of the subclass, and approve their selection of counsel.

Dated:  January 3, 2012                              Respectfully submitted,

By:    /s/ *Amanda M. Steiner*
         Amanda M. Steiner

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA  94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Jacob H. Zamansky
Edward H. Glenn, Jr.
**ZAMANSKY & ASSOCIATES LLC**

10

50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177

*Proposed Lead Counsel for Subclass*