**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH DEANGELIS, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>      v.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, BRADLEY I. ABELOW, and MICHAEL G. STOCKMAN,<br><br>        Defendants. | Civil Action No. 11-cv-7866-VM |
| ERNESTO ESPINOZA, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>      v.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, BRADLEY I. ABELOW, and MICHAEL G. STOCKMAN,<br><br>        Defendants. | Civil Action No. 11-cv-7960-VM |

[captions continued on next page]

**MEMORANDUM OF LAW IN SUPPORT OF BANYAN CAPITAL MASTER FUND LTD.'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

| | |
|---|---|
| DOUBLE D TRADING, LLC, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, BRADLEY I. ABELOW, JOHN R. MACDONALD, MICHAEL G. STOCKMAN, and BERNARD DAN,<br><br>　　　　　　　　　　　　Defendants. | Civil Action No. 11-cv-8271-VM |
| IBEW LOCAL 90 PENSION FUND and PLUMBERS' & PIPEFITTERS' LOCAL #562 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>JON S. CORZINE, BRADLEY I. ABELOW, JOHN RANDY MacDONALD, HENRI J. STEENKAMP, ALISON J. CARNWATH, EILEEN S. FUSCO, MARTIN JOHN GARDNER GLYNN, EDWARD L. GOLDBERG, DAVID I SCHAMIS, DAVID GELBER, ROBERT S. SLOAN, DAVID P. BOLGER, GOLDMAN, SACHS & CO., CITIGROUP GLOBAL MARKETS INC., BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., RBS SECURITIES INC. and JEFFERIES & COMPANY, INC.,<br><br>　　　　　　　　　　　　Defendants. | Civil Action No. 11-cv-8401-VM |

| | |
|---|---|
| MONICA RODRIGUEZ and CYRILLE GUILLAUME, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>JON S. CORZINE, BRADLEY I. ABELOW, J. RANDY MACDONALD, HENRI J. STEENKAMP, DAVID P. BOLGER, ALISON J CARNWATH, EILEEN S. FUSCO, DAVID GELBER, MARTIN J. GLYNN, EDWARD L. GOLDBERG, DAVID I. SCHAMIS and ROBERT S. SLOAN,<br><br>        Defendants. | Civil Action No. 11-cv-8815-VM |
| ROBERT A. DALY, JR., Trustee of the ROBERT A. DALY, JR. LIVING TRUST, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>JON S. CORZINE, BRADLEY I. ABELOW, JOHN RANDY MacDONALD, HENRI J. STEENKAMP, ALISON J. CARNWATH, EILEEN S. FUSCO, MARTIN JOHN GARDNER GLYNN, EDWARD L. GOLDBERG, DAVID I SCHAMIS, DAVID GELBER, ROBERT S. SLOAN, DAVID P. BOLGER, BERNARD W. DAN, GOLDMAN, SACHS & CO., CITIGROUP GLOBAL MARKETS INC., BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., RBS SECURITIES INC., JEFFERIES & COMPANY, INC., BMO CAPITAL MARKETS CORP., COMMERZ MARKETS LLC, NATIXIS SECURITIES NORTH AMERICA INC., LEBENTHAL & CO., LLC, SANDLER O'NEILL & PARTNERS, L.P., and U.S. BANCORP INVESTMENTS, INC.,<br><br>        Defendants. | Civil Action No. 11-cv-8823-VM |

| | |
|---|---|
| CONTEXT PARTNERS FUND, L.P., on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>JON S. CORZINE, HENRI J. STEENKAMP, DAVID P. BOLGER, EILEEN S. FUSCO, DAVID GELBER, MARTIN GLYNN, EDWARD L. GOLDBERG, DAVID I. SCHAMIS, and ROBERT S. SLOAN,<br><br>        Defendants. | Civil Action No. 11-cv-8888-VM |

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................1

II.  FACTUAL BACKGROUND............................................................................................3

III. ARGUMENT......................................................................................................................7

    A.   The PSLRA's Lead Plaintiff Provisions ................................................................7

    B.   Banyan is the "Most Adequate Plaintiff"................................................................8

        1.   Banyan has the Largest Financial Interest in the Relief Sought by the Class ...................................................................................................8

        2.   Banyan Satisfies Rule 23 ............................................................................9

    C.   The Court Should Approve Banyan's Selection of Counsel .................................11

IV.  CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Bhojwani v. Pistiolis*,
    Case Nos. 06-cv-13671-CM, *et al.*,
    2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007) ........................................................2

*In re Espeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ...................................................................................... *passim*

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D.328 (S.D.N.Y. 2009) .....................................................................................9, 10

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .........................................................................................2, 8

*Sgalambo v. McKenzie*,
    268 F.R.D. 170 (S.D.N.Y. 2010) .......................................................................................2, 9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    Case No. 08-cv-7422-VM, 2008 U.S. Dist. LEXIS 101517
    (S.D.N.Y. Dec. 20, 2008) ............................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................................8, 9

**STATUTES**

15 U.S.C. § 77z-1(a)(3)(B) ........................................................................................................1

15 U.S.C. § 78u-4(a)(3) ................................................................................................. *passim*

Banyan Capital Master Fund Ltd. ("Banyan") respectfully submits this memorandum of law in support of its Motion for: (i) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B) and 77z-1(a)(3)(B);[1] (ii) approval of its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel; and (iii) approval of the Law Offices of Curtis V. Trinko, LLP ("Trinko") as liaison counsel.

## I.  PRELIMINARY STATEMENT

To date, at least seven consolidated securities class action lawsuits (the "Actions") have been filed on behalf of all persons who purchased MF Global Holdings Ltd. ("MF Global" or the "Company") securities between November 5, 2009 and November 3, 2011 (the "Class Period"), including those persons or entities who acquired securities pursuant to or traceable to the Company's February 11, 2011 offering of 1.875% Convertible Senior Notes due 2016 (the "February Convertible Offering"), the Company's August 2, 2011 offering of the 3.375% Convertible Senior Notes due 2018 (the "August Convertible Offering"), and the Company's August 8, 2011 offering of the 6.25% Senior Notes due 2016 (the "Senior Offering").[2]  The Actions allege violations of

---

[1]   For the purposes of this memorandum of law, the PSLRA provisions contained in the Securities Exchange Act of 1934 (the "Exchange Act") are cited and citations to the Securities Act of 1933 (the "Securities Act") are omitted, as they are redundant.

[2]   *Deangelis v. Corzine, et al.*, No. 11-cv-7866-VM (S.D.N.Y. filed Nov. 3, 2011) asserts a class period of May 20, 2011 through October 28, 2011, *Espinoza v. Corzine, et al.*, No. 11-cv-7960-VM (S.D.N.Y. filed Nov. 7, 2011) asserts a class period of May 19, 2011 through October 28, 2011, *Double D Trading, LLC v. Corzine, et al.*, No. 11-cv-8271-VM (S.D.N.Y. filed Nov. 15, 2011) asserts a class period of November 5, 2009 through October 28, 2011, *IBEW Local 90 Pension Fund, et al. v. Corzine, et al.*, No. 11-cv-8401-VM (S.D.N.Y. filed Nov. 18, 2011) and *Daly v. Corzine, et al.*, No. 11-cv-8823-VM (S.D.N.Y. filed Dec. 5, 2011) assert class periods of February 3, 2011 through October 31, 2011, and *Rodriguez, et al. v. Corzine, et al.*, No. 11-cv-8815-VM (S.D.N.Y. filed Dec. 5, 2011) assert a class period of May 20, 2010 through November 3, 2011.  *Context Partners Fund, L.P. v. Corzine, et al.*, No. 11-cv-8888-VM (S.D.N.Y. filed Dec. 6, 2011) contains

Sections 10(b) and 20(a) of the Exchange Act, Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), and Sections 11, 12(a)(2) and 15 of the Securities Act against certain of MF Global's executive officers, directors, and underwriters of the MF Global Notes ("Defendants").[3]  The first action against the Defendants was filed on November 3, 2011 by Joseph Deangelis and notice was circulated that day.  *See* Declaration of Curtis V. Trinko in Support of Banyan Capital Master Fund Ltd.'s Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel and Liaison Counsel ("Trinko Decl."), Ex. A.  Thus, under the PSLRA, motions seeking appointment as lead plaintiff are due on January 3, 2011.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Banyan respectfully submits that it should be selected as lead plaintiff because, to the best of its knowledge, it has the largest financial interest in the relief sought by the class.  *See* Trinko Decl., Ex. C; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, Case No. 08-cv-7422-VM, 2008 U.S. Dist. LEXIS 101517, at *5 (S.D.N.Y. Dec. 20, 2008) (discussing the PSLRA's process for selecting a lead plaintiff) (Marrero, J.); *see also Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93-94 (S.D.N.Y. 2007).  Additionally, Banyan has made a showing of adequacy and typicality under Fed. R. Civ. P. 23 ("Rule 23").  *See In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102-03 (S.D.N.Y. 2005).  The appointment of Banyan also fulfills a critical

---

only Securities Act claims, and thus, asserts no defined class period.  Given that multiple class periods have been pled, Banyan provides its financial interest based on the most comprehensive class period pled to date (*i.e.*, November 5, 2009 to November 3, 2011).  *See Bhojwani v. Pistiolis*, Case Nos. 06-cv-13671-CM, *et al.*, 2007 U.S. Dist. LEXIS 52139, at *14 (S.D.N.Y. June 26, 2007).

The Actions were consolidated by several orders from this Court.  *See Deangelis v. Corzine*, No. 11-cv-7866-VM, Dkt. Nos. 3, 4, 5, 10, 11 & 13. An eighth action, *Petro v. Corzine, et al.*, No. 11-cv-8253-VM (S.D.N.Y. filed Nov. 25, 2011), was voluntarily dismissed on December 21, 2011. *See Deangelis v. Corzine*, No. 11-cv-7866-VM, Dkt. No. 17.

[3]  MF Global is not named as a defendant in the Actions due to the automatic stay provision of Section 362 of the United States Bankruptcy Code.

goal of the PSLRA—encouraging participation by sophisticated investors—and ensures that the class's claims will be zealously prosecuted by committed plaintiffs. *See id.* at 99 ("the PSLRA was designed to favor institutional investors").

Finally, in accordance with the PSLRA, Banyan's selection of lead and liaison counsel should be approved. *See* § III.C, *infra*; *see also Varghese*, 2008 U.S. Dist. LEXIS 101517 at *25-26 ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (citations omitted).

## II.  FACTUAL BACKGROUND[4]

MF Global is a Delaware corporation with its headquarters located in New York, New York. Prior to its bankruptcy, MF Global operated as a broker of commodities and listed derivatives. The Company was formerly known as MF Global Ltd. and changed its name to MF Global Holdings Ltd. in January 2010. MF Global's common stock traded on the New York Stock Exchange ("NYSE") until November 1, 2011 when the NYSE suspended trading of MF Global shares. MF Global's shares currently trade over-the-counter on the pink sheets.

The Class Period begins on November 5, 2009 when MF Global announced its financial results for the second quarter of 2009 and reported total debt of $45.6 billion and total liabilities and equity of $59.5 billion.

In March 2010, MF Global hired Defendant Jon S. Corzine, as its CEO and Chairman of the Board. Corzine's hiring began a transformative period for the Company during which it sought to reposition itself from a futures and commodities broker into a full service investment bank. The transformation, however, was reported as being an orderly development. With respect to increasing

---

[4]  These facts are drawn from the allegations set forth in the Actions.

risk, the Company assured investors that risk would increase only after appropriate controls were in place which set acceptable risk thresholds, monitored risk on an ongoing basis, and "limit[ed] the size and concentration of positions."[5] For example, the Company's fourth quarter and fiscal year 2010 results (released on May 20, 2010) announced cost cutting measures while the Company, during the accompanying investor call held later that day, assured investors that MF Global would engage in more principal trading only after "profitability improves *and we ensure the appropriate controls are in place*. . . ." Corzine personally reiterated his commitment to grow without taking on excessive risk during his first investor call as MF Global's CEO on May 20, 2010. According to Corzine:

> "It's not risk systems that will determine whether we have losses. It *will be mistaken judgments in the first instance that go beyond limits, which I don't intend to allow to happen*. . . ."

Consistent with Corzine's assurances, many of the Company's Class Period filings with the Securities and Exchange Commission ("SEC") also stated: "To mitigate risk, we continuously evaluate the levels of regulatory capital at each of our operating subsidiaries and adjust the amount of regulatory capital as necessary to ensure compliance with all regulatory capital requirements."

On February 11, 2011, MF Global completed the $250 million February Convertible Offering of 1.875% Convertible Senior Notes due 2016.

Then, on May 19, 2011, the Company revealed in its investor conference call that it "saw principal trading opportunities in European sovereigns this quarter." However, the Company assured investors that "*the market risk to these trades is minimal*, as these are held to maturity [and] while [MF Global] retain[s] exposure to the underlying credit throughout the maturity period, the

---

[5] *See* MF Global FY2011 Annual Report at p. 76.

duration of these trades is short-term in nature."[6] On July, 28, 2011, MF Global issued a press release concerning its financial results for the first quarter ended June 30, 2011. In this announcement the Company revealed that total debt had risen to $30.6 billion (from $25.2 billion at the end of the previous quarter) and total liabilities and equity increased to $45.9 billion (from $40.5 billion at the end of the previous quarter). The Company, however, downplayed any material risk from its exposure to European sovereign debt. Specifically, during the Company's investor conference call held on July 28, 2011, Defendant Henri J. Steenkamp, MF Global's CFO, assured the market that the Company "continue[s] to believe market risks to these [European sovereign debt] trades is minimal as these are held to maturity."

MF Global's representations concerning the strength of its risk management, liquidity resources, and financial controls continued with its first quarter 2011 Form 10-Q, filed with the SEC on August 3, 2011. The day before the Company filed its first quarter 2011 Form 10-Q, MF Global completed the $325 million August Convertible Offering of 3.375% Convertible Senior Notes due 2018. On August 11, 2011, MF Global completed the $325 Senior Offering of 6.25% Senior Notes due 2016. Then, on September 1, 2011, weeks after raising $650 million in new capital, the Company amended its first quarter 2011 Form 10-Q to reflect that MF Global "was recently informed by the Financial Industrial Regulatory Authority, or FINRA, that its regulated U.S. operating subsidiary, MF Global Inc., is required to modify its capital treatment of certain repurchase transactions to maturity collateralized with European sovereign debt and thus increase its required net capital[.]"

---

[6] All emphases are added.

On the afternoon of October 24, 2011, Moody's Investor Services ("Moody's") downgraded MF Global's credit rating and the rating of its long-term debt to just above "junk" status over concerns that MF Global would not meet its earnings targets for the second quarter, that the Company was not prudently managing risk, and that MF Global was over-exposed to European sovereign debt. On October 25, 2011, the Company issued a press release announcing its financial results for the second quarter ended September 30, 2011, and reported, *inter alia*, a net loss of $186 million. Additionally, MF Global revealed that FINRA had not been satisfied with MF Global's prior representations about its European sovereign debt exposure (on September 1, 2011), and now required MF Global to specifically disclose that it had $6.3 billion in Euro-zone exposure. Defendant Steenkamp also issued words of comfort by assuring investors that "the steps [the Company has] taken over the past year to improve [its] capital and liquidity positions are of immense value in periods of uncertainty and volatility." To that end, Defendant Steenkamp, claimed that MF Global is "a stronger firm today with more flexibility to focus on [its] strategy."

The depth of MF Global's fraud was finally revealed on October 31, 2011 when, before the markets opened, the NYSE suspended trading in MF Global's shares. Later that day, MF Global announced that it had filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code. That evening, the *New York Times* reported that federal regulators had discovered that hundreds of millions of dollars in customer money at MF Global was unaccounted for, and that regulators were examining whether MF Global used its customer funds to support the Company's own trades. By this point, the 1.875% Convertible Senior Notes due 2016, the 3.375% Convertible Senior Notes due 2018, and the 6.25% Senior Notes due 2016 had defaulted.

On November 2, 2011, MF Global shares resumed trading over-the-counter on pink sheets. When the markets closed that day, MF Global's shares had fallen $0.95 per share, or over 79%, to

close at $0.25 per share. That same day, news reports by the *New York Times* and the *Wall Street Journal* revealed further governmental investigations and that FINRA had discussed with MF Global the need to set aside additional capital as early as June 2011.

Then, on November 4, 2011, the *Wall Street Journal* reported that MF Global may have used "window dressing" to manipulate the end-of-quarter debt levels reported to investors. Specifically, the *Wall Street Journal* noted the "[i]n each of the past seven quarters from late 2009 through mid-2011, MF Global's quarter-end borrowings were an average 16% lower than the quarterly average." MF Global's use of "window dressing" allowed the Company to disguise its true levels of risk. That same day, it was announced that Defendant Corzine had resigned from all positions at MF Global, including Chairman of the Board of Directors and CEO.

## III.   ARGUMENT

### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Third, the PSLRA provides that within ninety days after publication of notice, courts are to consider any motion made by a class member and appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

7

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
> (aa) has either filed the complaint or made a motion in response to a notice…;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Varghese*, 2008 U.S Dist. LEXIS 101517, at *5.

Here, in connection with the filing of the first-filed action, *Deangelis v. Corzine, et al.*, No. 11-cv-7866-VM (S.D.N.Y. filed Nov. 3, 2011), notice was published by *PR Newswire* on Nov. 3, 2011. *See* Trinko Decl., Ex. A. Thus, the time period in which class members may move to be appointed lead plaintiff in this case expires on January 3, 2011. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Banyan timely moves this Court to be appointed lead plaintiff on behalf of all members of the class. *See Kaplan*, 240 F.R.D. at 92. In addition, Banyan has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See* Trinko Decl., Exs. D & E. Accordingly, Banyan satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff.

    **B.**    **Banyan is the "Most Adequate Plaintiff"**

        **1.**    **Banyan has the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, Banyan suffered a loss of approximately $1,594,673 in connection with its Class Period transactions in MF Global securities. *See* Trinko Decl., Ex. C. The loss is the same under either a first-in, first-out (FIFO) or a last-in, first-out (LIFO) analysis. *See id.* To the best of its knowledge, Banyan asserts the largest financial interest in the relief sought by the class.

8

*See Sgalambo*, 268 F.R.D. at 173.[7]

### 2. Banyan Satisfies Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 consists of four requirements, at this stage, a movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Espeed*, 232 F.R.D. at 102; *see also Varghese*, 2008 U.S Dist. LEXIS 101517, at *22-23; *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D.328, 344 (S.D.N.Y. 2009).

#### a. Banyan Is Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Espeed*, 232 F.R.D. at 102 (citation omitted).

Here, Banyan is typical because, just like all other class members asserting claims under the Exchange Act, it: (1) purchased or otherwise acquired MF Global securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements

---

[7] Banyan purchased 1,145,001 MF Global shares during the Class Period resulting in 1,145,001 net shares purchased. *See* Trinko Decl., Exs. B & C. Banyan also expended $1,723,543 net funds on their Class Period share purchases. *See id.*; *see also Varghese*, 2008 U.S Dist. LEXIS 101517, at *15-16 (discussing financial interest under the "*Lax* Test").

and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the Defendants' conduct causing the price of MF Global's securities to fall. *See Varghese*, 2008 U.S Dist. LEXIS 101517, at *24. Thus, Banyan's claims are typical of other class members' claims because both sets of claims arise out of the same course of events and are predicated on identical theories of liability and damages. *See id.*

### b.     Banyan Is Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class." Specifically, the adequacy requirement is fulfilled when the plaintiff "seeks identical relief on identical claims based on identical legal theories making their interests not antagonistic with other class members." *Tronox*, 262 F.R.D. at 345. Banyan has also selected highly qualified firms with significant experience prosecuting class action lawsuits. *See* § III.C, *infra*.

Further, there are no conflicts between Banyan and the class as each seek to recover losses caused by the Defendants' false and misleading statements. Banyan, is a sophisticated investor that suffered substantial losses as a result of its Class Period purchases of MF Global shares. These shares were purchased on its own behalf. Moreover, Banyan is committed to vigorously prosecuting this litigation and maximizing the recovery for the class. *See* Trinko Decl., Ex. B.

In addition to satisfying the preliminary requirements of Rule 23, Banyan also fulfills a critical legislative goal—encouraging sophisticated investors with large financial interests to serve as lead plaintiff. *See Espeed*, 232 F.R.D. at 99 ("The fact that the PSLRA was designed to favor institutional investors should be taken into account…"); *see also* H.R. Conf. Rep. No. 104-369 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and

assist courts by improving the quality of representation in securities class actions."). Banyan's sophistication assures that Banyan will adequately litigate this action and supervise class counsel.

### C. The Court Should Approve Banyan's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Varghese*, 2008 U.S. Dist. LEXIS 101517 at *25-26 ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (citations omitted). The court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Banyan has selected counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class. Accordingly, Banyan respectfully submits that its proposed lead counsel should be approved.

Banyan has selected Kessler Topaz as lead counsel. Kessler Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field. Kessler Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, Johnson & Johnson, Transocean and UBS, and has secured billions of dollars in recoveries for investors. *See* Trinko Decl., Ex. D.

In addition, Trinko has extensive experience in the area of securities and complex litigation and is highly qualified to perform the duties of liaison counsel. *See* Trinko Decl., Ex E. Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms.

11

**IV.  CONCLUSION**

For the foregoing reasons, Banyan respectfully requests that the Court: (i) appoint Banyan as lead plaintiff pursuant to the PSLRA; (ii) approve its selection of Kessler Topaz to serve as lead counsel for the class; and (iv) approve its selection of Trinko as liaison counsel for the class.

Dated:  January 3, 2011                                          Respectfully submitted,

/s/ Curtis V. Trinko

**LAW OFFICES OF
CURTIS V. TRINKO, LLP**
Curtis V. Trinko
Jennifer E. Traystman
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
Email: Ctrinko@trinko.com

*Proposed Liaison Counsel*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Sean M. Handler
Darren J. Check
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Banyan Capital Master Fund
Ltd. and Proposed Lead Counsel*