## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH DEANGELIS, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:11-cv-07866-VM |
| Plaintiff, | ECF CASE |
| v. |  |
| JON S. CORZINE, et al. |  |
| Defendants. |  |

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE VIRGINIA RETIREMENT SYSTEM AND HER MAJESTY THE QUEEN IN RIGHT OF ALBERTA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF CO-LEAD COUNSEL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................... 1

SUMMARY OF THE PENDING ACTIONS .............................................................. 3

ARGUMENT ............................................................................................................... 6

      A.      VRS And Alberta Should Be Appointed Lead Plaintiff ........................................ 7

            1.      VRS And Alberta Believe They Have The Largest  Financial Interest In The Relief Sought By The Class ................................................................. 8

            2.      VRS And Alberta Are An Appropriate Lead Plaintiff Group ................... 8

            3.      VRS And Alberta Otherwise Satisfy The Requirements Of Rule 23 ....... 12

      B.      The Court Should Approve VRS' and Alberta's Selection of Co-Lead Counsel. 14

CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Canson v. WebMD Health Corp.*,
    No. 11-cv-5382-JFK, 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011)........................................12

*Chilton v. Chiumento Group*,
    365 Fed. Appx. 298 (2d Cir. 2010) ..........................................................................................7

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
    No. 06-cv-8245-CM-MHD, 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) ...........................9

*Freudenberg v. E*Trade Fin. Corp.*,
    No. 07-cv-8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008)..............................................11

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ............................................................................................14

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................11

*In re McDermott Int'l, Inc. Sec. Litig.*,
    No. 08-cv-9943-DC, 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ............................................9

*In re Refco, Inc. Sec. Litig.*,
    No. 05-cv-8626-GEL, slip op. (S.D.N.Y. Feb. 8, 2006)...........................................................9

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.*
    *Holdings Ltd.*,
    No. 11-cv-5097-JFK, 2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011).......................................12

*Reimer v. Ambac Fin. Group, Inc.*,
    No. 08-cv-411-NRB, 2008 WL 2073931 (S.D.N.Y. May 9, 2008)....................................9, 11

*Vale v. McGuinn*,
    No. 09-cv-3807-RMB, 2009 WL 3297490 (S.D.N.Y. Oct. 13, 2009) ......................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................9, 12, 13, 14

*Xianglin Shi v. Sina Corp.*,
    No. 05-cv-2154-NRB, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) .................................13, 14

**STATUTES**

15 U.S.C. § 77k .................................................................................................................1

15 U.S.C. § 77o .................................................................................................................1

15 U.S.C. § 77z-1 ...................................................................................................... *passim*

15 U.S.C. § 78(j) ...............................................................................................................1

15 U.S.C. § 78(t) ...............................................................................................................1

15 U.S.C. § 78u-4 ..................................................................................................... *passim*

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 .......................................................................................................1

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ....................14

The Virginia Retirement System (the "VRS") and Her Majesty the Queen in Right of Alberta ("Alberta") respectfully submit this memorandum in support of their motion (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Labaton Sucharow LLP ("Labaton Sucharow") as Co-Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

At least eight related actions brought on behalf of all persons who purchased the securities of MF Global Holdings Ltd. ("MF Global" or the "Company") between November 5, 2009 and October 31, 2011, inclusive (the "Class Period"), have been consolidated with the above-captioned action (the "Consolidated Actions"). The Consolidated Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA (15 U.S.C. §§ 78(j)(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against certain of MF Global's executive officers and directors, as well as Sections 11, 12(a)(2), and 15 (15 U.S.C. §§ 77k and 77o) of the Securities Act against certain of MF Global's executive officers and directors, and underwriters of the Company's allegedly false and misleading offering materials issued in connection with three public offerings of MF Global bonds.[1] The three public offerings of MF Global bonds consist of the 1.875% convertible senior

---

[1] The Defendants against which the complaints in the Consolidated Actions assert Securities Act claims include officer and director defendants Jon S. Corzine, John Randy MacDonald, Henri J. Steenkamp, Alison J. Carnwath, Eileen S. Fusco, Martin John Gardner Glynn, Edward L. Goldberg, David I. Schamis, David Gelber, Robert S. Sloan, David P. Bolger, and underwriter

note offering issued on February 11, 2011, the 3.375% convertible senior note offering issued on August 2, 2011, and the 6.25% senior note offering issued on August 8, 2011 (collectively, the "Offerings").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation and also whether such movants have made a prima facie showing that they are typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, VRS and Alberta are the "most adequate plaintiff" by virtue of their substantial losses on their investments in MF Global securities. Specifically, VRS and Alberta incurred losses totaling over $19 million in connection with their purchases of MF Global securities during the Class Period.[2] Significantly, VRS and Alberta can represent the entire Class in this litigation because they purchased MF Global bonds pursuant to the Offerings as well as MF Global common stock during the Class Period on the New York Stock Exchange (the "NYSE"), and therefore can pursue claims under both the Securities Act and the Exchange Act.

---

defendants Goldman Sachs & Co., Citigroup Global Markets Inc., Bank of America Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc., RBS Securities Inc., Jefferies & Company, Inc., BMO Capital Markets Corp., Commerz Markets LLC, Natixis Securities North America Inc., Lebenthal & Co., LLC, Sandler O'Neill & Partners, L.P., and U.S. Bancorp Investments, Inc. *See IBEW Local 90 Pension Fund v. Corzine, et al.*, 11-cv-8401, ECF 1 (S.D.N.Y., filed Nov. 18, 2011); *Robert A. Daly, Jr. Trustee of the Robert A. Daly, Jr. Living Trust v. Corzine, et al.*, 11-cv-8823-VM, ECF 1 (S.D.N.Y., filed Dec. 5, 2011).

[2] VRS' and Alberta's PSLRA-required Certifications are provided as Exhibit A to the Declaration of Gerald H. Silk in Support of the Motion of the Virginia Retirement System and Her Majesty the Queen in Right of Alberta for Appointment as Lead Plaintiff, and Approval of Their Selection of Co-Lead Counsel (herein, the "Silk Decl."). In addition, charts setting forth calculations of VRS' and Alberta's losses are provided as Exhibit B to the Silk Decl.

Accordingly, VRS and Alberta satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class.  Further demonstrating their adequacy and ability to drive the litigation in the best interests of the Class, authorized representatives of VRS and Alberta submit herewith a Joint Declaration which documents the decision of VRS and Alberta to serve jointly as Lead Plaintiff, details their desire to ensure that both bond and stock investors are protected, and evidences the repeated discussions they had concerning the supervision and management of this litigation.[3]

Indeed, VRS and Alberta are paradigmatic Lead Plaintiffs under the PSLRA because they have extensive experience serving as fiduciaries and are sophisticated institutional investors with a real financial interest in the litigation, which provides assurance that they have both the incentive and ability to supervise and monitor counsel.  Further, VRS and Alberta fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.  VRS and Alberta have selected Bernstein Litowitz and Labaton Sucharow, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Co-Lead Counsel for the Class.  Accordingly, VRS and Alberta respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

### SUMMARY OF THE PENDING ACTIONS

Prior to its bankruptcy, MF Global was one of the world's leading brokers in markets for commodities and listed derivatives.  MF Global provided access to over 70 exchanges globally

---

[3] *See* Joint Declaration of Brian J. Goodman and Darren Baccus in Support of the Motion of the Virginia Retirement System and Her Majesty the Queen in Right of Alberta for Appointment as Lead Plaintiff, and Approval of Their Selection of Co-Lead Counsel (herein the "Joint Declaration") attached as Exhibit C to the Silk Decl.

and was a leader by volume on many of the world's largest derivatives exchanges.  Although MF Global was a successful brokerage, during his tenure as CEO, Defendant Jon S. Corzine sought to transform MF Global by placing risky proprietary bets without regard for the Company's risk management policies in a reckless pursuit of profits.

Throughout the Class Period, MF Global continuously misrepresented to investors its robust risk management protocols, liquidity levels, and internal controls.  Specifically, the Company falsely maintained in its 2011 Annual Report on Form 10-K that it had a "global enterprise wide risk management framework that is intended to manage all aspects of our risks" and that its "effective risk management" was "critical to the success" of MF Global.  With regard to its liquidity, the Company stated in its 2011 Form 10-K and its fiscal first quarter 2012 report on Form 10-Q that it had "multiple sources of liquidity," including a $1.2 billion credit facility and "excess capital" available in its subsidiaries.  Moreover, in both of these Securities and Exchange Commission ("SEC") filings, the Company touted that it had "sufficient liquidity" to meet its obligations over the next year, and that "the Company maintains excess capital to provide liquidity during periods of unusual market volatility."  The Company made similar misrepresentations in its 2011 Form 10-K, stating that it "has a comprehensive risk governance structure through which the Company monitors, evaluates, and manages the risks the Company assumes in conducting its business."  The prospectus supplements and other offering materials for each of the Offerings contained similar false and misleading statements of material fact.

These and similar statements made by the defendants were materially false and misleading because MF Global abandoned its purported risk management controls in a reckless pursuit of profits; MF Global's risk management protocols and processes failed to adequately assess the risk of its concentrated bets on European sovereign debt, and failed to ensure the

proper segregation of client funds; and MF Global concealed from investors its true financial condition.

On October 25, 2011, MF Global reported a net loss of $186 million for the second quarter ended September 30, 2011 and disclosed that the Company had an exposure of $6.3 billion to certain European sovereign debt. On this news, the Company's stock price fell over 47% to close at $1.86 per share. This news also caused the value of the Company's 3.375% notes to decline by 21.625%, from 69.75 on October 24, 2011 to 48.125 on October 25, 2011. MF Global's 6.25% notes declined in value by 23.65%, from 87.4 on October 24, 2011 to 63.75 on October 25, 2011, and according to publicly available information, the Company's 1.875% notes also declined in value by over 22.4%, from 65.74 on October 24, 2011 to 51.0 on October 25, 2011.

On October 26, 2011, Standard & Poor's threatened to downgrade MF Global's credit rating to junk status, citing the Company's "very high" exposure to European sovereign debt. The next day, on October 27, 2011, Moody's Investors Service and Fitch Ratings further downgraded MF Global's credit rating to junk status largely due to the Company's concentrated position in European sovereign debt and the loss of client and counterparty confidence in MF Global. This news caused the price of the Company's stock to fall an additional 15% to close at $1.43 per share on October 27. On October 28, 2011, trading in MF Global common stock was halted on the NYSE, with the stock at $1.20 per share. This news also caused the value of the Company's 3.375% notes to decline by 7%, from 55.0 on October 27, 2011 to 48.0 on October 28, 2011. According to publicly available information, MF Global's 6.25% notes declined in value by 31.5%, from 73.0 on October 27, 2011 to 50.0 on October 28, 2011, and the Company's

1.875% notes declined in value by 21.7%, from 57.5 on October 27, 2011 to 45.0 on October 28, 2011.

On October 31, 2011, MF Global filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.  The next day, the NYSE suspended trading in the Company's shares and moved to de-list MF Global.  On November 2, 2011, shares of MF Global began trading over-the-counter, where the price of the shares declined $0.95 per share, or over 79%, to close at $0.25 per share on that day.

In the wake of the Company's bankruptcy, Defendant Corzine resigned as Chairman and CEO of MF Global.  Subsequent news articles reported that over $1.2 billion in client funds was missing from the Company's client accounts, and that MF Global improperly disguised its debt levels to investors over the past two years.  Several federal regulators and agencies, including both Houses of Congress, the SEC, the Federal Bureau of Investigation, the Commodity Futures Trading Commission, and the Department of Justice, have commenced investigations into the collapse of the Company.  By mid-November 2011, MF Global's 3.375% notes and 6.250% notes, and according to publicly available information, the Company's 1.875% notes, were trading in the mid-to-high 30% of the notes' 100% par value at the time of the Offerings.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. §§ 77z-1(a)(3)(A), 78u-4(a)(3)(A).  Here, the first of the Consolidated Actions was filed on November 3, 2011, and asserted claims under the Exchange Act.  The plaintiff in that action published notice of the pendency of the action to investors on

the same day, which provided a deadline to seek Lead Plaintiff status by January 3, 2012.[4]  On November 18, 2011, IBEW Local 90 Pension Fund and Plumbers' & Pipefitters' Local #462 Pension Fund filed an action asserting additional claims under the Securities Act arising out of alleged misrepresentations in the offering materials for the Offerings.  A notice published on the same day informed investors of these additional allegations and referred Class members to the January 3, 2012 deadline for filing a motion seeking Lead Plaintiff appointment.[5]

VRS and Alberta satisfy the 60-day deadline by filing this Motion on January 3, 2012, within 60 days of the first-published notice of the pendency of the first-filed action asserting substantially similar claims.  *See Vale v. McGuinn*, No. 09-cv-3807-RMB, 2009 WL 3297490, at *3 n. 2 (S.D.N.Y. Oct. 13, 2009) (explaining that motions seeking Lead Plaintiff appointment must be filed "[N]ot later than 60 days after the date on which the [initial notice of filing] is published").

## A.   VRS And Alberta Should Be Appointed Lead Plaintiff

VRS and Alberta respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).  When selecting Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of [Rule 23 of the Federal Rules of Civil Procedure.]"  *Id.*; *see also Chilton v.*

_____

[4] A copy of the notice of the first-filed action is attached as Exhibit D to the Silk Decl.  That notice incorrectly stated that the deadline to seek Lead Plaintiff appointment in the MF Global matter was January 2, 2012.  Because this Court is closed on that date, the correct deadline is the next day, January 3, 2012.  *See* Fed. R. Civ. P. 6(a)(3)(A).

[5] A copy of IBEW Local 90 Pension Fund's and Plumbers' & Pipefitters' Local #462 Pension Fund's notice is attached as Exhibit E to the Silk Decl.

*Chiumento Group*, 365 Fed. Appx. 298, 299 (2d Cir. 2010) (discussing qualifications for lead plaintiff presumption).

### 1. VRS And Alberta Believe They Have The Largest Financial Interest In The Relief Sought By The Class

VRS and Alberta should be appointed Lead Plaintiff because they believe they have the largest financial interest in the relief sought by the Class. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). As demonstrated herein, VRS and Alberta sustained total losses of over $19 million from their Class Period transactions in MF Global securities calculated under either a first-in-first-out basis or a last-in-first-out basis.[6] That loss is composed of losses of over $11.6 million on MF Global common stock and losses of over $7.5 million on purchases of MF Global bonds purchased during the Class Period. *See* Silk Decl. at Exhibits A and B. To the best of VRS' and Alberta's knowledge, there are no other applicants seeking Lead Plaintiff appointment that have a larger financial interest in the litigation. Accordingly, VRS and Alberta have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).

### 2. VRS And Alberta Are An Appropriate Lead Plaintiff Group

The appointment of a group of Class members to serve as Lead Plaintiff is expressly permitted by the PSLRA, 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I), and district courts within the Second Circuit have recognized the propriety of appointing such groups that

---

[6] Courts consider the most inclusive class period for purposes of determining financial interest. *See In re Doral Fin. Corp. Sec. Litig.* 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (accepting "use of the long[est], most inclusive class period . . . as it encompasses more potential class members" and captures the longest period of time in which the company was alleged to have engaged in misconduct). The earliest class period start date asserted in the Consolidated Actions is November 5, 2009. *See Double D Trading, LLC v. Corzine, et al.*, 11-cv-08271-VM, ECF 1 at ¶1 (S.D.N.Y., filed Nov. 15, 2011). The latest class period end date asserted in the Consolidated Actions is October 31, 2011. *See Robert A. Daly, Jr., Trustee of the Robert A. Daly, Jr. Living Trust v. Corzine, et al.*, 11-cv-8823-VM, ECF 1 at ¶1 (S.D.N.Y., filed Dec. 5, 2011).

"function cohesively and [are able] to effectively manage the litigation apart from their lawyers" in order to fairly and adequately protect the interests of the Class. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (Marrero, J.); *see also id.* ("The majority of courts, including those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class.") (citation omitted); *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08-cv-9943-DC, 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (Chin, J.) (same) (*quoting Varghese,* 589 F. Supp. 2d at 392); *Reimer v. Ambac Fin. Group, Inc.*, No. 08-cv-411-NRB, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of pension funds lead plaintiff); *City of Brockton Ret. Sys. v. Shaw Group, Inc.*, No. 06-cv-8245-CM-MHD, 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) (appointing two public pension funds as lead plaintiff); *In re Refco, Inc. Sec. Litig.*, No. 05-cv-8626-GEL, slip op. (S.D.N.Y. Feb. 8, 2006) (Lynch, J.) (appointing two sophisticated institutions as lead plaintiff).[7]

Factors courts consider in determining a group's ability to function independently of its lawyers includes evidence of "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese,* 589 F. Supp. 2d at 392 (citations omitted). "In short, the proposed group must 'evince[] an ability (and a desire) to work collectively to manage the litigation.'" *Id.* (citation omitted). Here, VRS and Alberta determined on their own to jointly seek appointment as Lead Plaintiff to provide the Class with strong and diverse leadership. As a result of their shared goals and desire to work together as sophisticated institutional investors,

---

[7] A copy of Judge Lynch's Order appointing the lead plaintiff in *Refco* is attached as Exhibit F to the Silk Decl.

VRS and Alberta authorized counsel to seek joint appointment as Lead Plaintiff and, if appointed, to jointly lead this litigation to achieve those aims and objectives. *See* Exhibit C to the Silk Decl.  To ensure the efficient prosecution of the litigation, VRS and Alberta directed counsel to enter into a Joint Prosecution Agreement delineating the responsibilities of each firm, a copy of which can be submitted *in camera* at the Court's request.

The Joint Declaration evidences that VRS and Alberta determined independent of counsel to seek joint appointment as Lead Plaintiff and that they are determined to drive the litigation for the benefit of the Class. *See id.* at ¶¶2-7.  Specifically, Alberta, before retaining counsel in connection with this action, consulted extensively with its regular outside lawyers retained for investments and securities related matters. *See id.* at ¶8.  Similarly, prior to retaining counsel, VRS issued solicitations for proposals (the "SFP") to select law firms experienced in securities class action litigation regarding representation in this action, and expressly requested information about other sophisticated investors with which it might partner to benefit the Class. *See id.* at ¶¶9-10.  Through the SFP process, VRS identified Alberta as an ideal partner with which to serve as Lead Plaintiff because VRS suffered the substantial majority of its losses on MF Global bonds and Alberta suffered all of its losses on MF Global common stock, and because both funds are sophisticated institutional investors. *See id.* at ¶¶10-11.  In issuing the SFP and evaluating submissions to the SFP, VRS' primary considerations were the experience and excellence of counsel, and VRS' ability to monitor and limit the costs of the litigation. *See id.* at ¶9.  Significantly, VRS has the benefit of the resources and dedicated personnel of the Office of the Attorney General of Virginia who are highly experienced in conducting and supervising complex litigation, and Alberta also has dedicated internal counsel to oversee the litigation. *See id.* at ¶¶6, 16.  VRS and Alberta have convened several conference calls regarding

10

their oversight and supervision of the MF Global matter and discussed protocols to ensure the Class receives the best representation possible.  *See id.* at ¶¶13-17.

Facts such as these that demonstrate individual group members' leadership and initiative are precisely the types of evidence that courts have repeatedly found to satisfy the requirements of a cohesive group that is able to direct the litigation apart from its lawyers.  *See, e.g., In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel"); *Ambac Fin. Group, Inc.*, 2008 WL 2073931, at *3 (finding that "joint conference calls" regarding litigation strategy between group members "who have prior working relationships" demonstrated the group was able to function independently of counsel); *Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) (permitting proposed group whose members submitted "that they have a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation").

The conclusion that VRS and Alberta have acted, and will continue to act, independently of counsel is bolstered by their significant financial stake in the litigation, their pre-litigation relationship, and because they came together as a group of their own volition in order to ensure that the Class receives the best possible outcome.  *See* Exhibit C to the Silk Decl.  Because VRS and Alberta are a small, cohesive group of sophisticated investors with the capacity to reach consensus decisions, their financial interests are properly aggregated for purposes of this motion.

### 3. VRS And Alberta Otherwise Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, VRS and Alberta otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc), 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) ("In addition to possessing a significant financial interest, in this District a lead plaintiff must make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements."). Here, VRS and Alberta unquestionably satisfy both requirements.

VRS' and Alberta's claims are typical of the claims of other purchasers of MF Global securities. Typicality can be established by showing that the proposed Class representative's individual circumstances and legal theories upon which their claims are based are not markedly different from those of other Class members. *See Varghese,* 589 F. Supp. 2d at 397 (setting out typicality requirement). Here, VRS' and Alberta's individual circumstances and legal claims in this action are nearly identical to the individual circumstances and legal claims of the other Class members. Like all other Class members: VRS and Alberta (1) purchased MF Global securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11-cv-5097-JFK, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding typicality requirement "easily met" when proposed Lead Plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants"). Significantly, because Alberta and VRS purchased both MF Global common stock

and bonds, they truly are representative of the *entire* Class in this litigation.  As a result, they are able to assert claims under both the Securities Act and the Exchange Act, and their interests are therefore aligned with those of all Class members.  As such, VRS and Alberta are typical Class representatives.

VRS and Alberta likewise satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class."  *Varghese,* 589 F. Supp. 2d at 397.  In order for the Class' interests to be fairly and adequately represented, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy."  *Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005).  VRS and Alberta satisfy these elements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims.  VRS' and Alberta's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between VRS or Alberta and other Class members.  Indeed, the partnership of VRS and Alberta is especially appropriate given that the substantial majority of VRS' losses in this action arise out of its transactions in MF Global bonds, and all of Alberta's losses arise out of its transactions in MF Global common stock.  To further illustrate their adequacy, VRS and Alberta submitted Certifications and the Joint Declaration, affirming their understanding of the duties owed to Class members through their commitment to oversee and monitor the prosecution of this action in the best interests of the Class.  *See* Silk Decl. at Exhibits A and C.  Through these

13

Certifications and the Joint Declaration, VRS and Alberta have demonstrated that they accept the fiduciary obligations they will assume if appointed Lead Plaintiff in this action.  *See id.*

Further, VRS and Alberta are the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated group of institutional investors with a substantial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at *28 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [class] actions.") (citation omitted).

Finally, VRS and Alberta have further demonstrated their adequacy through their selection of Bernstein Litowitz and Labaton Sucharow as Co-Lead Counsel to represent the Class in this action.  As discussed more fully below, Bernstein Litowitz and Labaton Sucharow are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**B.**     **The Court Should Approve VRS' and Alberta's Selection of Co-Lead Counsel**

The Court should approve VRS' and Alberta's selection of Bernstein Litowitz and Labaton Sucharow to serve as Co-Lead Counsel on behalf of the Class.  Pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent, and the Court should not disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *Varghese,* 589 F.

Supp. 2d at 398 ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (internal quotations and citations omitted).   VRS and Alberta have retained Bernstein Litowitz and Labaton Sucharow as proposed Co-Lead Counsel to represent the Class.

Bernstein Litowitz and Labaton Sucharow are among the preeminent securities class action law firms in the country.   *See* Bernstein Litowitz's Firm Biography, attached as Exhibit G to the Silk Decl.; Labaton Sucharow's Firm Biography, attached as Exhibit H to the Silk Decl.

Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the Class. Significantly, *Worldcom*, like MF Global, involved a bankrupt corporate defendant with the primary sources of recovery coming from the investment banks, senior executives, and members of the board of directors that participated in the alleged misconduct.   More recently, in *In re Refco, Inc. Securities Litigation*, 05-cv-8626-JSR (S.D.N.Y.), Bernstein Litowitz achieved a $407 million recovery in an action involving bond and stock claims that arose from an alleged fraud at a commodities broker that was in bankruptcy when the recoveries were achieved. Currently, Bernstein Litowitz is serving as Co-Lead counsel in several securities class action lawsuits of critical importance to investors involving financial institutions, including *In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation*, No. 09-md-02058-PKC (S.D.N.Y.).

Similarly, Labaton Sucharow has extensive experience in successfully prosecuting complex litigation and is Lead or Co-Lead counsel in major securities class and derivative actions nationwide, including *In re American International Group, Inc. Securities Litigation*, No.

04-cv-8141-DAB (S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion.  In addition, Labaton Sucharow is lead counsel on behalf of a class of common stock and bond holders in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295-MRP-MAN (C.D. Cal.), which resulted in a settlement of $624 million—one of the largest securities fraud settlement arising from the financial crisis of 2007 to 2008.  As Lead Counsel, Labaton Sucharow also recently achieved a partial settlement from individual defendants in the securities fraud action against bankrupt financial institution Colonial BancGroup.  *In re Colonial BancGroup, Inc. Sec. Litig.*, No. 09-cv-104 (M.D. Ala.).  Labaton Sucharow is also currently serving as the court-appointed lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman Sachs Group, Inc., among other significant litigations.  In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237-JSR, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to … courts for the excellence of its representation."

Not only are Bernstein Litowitz and Labaton Sucharow each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as Co-Lead Counsel.  For example, the firms are presently serving in a Co-Lead capacity in *In re Schering-Plough Corp./Enhance Sec. Litig*, No. 08-cv-00397-DMC-JAD (D.N.J.).  Accordingly, the Court should approve VRS' and Alberta's selection of Bernstein Litowitz and Labaton Sucharow to serve as Co-Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, VRS and Alberta respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange

Act, 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B); (2) approve their selection of Bernstein Litowitz and Labaton Sucharow as Co-Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  January 3, 2012

Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

/s/      Gerald H. Silk
Gerald H. Silk
Avi Josefson
Michael D. Blatchley
Ross Shikowitz
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com
ross@blbglaw.com

*Counsel for Proposed Lead Plaintiff the
Virginia Retirement System and Proposed
Co-Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Javier Bleichmar
Dominic J. Auld
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
jbleichmar@labaton.com
dauld@labaton.com

*Counsel for Proposed Lead Plaintiff Her
Majesty the Queen in Right of Alberta and
Proposed Co-Lead Counsel for the Class*