UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JOSEPH DEANGELIS, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 1:11-cv-07866-VM (**Consolidated**) |
| Plaintiffs, | : : | CLASS ACTION |
| vs. | : : : | MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |
| JON S. CORZINE, et al., | : : | |
| Defendants. | : : | |

673926_1

## TABLE OF CONTENTS

                                                    **Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

III. ARGUMENT .........................................................................................................................6

        A. The Global Investors Should Be Appointed as Lead Plaintiff ...............................6

                1. The Global Investors' Motion Is Timely .......................................................7

                2. The Global Investors Have the Largest Financial Interest in the Relief Sought by the Class ............................................................................7

                3. The Global Investors Satisfy Rule 23 of the Federal Rules of Civil Procedure at This Stage ................................................................................9

        B. The Court Should Approve the Global Investors' Selection of Counsel ...............11

IV. CONCLUSION ....................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004)..................................................................................................8

*In re Enron Corp. Sec. Litig.*,
   No. 01-H-3624, 2005 U.S. Dist. LEXIS 41240, 2005 WL 3504860
   (S.D. Tex. Dec. 22, 2005) ................................................................................................11

*In re Vivendi Universal, S.A.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009)..............................................................................10

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   2011 U.S. Dist. LEXIS 54939 (S.D.N.Y. 2011)...............................................................11

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   2010 U.S. Dist. LEXIS 103218 (E.D.N.Y. 2010).............................................................11

*Sgalambo v. McKenzie*,
   268 F.R.D. 170 (S.D.N.Y. 2010) .................................................................................9, 11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)..............................................................................................10


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77z-1 .................................................................................................................................2
   §78u-4 .................................................................................................................................2
   §78u-4(a)(1) ........................................................................................................................6
   §78u-4(a)(3)(A)(i) ...............................................................................................................6
   §78u-4(a)(3)(B)(i) ...........................................................................................................2, 6
   §78u-4(a)(3)(B)(iii) .........................................................................................................2, 7
   §78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................................................9
   §78u-4(a)(3)(B)(iii)(II)(aa) ...............................................................................................11
   §78u-4(a)(3)(B)(v) .........................................................................................................2, 10

Federal Rules of Civil Procedure
   Rule 6(a)(1)(C)....................................................................................................................7
   Rule 23 ............................................................................................................................7, 9

The Building Trades United Pension Trust Fund, Union Asset Management Holding AG, and LRI Invest S.A. (the "Global Investors") respectfully submit this memorandum of law in support of their motion for: (1) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) approval of their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Motley Rice LLC ("Motley Rice") as lead counsel for the class.

## I.   INTRODUCTION

Presently pending in this district are six consolidated securities class action lawsuits (the "Consolidated Actions") on behalf of purchasers of MF Global Holdings Ltd.'s ("MFG" or the "Company") common stock and debt, including 1.875% Convertible Senior Notes issued on February 11, 2011, 3.375% Convertible Senior Notes issued on August 2, 2011, and 6.25% Senior Notes issued on August 8, 2011 (collectively, "MFG securities").[1] The Consolidated Actions are brought on behalf of MFG's former shareholders against certain of the Company's officers and directors as well as underwriters of three debt and one equity offering during the Class Period for violations of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act").[2]

In securities class actions, the PSLRA requires district courts to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of

---

[1]   This Court previously consolidated the first-filed *DeAngelis* action with the later-filed securities class actions.  *See* Dkt. Nos. 3, 4, 5, 10, and 11.  One of the actions, *Petro*, was voluntarily dismissed on December 19, 2011.  *See* Dkt. No. 16.

[2]   MFG was not named as a defendant in any of the Consolidated Actions as it filed for Chapter 11 bankruptcy protection on October 31, 2011.

- 1 -

673926_1

adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).[3] The Global Investors should be appointed as lead plaintiff because they: (1) timely filed this motion; (2) to their counsel's knowledge, have the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Global Investors' selection of Robbins Geller and Motley Rice as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND

Before declaring bankruptcy, MFG was a holding company that acted as a broker in markets for commodities and listed derivatives. The Company provided access to more than 70 exchanges worldwide. It was also an active broker-dealer in markets for commodities, fixed income securities, equities, and foreign exchange.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's operations and financial results, including defendants' misrepresentations about the adequacy of MFG's internal controls and MFG's exposure to European sovereign debt. As a result of defendants' false statements, MFG's stock traded at artificially inflated prices during the Class Period, reaching a high of $8.84 per share on April 1, 2011. While concealing the truth about MFG, defendants were able to raise more than $1 billion in the four offerings:

- On June 3, 2010, MFG filed a Prospectus Supplement with the SEC in connection with the secondary public offering of more than 22.5 million shares of MFG common stock at $7.10 per share for approximate proceeds of $160 million.

---

[3]     The PSLRA's lead plaintiff provisions amended the 1933 Act and 1934 Act in virtually identical respects. *Compare* 15 U.S.C. §77z-1 *with* 15 U.S.C. §78u-4. For simplicity and consistency, only the 1934 Act provisions are cited herein.

- 2 -

673926_1

- On February 8, 2011, MFG filed a Prospectus for the February Convertible Offering. At least $250 million aggregate principal amount of MFG's 1.875% February Convertible Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $37.5 million principle amount of notes), raising $242 million in gross proceeds for the Company.

- On August 1, 2011, MFG filed a Prospectus for the August Convertible Offering. At least $325 million aggregate principal amount of MFG's 3.375% August Convertible Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $45 million principle amount of notes), raising $316 million in gross proceeds for the Company.

- On August 4, 2011, MFG filed its Prospectus for the Senior Offering. At least $325 million aggregate principal amount of MFG's 6.25% Senior Notes were sold to the public at 100% per note, raising approximately $320 million in gross proceeds for the Company.

In September 2011, regulators instructed MFG to make accurate disclosures about its exposure to European sovereign debt. Although defendants caused MFG to make certain disclosures, they did not disclose the full truth about MFG's financial position. On October 25, 2011, MFG was forced to make additional disclosures and announced disappointing second fiscal quarter 2012 results, reporting a decline in the same period as compared to the prior year and a net loss of $191.6 million, or ($1.16) diluted earnings per share ("EPS") for the second quarter ended September 30, 2011. As the truth reached the market, MFG's stock declined nearly 48% on volume of nearly 63 million shares and MFG's February and August Convertible Notes and Senior Notes declined to below 50% of par. In addition, MFG's credit ratings were also reduced to below investment grade.

On October 25, 2011, *Bloomberg* issued an article entitled "MF Global Drops by Most Since 2008," which stated in part:

> MF Global Holdings Ltd. (MF), the futures broker that had its credit rating cut yesterday to the lowest investment grade, reported its largest-ever quarterly loss, sending shares down the most since March 2008.

> The net deficit was $191.6 million, or $1.16 a share, for the three months ended in September, compared with $94.3 million, or 59 cents, a year earlier, New York-based MF Global said today. The biggest prior decline was $111.7 million in the three months ended March 2009, according to data compiled by Bloomberg. Excluding costs from restructuring, deferring tax asset valuations and retiring debt, the loss was 9 cents a share, missing the 5-cent average profit estimate of 11 analysts surveyed by Bloomberg.
>
> \*   \*   \*
>
> "MF's results are severely below expectations," Ed Ditmire, an analyst with Macquarie Group Ltd. in New York, wrote in a note to clients. "It's very likely that MF expectations need to be recalibrated lower over the near-term." Ditmire had expected it to earn 3 cents a share on an adjusted basis.
>
> \*   \*   \*
>
> The firm's credit ratings were cut yesterday by Moody's Investors Service on concern that the broker won't meet earnings targets and isn't sufficiently managing risk. The rating company lowered the long-term ranking to Baa3 from Baa2 and left MF Global on review for a further downgrade.
>
> "If market volatility stays elevated, we question how the firm is going to achieve the earnings necessary to avoid a downgrade of its debt to junk status, which in turn could materially impact its ability to act as a counterparty as well as raise MF's cost of debt," Patrick O'Shaughnessy, an analyst at Raymond James & Associates in Chicago, said in a note to clients.

Subsequently, on October 28, 2011, trading in MFG common stock was halted on the New York Stock Exchange ("NYSE"). The stock was then trading at $1.20 per share. On October 31, 2011, MFG announced that the New York Federal Reserve had suspended the Company's designation as a primary dealer and that the Company had filed for Chapter 11 bankruptcy. The February and August Convertible Notes and Senior Notes have each defaulted.

Keeping client money safe was crucial to MFG's business. As MFG's 2010 Form 10-K represented:

> We mitigate credit risk through various means. We manage placement and issuer risks through institutional, issuer, and concentration limits and via counterparty-creditworthiness assessments. Placement risk arises from our placement of customer and house funds at banks, financial institutions, clearing houses, exchanges, and other broker dealers. We conduct the same due diligence on

- 4 -

673926_1

the counterparty banks with whom we place clients' segregated funds as we conduct on banks with whom we place our own and non-segregated funds.

MFG's 2010 Form 10-K also represented the following about the Company's Risk Management:

- Our Board-approved risk appetite and strategic objectives translate to defined risk tolerances and oversight processes and, subsequently, strictly enforced delegations of authority and concomitant controls to ensure our operation within those risk tolerances.

- Working with the business areas, the Risk department seeks to identify, assess, measure, monitor and limit the risks consistently across our businesses. The internal audit department and audit committee further provide independent control and assurance of the risk-management process.

- Working with the business areas, the Risk department established a suite of limit techniques including, but not limited to, mandate limits applicable to specific businesses and risk types, value-at-risk, and stress scenario testing.

- We have established and documented mandates for market risk assumed by our revenue-generating areas. For certain revenue-generating areas the risk mandates are supplemented with intra-day and overnight monitoring against the prescribed limits, both by the business areas and the Risk department.

- All of our employees are considered risk managers. Employees are expected and encouraged to escalate risk incidents and any matters of concern to management and to our compliance and risk departments in order to effectively manage risk.

Despite these representations about its internal controls and the fact that brokerages are not allowed to end the day with any shortfall in customer accounts, MFG has now ***admitted*** to federal investigators that hundreds of millions of dollars were missing from its customer accounts and that it did not possess the controls to properly account for customer assets and other securities. As a *Forbes* November 8, 2011 posting noted:

> After an intense day of investigation, I have just discovered that a CFTC rule (1.29) allowed Jon Corzine's MF Global to use the margin and cash in customers heretofore segregated accounts to amass a risky $6.3 billion investment in European sovereign debt that backfired.

This is further supported by a November 22, 2011 *The Motley Fool* article, entitled "MF Global: Fraud, Incompetence, or a Bit of Both?" which noted that "[i]t's also possible that something has

been fishy at MF Global for a long time and it was only the blaring light of bankruptcy that revealed the company's misuse of customer money."

The Commodity Futures Trading Commission, which oversees the futures markets, is working to track down the hundreds of millions of dollars missing from MFG's customers' futures accounts. The FBI is also investigating the Company. Due to multiple investigations, some of them criminal in nature, former MFG officers have hired criminal counsel.

The true facts, which were known by defendants but were concealed from the investing public during the Class Period and omitted from the Registration Statements and Prospectuses, were as follows: (a) MFG had been misstating its capital ratios by misrepresenting the Company's exposure to European debt instruments; (b) MFG's leverage was so extreme that the true valuation of the European debt instruments would cause the Company to become insolvent; (c) MFG's internal controls were so deficient that MFG was not properly segregating client assets, leading to comingled funds; and (d) MFG was headed for collapse due to problems with European debt.

As a result of defendants' materially false statements, MFG securities traded at artificially inflated levels during the Class Period. However, after the truth began to reach the market, the artificial inflation was also removed, causing substantial harm and damages to the class.

### III.    ARGUMENT

####    A.    The Global Investors Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-

4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  The Global Investors meet these requirements and should therefore be appointed as lead plaintiff.

### 1. The Global Investors' Motion Is Timely

The notice published in this action on November 3, 2011 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by January 2, 2012.  *See* Declaration of Samuel H. Rudman in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Rudman Decl."), Ex. A.  January 2nd was a holiday.  Thus, pursuant to Rule 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday" is Tuesday, January 3, 2012.  Fed. R. Civ. P. 6(a)(1)(C).  Because the Global Investors' motion is timely filed, it is entitled to be considered for appointment as lead plaintiff.

### 2. The Global Investors Have the Largest Financial Interest in the Relief Sought by the Class

Each of the consolidated actions alleges a slightly different, but largely overlapping, Class Period:

| Case | Class Period | Claims |
|---|---|---|
| *DeAngelis v. Corzine*, No. 11-cv-7866 | 05/20/11-10/28/11 | §10(b), §20(a) |
| *Espinoza v. Corzine*, No. 11-cv-7960 | 05/19/11-10/28/11 | §10(b), §20(a) |
| *Petro v. Corzine*, No. 11-cv-8253 | 05/20/10-10/28/11 | §10(b), §20(a) |

| Case | Class Period | Claims |
|---|---|---|
| *Double D Trading, LLC v. Corzine*, No. 11-cv-8271 | 11/05/09-10/28/11 | §10(b), §20(a) |
| *IBEW Local 90 Pension Fund v. Corzine*, No. 11-cv-8401 | 02/03/11-10/31/11 including purchasers in February and August 2011 offerings | §10(b), §20(a) §11, §12(a)(2), §15 |
| *Context Partners Fund, L.P. v. Corzine*, No. 11-cv-8888 | February and August 2011 offerings | §11, §15 |
| *Daly v. Corzine*, No. 11-cv-8823 | 02/03/11-10/31/11 including purchasers in February and August 2011 offerings | §10(b), §20(a) §11, §12(a)(2), §15 |

During the largest Class Period (*i.e.*, 11/05/09-10/31/11), the Building Trades United Pension Trust Fund expended more than $2.5 million purchasing over 315,000 shares of MFG common stock at the artificially inflated prices of between $6-$8 per share and suffered harm of more than $1.3 million as the price of the shares fell in reaction to the disclosures. *See* Rudman Decl., Ex. C.[4] Union Asset Management Holding AG and LRI Invest S.A. purchased in the February and one of the August offerings, expending more than $15 million acquiring the notes at or close to par and suffered losses of more than $9 million as the price of the notes fell. *Id.* To the best of their counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the

---

[4]  The Building Trades United Pension Trust Fund also purchased more than 23,000 shares in the June 3, 2010 offering at $7.10 per share. *See* Rudman Decl., Exs. B, C. In addition, named plaintiffs IBEW Local 90 Pension Fund and Plumbers' & Pipefitters' Local #562 Pension Fund purchased MFG notes directly in the February and both August offerings and suffered substantial losses on their investments. *See* Dkt. No. 1 in Case No. 11-cv-8401. These named plaintiffs join in support of the Global Investors' motion. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).

- 8 -

Global Investors satisfy the PSLRA's prerequisite of having the largest financial interest in the relief sought by the class.

### 3. The Global Investors Satisfy Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (Scheindlin, J.) (citation omitted). "'Typicality' 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* at 173-74 (citation omitted). "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class . . . .'" *Id.* at 174 (citation omitted).

The Global Investors purchased a substantial amount of MFG securities during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and suffered damages when the truth leaked into the market. The Global Investors' claims therefore arise from the same factual predicate as those in the complaints. *See Sgalambo*, 268 F.R.D. at 174.

The Building Trades United Pension Trust Fund, based in Elm Grove, Wisconsin**,** has approximately 28,000 participants and over $1 billion in assets. Union Asset Management Holding

- 9 -

AG, based in Frankfurt, Germany, manages assets of approximately €169 billion (approximately $230.6 billion) and has more than 2,400 employees.[5]  LRI Invest S.A., based in Munsbach, Luxembourg, is a Luxembourgian investment company that has managed mutual and specialized funds since 1988 with approximately $13 billion of assets under management.[6]  Both the Building Trades United Pension Trust Fund and Union Asset Management Holding AG have prior experience serving as a lead plaintiff in securities class actions and are familiar with the obligations and fiduciary responsibilities owed to a class.  In addition, the Global Investors are not subject to unique defenses and there is no evidence that they seek anything other than the greatest recovery for the class consistent with the merits of the claims.  *See* Rudman Decl., Ex. E (Joint Declaration).  In fact, prior to filing their Motion, the Global Investors conferred and held a joint conference call in which they discussed the merits of the action, the benefits of working together jointly to prosecute the litigation, as well as the procedures and mechanisms they adopted to ensure that the Class will benefit from their supervision of counsel.  *Id.*, ¶5.  As such, the Global Investors satisfy the typicality and adequacy requirements at this stage.

---

[5]  Union Asset Management obtained valid assignments that were executed prior to filing this motion for appointment as lead plaintiff.  *See* Rudman Decl., Ex. D; *see In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009) (Holwell, J.) (rejecting defendants' summary judgment challenge to standing of German investment vehicles like Union Asset Management to assert claims for violations of federal securities laws) (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)).

[6]  LRI Invest S.A. invested in the MFG securities on behalf of the W & W International Funds, which is a Luxembourgian fonds common de placement ("FCP").  The FCP itself has no legal personality and is properly represented here by LRI Invest.  *See Vivendi*, 605 F. Supp. 2d at 579 ("the [Luxembourgian] FCP management companies . . . themselves have standing to bring suit on behalf of their investors under the *Huff* exception" because "[t]he relationship between a management company and an FCP appears to be similar to that of trustee to beneficiary, and absent legal personality, both sides' legal experts agree that neither the FCPs or their investors could bring suit on their own").

### B. The Court Should Approve the Global Investors' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Global Investors have selected Robbins Geller and Motley Rice to serve as lead counsel. *See* Rudman Decl., Exs. F, G. Both firms have previously been appointed together as lead counsel and have a demonstrated ability to work together in an efficient fashion in the class's best interests. *See generally City of Pompano Beach Gen. Emps. Ret. Sys. v. Synovus Fin. Corp.*, No. 1:09-cv-01811 (N.D. Ga. Jan. 28, 2010) (appointing lawyers with Robbins Geller and Motley Rice as lead counsel for the class); *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122 (D. Kan. June 5, 2009) (same); *Abrams v. Micrus Endovascular Corp.*, No. 07-22601 (S.D. Fla. Jan. 17, 2008) (same).

Robbins Geller "has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively." *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, 2010 U.S. Dist. LEXIS 103218, at *16 (E.D.N.Y. 2010); *see also* Rudman Decl., Ex. F. Indeed, "Robbins Geller has served as lead or co-lead counsel in numerous securities class actions, including *In re Enron Corp. Sec. Litig.*, No. 01-H-3624, 2005 U.S. Dist. LEXIS 41240, 2005 WL 3504860 (S.D. Tex. Dec. 22, 2005), as well as several cases filed in the district courts within the Second Circuit." *Id.* at *18; *see Kokkinis v. Aegean Marine Petroleum Network, Inc.*, 2011 U.S. Dist. LEXIS 54939, at *5 (S.D.N.Y. 2011) (noting that Robbins Geller has "substantial experience as lead counsel in securities class actions" and appointing the firm lead counsel); *Sgalambo*, 268 F.R.D. at 177 (appointing Robbins Geller as lead counsel).

Motley Rice is similarly well-qualified in securities class actions. *See* Rudman Decl., Ex. G. Most relevant to this action, Motley Rice attorneys serve on several committees in national bankruptcy proceedings. For example, co-founding member Joseph Rice was chair or co-chair of the Asbestos Creditor Committee in AWI, Federal Mogul, and Pittsburgh Corning, and was the lead negotiator for the Owens Corning bankruptcy without a committee. Member Nate Finch tried and helped resolve five asbestos bankruptcy cases, each having more than $1 billion at stake. He also was ranked a "Top Lawyer" in the 2009 and 2010 editions of Chambers USA in bankruptcy and restructuring.

Based upon Robbins Geller's and Motley Rice's extensive experience and proven track record as counsel in securities class actions, the Global Investors' selection of both firms as lead counsel should be approved.

## IV.    CONCLUSION

The Global Investors have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Therefore, the Global Investors respectfully request that the Court grant their Motion for appointment as lead plaintiff, approve their selection of counsel and grant such other relief as the Court may deem just and proper.

DATED: January 3, 2012               *Respectfully submitted*,

                                     ROBBINS GELLER RUDMAN & DOWD LLP


                                            s/ Samuel H. Rudman
                                           Samuel H. Rudman

                                     David A. Rosenfeld
                                     58 South Service Road, Suite 200
                                     Melville, NY  11747
                                     Telephone: 631/367-7100
                                     631/367-1173 (fax)

- 12 -

673926_1

                        ROBBINS GELLER RUDMAN & DOWD LLP
                        Darren J. Robbins
                        Spencer A. Burkholz
                        Danielle S. Myers
                        655 West Broadway, Suite 1900
                        San Diego, CA  92101
                        Telephone:  619/231-1058
                        619/231-7423 (fax)

                        MOTLEY RICE LLC
                        Joseph F. Rice
                        James M. Hughes
                        David P. Abel
                        28 Bridgeside Blvd.
                        Mount Pleasant, SC  29464
                        Telephone: 843/216-9000
                        843/216-9450 (fax)

                        *[Proposed] Lead Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 3, 2012.

        s/ Samuel H. Rudman
        Samuel H. Rudman

        ROBBINS GELLER RUDMAN
            & DOWD LLP
        655 West Broadway, Suite 1900
        San Diego, CA 92101-3301
        Telephone: 619/231-1058
        619/231-7423 (fax)

        E-mail: srudman@rgrdlaw.com

# Mailing Information for a Case 1:11-cv-07866-VM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Craig Block**
  jeff@blockesq.com

- **David A.P. Brower**
  brower@browerpiven.com,reception@browerpiven.com

- **Daniel Charles Girard**
  dcg@girardgibbs.com,eje@girardgibbs.com,aev@girardgibbs.com,ips@girardgibbs.com,akl@girardgibbs.com

- **Edward H. Glenn , Jr**
  eglenn@zamansky.com

- **Rebecca Sarah Kahan**
  rebecca.kahan@dechert.com,matthew.mazur@dechert.com,nycmanagingclerks@dechert.com

- **Brian C. Kerr**
  kerr@browerpiven.com

- **Andrew J. Levander**
  andrew.levander@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Jason Mathew Leviton**
  jleviton@bermandevalerio.com

- **Scott A Mays**
  smays@bermandevalerio.com

- **Matthew Lester Mazur**
  matthew.mazur@dechert.com

- **Benjamin E. Rosenberg**
  benjamin.rosenberg@dechert.com,nycmanagingclerks@dechert.com

- **Amanda Marjorie Steiner**
  as@girardgibbs.com,ips@girardgibbs.com,ale@girardgibbs.com

- **Whitney Erin Street**
  wstreet@blockesq.com

- **Jacob H. Zamansky**
  jake@zamansky.com,august@zamansky.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`