**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

JOSEPH DEANGELIS, ET AL.                   :        Civil Action No.
                                           :        11 CV 7866 (VM) (JCF)
          -against-                        :
                                           :
                                           :        ECF Case
JON S. CORZINE, ET AL.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

SAPERE CTA FUND, L.P.,                     :

                    Plaintiff,             :

          -against-                        :

JON S. CORZINE, BRADLEY I. ABELOW,         :
HENRI J. STEENKAMP, DAVID P. BOLGER,       :
EILEEN S. FUSCO, DAVID GELBER,             :
MARTIN J. GLYNN, EDWARD L.                 :
GOLDBERG, DAVID I. SCHAMIS, ROBERT         :        **ORAL ARGUMENT REQUESTED**
S. SLOAN, LAURIE R. FERBER, JOHN           :
RANALD MACDONALD, CHRISTINE A.             :
SERWINSKI, MICHAEL G. STOCKMAN,            :
DENNIS A. KLEJNA, THOMAS F.                :        Civil Action No.
CONNOLLY, DAVID SIMONS, J.C.               :        11 Civ. 9114 (VM)
FLOWERS & CO, LLC, CHRISTY VAVRA,          :
VINAY MAHAJAN, EDITH O'BRIEN,              :
ROBERT LYONS, DAVID DUNNE,                 :
MATTHEW V. BESGEN, SUMIT ADVANI,           :
MATTHEW M. HUGHEY, TIM MUNDT,              :
PRICEWATERHOUSECOOPERS LLP,                :

                    Defendants.            :

                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE**
**AMENDED COMPLAINT FILED BY SAPERE CTA FUND, L.P.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

    A.    Sapere's Claims Against the Individual Defendants ............................5

    B.    Sapere's Misleading Definition of Segregated Funds.........................6

ARGUMENT...............................................................................................7

I.    COUNT I MUST BE DISMISSED BECAUSE SAPERE SEEKS  ONLY ECONOMIC LOSSES AND CANNOT ALLEGE EITHER A COGNIZABLE DUTY OR A BREACH BY ANY DEFENDANT. ........................................7

    A.    The Economic Loss Doctrine Bars Sapere's Claims. ..........................8

    B.    Sapere Fails to Allege a Cognizable Duty of  Care or a Breach of Any Such Duty. ...................................................................................9

II.    SAPERE HAS FAILED TO STATE A CLAIM AND HAS NO PRIVATE RIGHT OF ACTION AGAINST THE MFG DEFENDANTS FOR  DIRECT VIOLATIONS OF THE CEA (COUNTS IV, V). ......................................12

    A.    Sapere Lacks Standing to Assert Direct Violations  of the CEA Against Any of the Individual Defendants.......................................13

    B.    Even If Sapere Had Standing, the Complaint Fails to State a Claim for Direct Violation of the CEA Based on Rule 166.3............................14

    C.    Even if Sapere Had Standing, the Complaint Fails to State a  Claim for Direct Violation of the CEA Based on MFGI's T-Bill Swaps. .........................14

III.    SAPERE FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A VIOLATION OF THE CEA (COUNT VI). ................................................15

IV.    SAPERE'S CLAIMS PREMISED ON THE EXISTENCE OF A FIDUCIARY DUTY FAIL FOR LACK OF ANY SUCH DUTY (COUNTS VII & VIII). .................17

    A.    The Individual Defendants Did Not Owe a Fiduciary Duty to Sapere…………17

    B.    Because the Individual Defendants Did Not Owe a Fiduciary Duty to Sapere, Its Claims for Constructive Fraud Must Fail……………………………………..18

V.    COUNT IX MUST BE DISMISSED BECAUSE SAPERE HAS FAILED TO PLEAD FRAUD WITH PARTICULARITY AND HAS OTHERWISE FAILED TO STATE A CLAIM. ...............................................................................18

    A.    Sapere Has Failed to Plead Fraud with Particularity. .........................18

    B.    Sapere Fails to Allege That It Relied on Representations Made by Any of the Individual Defendants. ...............................................................21

**TABLE OF CONTENTS**

(Continued)

**Page**

C.     Sapere Has Failed to Allege Facts Giving Rise to a Strong Inference of Fraudulent Intent. ................................................................21

D.     Sapere Has Failed to Allege a Duty to Disclose. ...................................22

VI.     SAPERE'S CONVERSION CLAIM IS NOTHING MORE  THAN AN IMPERMISSIBLE BREACH OF CONTRACT  CLAIM AGAINST MFGI (COUNT X). ................................................................................................24

VII.    SAPERE'S CLAIM FOR TRESPASS TO CHATTELS FAILS (COUNT XI)..............26

VIII.   SAPERE'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS CANNOT BE ASSERTED AGAINST THE INDIVIDUAL DEFENDANTS (COUNT XII). ..............................................................................................27

IX.     SAPERE FAILS TO STATE A CLAIM UNDER § 349 OF NEW YORK'S GENERAL BUSINESS LAW (COUNT XIII). ...............................................28

X.      THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING TORTIOUS CONDUCT (COUNT XIV). ...................................30

XI.     AS A MATTER OF LAW, SAPERE IS NOT  ENTITLED TO PUNITIVE DAMAGES. ............................................................................................32

CONCLUSION ....................................................................................................34

# TABLE OF AUTHORITIES

**CASES**

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.,*
  731 F.2d 112 (2d Cir. 1984) ................................................................23

*Airlines Reporting Corp. v. Aero Voyagers, Inc.,*
  721 F. Supp. 579 (S.D.N.Y. 1989)................................................. 10, 11

*American Financial International Group – Asia, LLC v. Bennett,*
  No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)........................... 8, 9, 20, 22

*Anwar v. Fairfield Greenwich Ltd. ("Anwar II"),*
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ....................................................8, 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .........................................................................12

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.,*
  798 F. Supp. 2d 533 (S.D.N.Y. 2011) ......................................................4

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
  No. 09 Civ. 9783, 2013 WL 2452169 (S.D.N.Y. June 6, 2013)............................8

*Bryant v. N.Y. State Educ. Dep't,*
  692 F.3d 202 (2d Cir. 2012) ...............................................................4

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ...............................................................6

*Chevron Corp. v. Donziger,*
  871 F. Supp. 2d 229 (S.D.N.Y. 2012) ....................................................26

*Chill v. Gen. Elec. Co.,*
  101 F.3d 263 (2d Cir. 1996) ..............................................................22

*Deutsche Bank Sec., Inc. v. Rhodes,*
  578 F. Supp. 2d 652 (S.D.N.Y. 2008) ....................................................24

*Dooner v. Keefe, Bruyette & Woods, Inc.,*
  157 F. Supp. 2d 265 (S.D.N.Y. 2001) .....................................................9

*Eden Rock Fin. Fund, L.P. v. Gerova Fin. Grp. Ltd.,*
  No. 650613/2011, 34 Misc. 3d 1205(A), 2011 WL 6955884 (Sup. Ct. [N.Y. Cnty.]
  Dec. 21, 2011)..............................................................................29

*Elektra Entm't Grp., Inc. v. Santangelo,*
  No. 06 Civ. 11520, 2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008) .........................26

*Ellison v. Am. Image Motor Co., Inc.*,
    36 F. Supp. 2d 628 (S.D.N.Y. 1999) ........................................................................... 19

*Faktor v. Yahoo! Inc.*,
    No. 12 Civ. 5220, 2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013) ................................... 18

*Fin. Servs. Vehicle Trust v. Saad*,
    72 A.D.3d 1019 (2d Dep't 2010) ................................................................................. 33

*Fujisawa Pharm. Co. v. Kapoor*,
    No. 92 C 5508, 1999 WL 543166 (N.D. Ill. July 21, 1999) ............................................. 4

*Fustok v. Conticommodity Servs., Inc.*,
    618 F. Supp. 1069 (S.D.N.Y. 1985) .............................................................................. 14

*Genesco Entm't v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) ................................................................................ 28

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003) (Marrero, J.) ........................................................ 4

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) ................................................................................................... 28

*In re Amaranth Natural Gas Commodities Litig.*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009) ........................................................................... 14

*In re Amaranth Natural Gas Commodities Litig.*,
    730 F.3d 170 (2d Cir. 2013) .................................................................................... 15, 16

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993) ........................................................................................... 27

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    585 F.3d 677 (2d Cir. 2009) ......................................................................................... 22

*In re Eaton Vance Mut. Fund Litig.*,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005) ........................................................................... 29

*In re Evergreen Mut. Funds Fee Litig.*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006) ........................................................................... 29

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013) ........................................................................................... 32

*In re MF Global, Inc.*,
    No. 11-2790 (MG) .......................................................................................................... 5

*In re Refco Sec. Litig.*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010) ................................................................24

*In re Rough Rice Commodity Litig.*,
    No. 11 c 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012) ....................................16

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005) ............................................................................31, 32

*Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011) ................................................................21

*Jardel Co., Inc. v. Hughes*,
    523 A.2d 518 (Del. 1987) ...................................................................................33

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp., et al.*,
    774 N.Y.S.2d 384 (1st Dep't 2002) ....................................................................27

*Jurgensen v. Felix Storch, Inc.*,
    No. 12 Civ. 1201, 2012 WL 2354247 (S.D.N.Y. June 14, 2012).........................23

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (1st Dep't 2003) ....................................................................31

*Kaufman v. Sirius XM Radio, Inc.*,
    751 F. Supp. 2d 681 (S.D.N.Y. 2010) ................................................................29

*Khalid Bin Alwaleed Found. v. E. F. Hutton & Co., Inc.*,
    709 F. Supp. 815 (N.D. Ill. 1989) ......................................................................14

*Kiobel v. Royal Dutch Petrol. Co.*,
    621 F.3d 111 (2d Cir. 2010) ...............................................................................31

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) ................................................................25

*Kolbeck v. LIT Am., Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996) .....................................................................31

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ...............................................................................23

*Loitz v. Remington Arms Co.*,
    138 Ill. 2d 404 (1990)........................................................................................33

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008) ................................................................18

*Mayline Enters., Inc. v. Milea Truck Sales Corp.*,
    641 F. Supp. 2d 304 (S.D.N.Y. 2009) .............................................................................33

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993) ........................................................................................19

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013) ................................................................................. 18, 21

*Nissan Motor Acceptance Corp. v. Scialpi*,
    944 N.Y.S.2d 160 (2d Dep't 2012) .............................................................................24

*Ochre LLC v. Rockwell Architecture Planning & Designs, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)...........................................10

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000)...................................................................... 19, 23

*Ohio v. Reiner*,
    532 U.S. 17 (2001) ....................................................................................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995).......................................................................................... 28, 30

*Petkanas v. Kooyman*,
    759 N.Y.S.2d 1 (1st Dep't 2003) .................................................................................27

*Quail Ridge Assocs. v. Chem. Bank*,
    558 N.Y.S.2d 655 (3d Dep't 1990) ..............................................................................28

*Ray Larsen Assocs., Inc. v. Nikko America, Inc.*,
    No. 89 Civ. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .............................................23

*Rodriguez v. It's Just Lunch, Int'l*,
    No. 07 Civ. 9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ..................................... 19, 22

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) .........................................................................................21

*S&K Sales Co. v. Nike, Inc.,*
    816 F.2d 843 (2d Cir. 1987) .......................................................................................31

*Sapirstein-Stone-Weiss Found. v. Merkin*,
    No. 13 Civ. 415, 2013 WL 2495141 (S.D.N.Y. June 11, 2013)...........................................32

*Sendar, Inc. v. Megaware, Inc.*,
    705 F. Supp. 159 (S.D.N.Y. 1989)...............................................................................20

*Shanahan v. Vallet*,
  No. 03 Civ. 3496, 2004 WL 2937805 (S.D.N.Y. Dec. 19, 2004)..........................................33

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ................................................................................................22

*Stadt v. Fox News Network LLC*,
  719 F. Supp. 2d 312 (S.D.N.Y. 2010) ..................................................................................30

*Starshinova v. Batratchenko*,
  931 F. Supp. 2d 478 (S.D.N.Y. 2013) ..................................................................................13

*Suffolk Cnty. v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984) ....................................................................................................8

*Teller v. Bill Hayes, Ltd.*,
  630 N.Y.S.2d 769 (2d Dep't 1995) ................................................................................28, 30

*The Limited, Inc. v. McCrory Corp.*,
  645 F. Supp. 1038 (S.D.N.Y. 1986)................................................................................19, 20

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP*,
  906 A.2d 168 (Del. Ch. 2006)..............................................................................................10

*Universe Antiques, Inc. v. Vareika*,
  826 F. Supp. 2d 595 (S.D.N.Y. 2011) ..................................................................................33

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y 2011) ...................................................................................25

*Walker v. Sheldon*,
  10 N.Y.2d 401 (1961)...........................................................................................................32

*Warren v. John Wiley & Sons, Inc.*,
  No. 12 Civ. 5070, 2013 WL 3328224 (S.D.N.Y. Jul. 2, 2013) ............................................21

*Waverly Props., LLC v. KMG Waverly, LLC*,
  824 F. Supp. 2d 547 (S.D.N.Y. 2011) ..................................................................................28

*Whitney v. Citibank, NA*,
  782 F.2d 1106 (2d Cir. 1986)...............................................................................................31

*Wight v. BankAmerica Corp.*,
  219 F.3d 79 (2d Cir. 2000) ..................................................................................................31

STATUTES

7 U.S.C. § 25..................................................................................................................13, 15

11 U.S.C. § 362 ........................................................................................................................ 3

N.Y. General Business Law § 349 ........................................................................................ 28

**RULES AND REGULATIONS**

17 C.F.R. § 1.25 .................................................................................................................... 15

17 C.F.R. § 30.7 .................................................................................................................... 15

17. C.F.R. § 166.3 ................................................................................................................. 14

**OTHER AUTHORITIES**

Enhancing Protections Afforded Customers and Customer Funds Held by Futures
    Commission Merchants and Derivative Clearing Organizations, 77 Fed. Reg. 67,866
    (Nov. 14, 2012) .............................................................................................................. 6

*Safeguarding Customers through Segregated Funds*, Managed Futures Today, Feb. 2011 ........ 20

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants Bradley I. Abelow, Matthew V. Besgen, David P. Bolger, Jon S. Corzine, David Dunne, Laurie R. Ferber, Eileen S. Fusco, David Gelber, Martin J. Glynn, Edward L. Goldberg, Matthew M. Hughey, Dennis A. Klejna, Robert Lyons, John Ranald MacDonald, Vinay Mahajan, Edith O'Brien, David I. Schamis, Christine A. Serwinski, David Simons, Robert S. Sloan, Henri Steenkamp, and Michael G. Stockman (collectively, the "Individual Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint ("Complaint" or "Compl.") of Sapere CTA Fund, L.P. ("Sapere"), as further amended by Sapere's recent voluntary dismissal of claims and defendants.[1]

## PRELIMINARY STATEMENT

This Court early on admonished the various MDL plaintiffs to avoid pleading duplicative, arcane claims or those with only a tenuous connection to the actual facts. The Court also suggested that plaintiffs not name unnecessary defendants in their amended pleadings.

---

[1]   Sapere has voluntarily dismissed its claims against named defendants Sumit Advani, Thomas Connolly, Timothy Mundt and Christy Vavra. *See* Docs. 555, 556, 557 and 572. Sapere has also voluntarily dismissed without prejudice Count II (RICO) and Count III (RICO Conspiracy). *See* Doc. 568.

Two additional memoranda of law are being submitted in connection with this motion to dismiss. The first is being filed on behalf of seven former employees of MF Global named as defendants in the *Sapere* action but not in the Commodity Customer Class Action (the "Sapere-only Defendants"), and the second is being filed on behalf of the seven former independent directors of MF Global Holdings, Ltd. (the "Independent Directors"), who also were not named as defendants in the Commodity Customer Class Action. To promote judicial economy and conserve scarce resources, the Individual Defendants incorporate, to the extent applicable, the arguments advanced by defendants Abelow, Corzine, Dunne, Ferber, Mahajan, O'Brien, Serwinski, and Steenkamp in support of their Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Commodity Exchange Act and Common Law (the "Commodity Customer Class Action"). *See* Joint Mem. (Doc. 440) ("Motion to Dismiss the Customer Class Action"), Joint Reply (Doc. 582), and individual briefs (Docs. 423, 424, 425, 430, 432, 436, 437, 438, 439, 441, 574, 577, 578, 579, 580, 581, 582, 583, 584).

Although Sapere has recently voluntarily dismissed four defendants and its RICO claims, this is not enough.  Unless dramatically pared back by this Court, the unwieldy Complaint threatens to preclude the "just, speedy, and inexpensive determination" of this action in accordance with the Fed. R. Civ. P. 1 standard, which this Court referenced in its November 11, 2013, decision and order denying motions to dismiss the Amended Securities Class Action Complaint (Doc. 567).[2]

Sapere maintains twelve causes of action against 22 Individual Defendants -- who range from the independent directors of MF Global Holdings Ltd. ("MF Global") to employees of MF Global's futures commission merchant ("FCM") subsidiary, MF Global Inc. ("MFGI") responsible for back-office operations.[3]  Sapere has accused these defendants of far-ranging and arcane misconduct including fraud, trespass to chattels, and violations of the Commodity Exchange Act ("CEA") and the rules and regulations promulgated thereunder.  The Complaint alleges, in sum, that the 22 Individual Defendants "schemed" to defraud the customers of MFGI in the hope that they "would be resurrected as investment banker 'masters of the universe' and receive generous investment banker-level compensation …."  (Compl. ¶ 111.)

A vast amount of information about the collapse of MF Global and MFGI has been made public.  None of this information remotely supports the notion that the officers, directors and

---

[2]    Mindful of the Court's admonition in its telephonic conference of December 3, 2013, the Individual Defendants have reviewed this Court's November 12, 2013 opinion in the Securities Class Action. None of the arguments raised herein was addressed in that opinion.  The Individual Defendants do not believe that the Court's rulings in the Securities Class Action (in which most of the Individual Defendants are not named) are dispositive of the issues raised herein as none of the claims in that action overlap with the claims in this action. Nor does this Court's conclusion that the Securities Class Action should proceed to discovery imply that any of the Individual Defendants is personally liable to Sapere for the myriad statutory and common law claims asserted in the Complaint.

[3]    Sapere also asserts claims against MF Global's external auditor, PricewaterhouseCoopers ("PwC"), and the private equity firm J.C. Flowers.

2

employees of MF Global or MFGI -- 22 of whom remain in the Complaint -- stole customer deposits.  Reduced to its essence, what the Complaint describes is a claim for breach of contract against MFGI:  namely, that MFGI has not returned all Sapere's funds (though it soon will have done so in full), as it was required to do by contract.  Yet Sapere has attempted to re-characterize that simple contract claim into a host of far-fetched tort claims against individuals because Sapere is barred from suing MFGI by the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362.  That Sapere cannot bring an action against its contractual counterparty, however, does not enable it to substitute other parties not in privity with it to recover for damages that it allegedly suffered.

Because Sapere's allegations are misdirected from the outset, they suffer from fatal flaws.  The Complaint does not differentiate among the various individually named defendants, and its generalized allegations fail to meet the most basic pleading requirements.  The Complaint asserts that key facts are "presently unknown" to Sapere (*see, e.g.*, Compl. ¶¶ 45, 60, 61(r), 110, 116, 127(b)(ii)), but especially under the present circumstances that is no excuse.  A plaintiff must present a defendant with sufficient, plausible factual allegations that serve as the basis for its claims.  Yet, as detailed below, Sapere's grab-bag of allegations consistently omits facts necessary to support elements of the alleged claims, and substitutes legal conclusions where allegations of fact are required.  Each of the twelve counts therefore fails to state a viable claim for relief, and must be dismissed with prejudice.

Sapere has already been afforded the opportunity to amend its allegations and has done so twice (once through filing an amended complaint, and recently by voluntarily dismissing without prejudice two counts and four defendants).  Sapere's continuing failure to state an actionable

claim against any of the Individual Defendants should now result in dismissal of the Complaint with prejudice.[4]

## STATEMENT OF FACTS [5]

Sapere -- a commodity pool investment fund -- is one of approximately "38,000 customers … adversely impacted" by the bankruptcy of MF Global and the liquidation of MFGI. (Compl. ¶ 114.)  According to its Complaint, Sapere had "[c]ash in excess of $95 million" and "$125 million in United States Treasury Bills" ("T-Bills") deposited with MFGI (*id.* ¶ 1(a), (b)), "pursuant to a written contract originally entered into with MFGI's predecessor (Man Financial)" (*id.* ¶ 208).[6]

The Trustee in charge of the liquidation of MFGI has reported that MFGI's customers have already received a substantial portion of their deposits and that all customers will soon be

---

[4]  Ms. O'Brien moves in the alternative to strike the last sentence of paragraph 4(u) of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).  "Under Rule 12(f), the Court is authorized to strike from a pleading any 'redundant, immaterial, impertinent, or scandalous matter.'"  *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 481 (S.D.N.Y. 2003) (Marrero, J.).  The allegation that Ms. O'Brien invoked her Fifth Amendment privilege in a *separate proceeding* is both immaterial, *see Fujisawa Pharm. Co. v. Kapoor*, No. 92 C 5508, 1999 WL 543166, at *9 (N.D. Ill. July 21, 1999) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (granting motion *in limine* to bar evidence that defendant invoked his Fifth Amendment privilege before Congress), and impertinent, *see Ohio v. Reiner*, 532 U.S. 17, 21 (2001) ("[W]e have emphasized that one of the Fifth Amendment's basic functions is to protect *innocent* men who otherwise might be ensnared by ambiguous circumstances.") (citation and internal punctuation omitted).

[5]  Factual allegations "drawn from [the] Complaint are accepted as true for purposes of the motion to dismiss only."  *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 2d 533, 534 n.1 (S.D.N.Y. 2011); *see also Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 210 (2d Cir. 2012).

[6]  Counsel for defendant Jon S. Corzine requested a copy of Sapere's customer agreement. Sapere refused to provide a copy.  *See* Letter from Jon R. Grabowski to Benjamin E. Rosenberg, Sept. 25, 2013 (annexed as Exhibit A to Declaration of Benjamin E. Rosenberg (the "Rosenberg Declaration")).

4

made whole.  *See* Order Granting Trustee's Mot. to (I) Approve Allocation of Property and (II) Approve Terms of Advance of General Estate Property for Final 100% Distribution to Former Commodity Futures Customers of MFGI, *In re MF Global, Inc.*, No. 11-2790 (MG) SIPA (Bankr. S.D.N.Y. Nov. 6, 2013) (Doc. 7208) (approving allocation of funds from general estate to customer estate and authorizing the Trustee to distribute funds sufficient to satisfy customers' net equity claims).  The value of cash and T-Bills already returned to Sapere through the liquidation proceedings is not disclosed in the Complaint.

### A.    Sapere's Claims Against the Individual Defendants

Sapere's basic claim is that MFGI misused customer deposits and that, upon the commencement of its liquidation, MFGI failed to return some or all of the funds deposited by Sapere as required under its contract.  Sapere says that the funds were not returned even though the "MF Global enterprise" made various oral and written representations to MFGI's customers assuring them that their deposits were safe (Compl. ¶¶ 13, 14, 64), and maintained "a live, twenty-four hours a day, seven days a week ('24/7') online portal called 'eMidas'" that allegedly displayed "a detailed accounting of what purported to be the exact dollars-and-cents physically present in Sapere's accounts in cash and T-Bills."  (*Id.* ¶ 13; *see also id.* ¶ 39.)

The Complaint does not allege that Sapere had any contact with any of the Individual Defendants.  It does not allege that any of the Individual Defendants made a representation to Sapere.  It does nothing more than assert in the most conclusory fashion, and without any factual support, that the Individual Defendants participated in a vast conspiracy to misuse commodity customer funds or "wrongfully looted" customer accounts.  (*Id.* ¶¶ 111, 115.)

**B.**     **Sapere's Misleading Definition of Segregated Funds**

In its effort to establish that "segregated accounts" were "wrongfully looted," and that the Individual Defendants "turned a blind eye to the truth," Sapere erroneously conflates "segregated" and "secured" funds.  To do so, Sapere collectively defines as "segregated funds" all customer deposits -- including "Customer Segregated Funds," "Foreign Secured Funds," and "Regulatory Excess."  (*Id.* ¶ 9.)  This error, among others, underpins nearly all of Sapere's claims.  Under the CEA and CFTC Rules, however -- as Sapere, a highly sophisticated investor, surely knows -- "Customer Segregated Funds" and "Foreign Secured Funds" are treated differently.  *See* Mot. Dismiss Customer Class Action 4-9 (discussing regulatory framework governing customer deposits with an FCM).

By defining all customer deposits collectively as "segregated funds," Sapere repeatedly misstates MFGI's obligations to its customers.  For instance, Sapere alleges that all of the assets that it deposited with MF Global were "segregated funds," (Compl. ¶ 15), and that MF Global's "Enterprise Risk Policy explicitly prohibited the use of segregated funds for MF Global liquidity purposes."  (*Id.* ¶ 16.)  But Sapere's definition of "segregated funds" includes Regulatory Excess, which MF Global was permitted to use "as if it were its own money," 77 Fed. Reg. 67,866, 67,895 (Nov. 14, 2012), and the Enterprise Risk Policy explicitly distinguishes between "segregated" and "non-segregated" customer funds.  *See* Enterprise Risk Policy § 7.5.5, at 66 ("[Client] funds may be designated as 'segregated' and 'non-segregated' according to the rules applicable in different jurisdictions.") (annexed as Exhibit B to the Rosenberg Declaration).[7]

---

[7]     The Court may consider the entirety of any document, such as the Enterprise Risk Policy (*see, e.g.*, Compl. ¶ 16), that is incorporated by reference or heavily relied upon in, or is otherwise integral to, the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Under both the Enterprise Risk Policy and the CEA and CFTC Rules, MF Global was permitted to use both Firm Invested In Excess **and** Regulatory Excess to support its own operations. Sapere does not -- and cannot -- point to any law, regulation, contract, or other document that required MFGI to maintain all customer deposits in "segregated" accounts or that prohibited all transfers out of segregated and secured accounts.

Sapere also repeatedly asserts that the Individual Defendants "deliberately ignored the truth [and] turned a blind eye" to the purported fact that MFGI was unlawfully using funds from customer accounts. (*See, e.g.*, Compl. ¶¶ 19, 26, 28; *see also id.* ¶¶ 60, 107, 109, 111.) As noted above, however, MFGI was legally permitted to use certain customer funds for its own purposes. The Complaint does not allege any facts showing that segregated 4d Funds were used improperly prior to October 26, 2011, or that any Individual Defendant was aware at any time before October 30, 2011 that any funds deposited by customers might have been removed improperly from a segregated account. The allegations in the Complaint do not support the inference that the Individual Defendants knew or should have known that MFGI was mishandling customer funds.

## ARGUMENT

### I. COUNT I MUST BE DISMISSED BECAUSE SAPERE SEEKS ONLY ECONOMIC LOSSES AND CANNOT ALLEGE EITHER A COGNIZABLE DUTY OR A BREACH BY ANY DEFENDANT.

In Count I, Sapere asserts that the Individual Defendants breached the "common law duty of care." This claim for negligence must be dismissed for two reasons. First, because Sapere seeks to recover damages only for economic losses, the "economic loss doctrine" precludes Sapere's negligence claims. Second, Sapere does not allege that the Individual Defendants owed it a cognizable duty of care or that any such duty was breached.

7

A.     **The Economic Loss Doctrine Bars Sapere's Claims.**

"New York law holds that a negligence action seeking recovery for economic loss will

not lie." *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984).[8]  This

"economic loss" doctrine recognizes that damages for economic loss typically are "remediable in

contract."  *Anwar v. Fairfield Greenwich Ltd. ("Anwar II")*, 728 F. Supp. 2d 372, 414 (S.D.N.Y.

2010) (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204,

220 (S.D.N.Y. 2007) (citation omitted)).  The doctrine "protects parties' abilities to allocate risk

by mutual agreement" and prevents a plaintiff from bringing a claim in tort for an injury that is

remediable in contract.  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783, 2013

WL 2452169, at *12 (S.D.N.Y. June 6, 2013) (dismissing negligence claims where relationship

between parties was governed by contract) (citations and internal quotations omitted); *see also*

Mot. Dismiss Customer Class Action 59-60 (citing additional cases).  Sapere admits that it had a

contract with MFGI (although it has refused to provide a copy).  Its remedy thus lies in a breach

of contract action against MFGI, not a tort claim against MFGI's corporate officers, directors or

employees.

*American Financial International Group – Asia, LLC v. Bennett*, No. 05 Civ. 8988, 2007

WL 1732427 (S.D.N.Y. June 14, 2007) (hereinafter "*American Financial*"), is especially

instructive because it involved an FCM, Refco, that was found to have engaged in fraud and was

then forced into bankruptcy.  Barred from suing Refco, a class of trading customers sued the

company's officers.  Plaintiffs claimed, among other things, that the officers had assured them

---

[8]     As laid out in the Motion to Dismiss the Customer Class Action, multiple jurisdictions
may have an interest in this action, namely, Illinois, Delaware, and New York.  To the
extent the Individual Defendants cite New York law for convenience on this motion to
dismiss, they do not concede that New York law has been "chosen," to the exclusion of
Delaware and Illinois law, to determine any issues in this case.

that Refco's trading operations were sound and that their trading accounts were secure. Soon after the customers received those assurances, Refco froze their accounts, blocking any withdrawal of funds. The customer class sued the officers in negligence to recoup the lost funds in their accounts. Observing that the class sought "recovery only of economic damages," Judge Lynch held that New York's economic loss doctrine required dismissal of their claim. *Id.* at *3.

Just like the customer plaintiffs in *American Financial*, Sapere is suing company officers, directors and other employees for claimed negligence, and seeks to recover only economic damages. Accordingly, as in *American Financial*, the economic loss rule applies, and Sapere's claim for negligence must be dismissed.

### B.    Sapere Fails to Allege a Cognizable Duty of Care or a Breach of Any Such Duty.

On any negligence claim, the plaintiff must first establish "a cognizable duty of care." *Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F. Supp. 2d 265, 285 (S.D.N.Y. 2001); *see also* Mot. Dismiss Customer Class Action 60-64. Here, Sapere asserts that the "MFG Defendants" owed it a duty of care, because they had "dominion and control over customer property." (Compl. ¶ 121.)

But the term "MFG Defendants" includes 22 individuals who worked for MF Global and/or MFGI, and runs the gamut from top executives and directors (including MF Global's independent outside directors), to lower-level MFGI officers and employees in a variety of positions, to an entirely separate entity, J.C. Flowers. The Complaint does not allege that any particular Individual Defendant had "dominion and control" over Sapere's funds, making it impossible to discern which of the Individual Defendants, if any, actually did. Because Sapere fails to plead any facts to show that any Individual Defendant, as opposed to MFGI itself, had

such "dominion and control," this claim should be dismissed.  *See Ochre LLC v. Rockwell Architecture Planning & Designs, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."), *aff'd*, No. 13-0005-cv, 2013 WL 3606123 (2d Cir. July 16, 2013).

Perhaps Sapere premises the supposed duty of care on the fact that some of the Individual Defendants worked at MFGI, the entity with which Sapere contracted.  Any such premise would be unsound.  "A corporate officer is not held liable for the negligence of a corporation merely because of his official relationship to it."  *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989) (quoting *Clark v. Pine Hill Homes, Inc.*, 492 N.Y.S.2d 253, 254 (4th Dep't 1985) (citations omitted)); *see also Anwar II*, 728 F. Supp. 2d at 414 (dismissing negligent misrepresentation and breach of fiduciary duty claims "based merely on [defendants'] employment at FGG").[9]

Even if any of the Individual Defendants owed Sapere a duty of care, a breach of that duty would have required affirmative malfeasance.  *See Airlines Reporting*, 721 F. Supp. at 585 ("Under New York law, an officer or director is not personally liable to third persons 'for an act of nonfeasance pertaining to the duties owed to the corporation.'").  Yet there is no claim of malfeasance by any Individual Defendant (with three exceptions described below).  Rather, the

---

[9]      Moreover, the Individual Defendants who were directors and/or officers of only MFGI's ultimate parent company, MF Global, but not of MFGI -- namely Messrs. Steenkamp, Dunne, Mahajan, Besgen, Bolger, Gelber, Glynn, Goldberg, Schamis and Sloan, and Ms. Fusco -- owed no duty of care to Sapere.  MF Global is a Delaware corporation, and it is well settled under Delaware law that neither a parent corporation nor its officers and directors owe a duty to a subsidiary's creditors.  *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 173, 191, 194 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust v. Billett*, 931 A.2d 438 (Del. 2007).

10

Complaint is premised on alleged nonfeasance, reflected in assertions that the Individual

Defendants failed to act "to safeguard and to stop the misuse and compromise of segregated

funds" (Compl. ¶ 99); "to implement adequate controls and systems to track liquidity and FCM

funds" (*id.* ¶ 122); and "to exercise due care … safeguarding, using and/or transferring …

Sapere's property" (*id.* ¶ 123).  The absence of actual malfeasance allegations provides a

separate basis for dismissing the claim.  *See Airlines Reporting*, 721 F. Supp. at 585 (allegations

that corporate officers and directors "fail[ed] to perform a duty owed to the corporation -- i.e., to

supervise the employees [who embezzled money]" did "not make corporate officers or directors

personally liable to third parties").

Three of the Individual Defendants (O'Brien, Corzine and Mahajan), however, are

alleged to have authorized two transfers that caused losses to MFGI's customers, including

Sapere.  The Complaint alleges that:

- On October 26, 2011, Ms. O'Brien authorized the transfer of "$615 million from the FCM business to fund securities trading of the MF Global enterprise that was not returned by the end of the business day."  (Compl. ¶ 61(j), 79.)  This allegedly resulted, on October 27, in a "draft" internal segregation statement which showed that "Firm Invested in Excess was negative $341,744,278" as calculated under the Net Liquidating Method.  (*Id.* ¶ 86.)

- On October 28, 2011, Mr. Corzine and Mr. Mahajan allegedly instructed Ms. O'Brien to transfer funds to resolve an overdraft issue, knowing "either that uncertainty existed whether customer funds would be used or that customer funds were being used."  (*Id.* ¶ 96.)

These allegations are not enough to hold even those three defendants personally liable for

negligence.  As to the first allegation, Sapere admits that the final internal segregation statement

for October 26, 2011 "reflected *positive excess*" in the FCM segregated accounts.  (*Id.* ¶ 88

(emphasis added).)  As to the second allegation, the most current data the Complaint points to –

that Firm Invested in Excess was negative by $341 million under the Net Liquidating Method on

11

October 27 (*id.* ¶ 94)[10] – did not indicate a regulatory concern because the firm had sufficient Regulatory Excess that it was permitted to use.  Moreover, the Complaint alleges that "the Segregation Statement that was filed with the CFTC [and other agencies] showed a Firm Invested in Excess of $150,379,941" on October 28, 2011, after a "$540 million manual adjustment" was made that "Defendants O'Brien and Hughey accepted" as accurate.  (*Id.* ¶ 100.) Taken as a whole, therefore, the Complaint confirms that on October 26, 27, and 28, 2011, Mr. Corzine, Mr. Mahajan, and Ms. O'Brien reasonably believed that the funds transferred were available to MF Global.  (*Id.* ¶¶ 86, 88.)  *See Ashcroft v. Iqbal,* 556 U.S. 662, 680, 682 (2009) (allegations of misconduct that were "more likely explained" by lawful conduct or for which there is an "obvious alternative explanation" fail to meet the pleading requirements of Rule 8(a)).

## II.  SAPERE HAS FAILED TO STATE A CLAIM AND HAS NO PRIVATE RIGHT OF ACTION AGAINST THE MFG DEFENDANTS FOR <u>DIRECT VIOLATIONS OF THE CEA (COUNTS IV, V).</u>

Count IV alleges "Direct Violations" of the CEA by Defendants Abelow, Corzine, Ferber, Klejna, MacDonald, O'Brien and Serwinski, along with PwC, arising from their alleged responsibility to supervise other MFGI employees.  (Compl. ¶¶ 137-58.)  The Complaint alleges that these individuals violated the CEA by "failing diligently to supervise the handling of commodity interest accounts carried, operated, advised or introduced by MFGI" (*id.* ¶ 147), and "failing diligently to supervise the other activities of its partners, officers, employees and agents … relating to its business as a Commission Registrant, including its business affecting commodities customers" (*id.* ¶ 148 (citing 17 C.F.R. § 166.3)).

---

[10]   As noted in the individual briefs of Mr. Abelow in the Commodity Customer Class Action, and as conceded by the plaintiffs in that case (*see* Docs. 423, 550, 579), Mr. Abelow did not receive the communication that Sapere relies on for the allegation in paragraph 94 of the Complaint.

12

Count V alleges that Defendants Abelow, Corzine, Ferber, Steenkamp and the Independent Directors are liable "as principals" for alleged violations of the CEA. (*Id.* ¶¶ 159-70.)  The Count alleges that these individuals were directors of MF Global or its U.S. holding company subsidiary, MF Global Holdings USA, Inc. ("MFG(USA)"), which was the sole shareholder of MFGI and "supervised [its] entire workforce." (*Id.* ¶¶ 165, 168.)  The theory underlying the Count is that MFG(USA) violated the CEA by failing "diligently to supervise the handling of" accounts (*id.* ¶ 166), "by willfully causing [wrongful] acts to be done or omitted," (*id.* ¶¶ 168, 170), or by "allowing and/or turning a blind eye to the misuse and/or looting of commodities customers' funds" (*id.* ¶ 169).

### A.    Sapere Lacks Standing to Assert Direct Violations of the CEA Against Any of the Individual Defendants.

Section 22 of the CEA, 7 U.S.C. § 25, identifies the parties whom an aggrieved person may sue for a violation of the CEA.  "Section 22 of the CEA 'enumerates the *only* circumstances under which a private litigant may assert a private right of action for violations of the CEA.'" *Starshinova v. Batratchenko*, 931 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) (quoting *Klein v. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 259 (2d Cir. 2006) (emphasis added in *Starshinova*)) (plaintiff did not have standing to bring a claim based on a direct violation of the CEA); *see also* Mot. Dismiss Customer Class Action 25-28.  Sapere does not and cannot allege the existence of any of the required circumstances, *to wit*, that it (a) received trading advice from any of the Individual Defendants for a fee; (b) traded through, or deposited money with, any of the Individual Defendants in connection with a commodities trade; (c) purchased from, sold to, or placed an order for purchase or sale of a commodity through any Individual Defendant; or (d)

13

that any Individual Defendant engaged in market manipulation activities.  Therefore, Counts IV
and V should be dismissed.

**B.    Even If Sapere Had Standing, the Complaint Fails to State a
Claim for Direct Violation of the CEA Based on Rule 166.3.**

Both Counts IV and V rest on the theory that the Individual Defendants named in those
counts supervised certain activities that went awry, and that their supervision was defective.  (*See*
Compl. ¶¶ 145-46, 158, 168-70.)  The Complaint cites repeatedly to Rule 166.3, which imposes
an obligation of supervision on certain registered officers of an FCM.  (*See id.* ¶¶ 144, 147-48,
166-68.)  But it is blackletter law that *there is no private right of action under Rule 166.3.  See,
e.g.*, *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 380 n.2 (S.D.N.Y.
2009); *Khalid Bin Alwaleed Found. v. E. F. Hutton & Co., Inc.*, 709 F. Supp. 815, 818 (N.D. Ill.
1989); *Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1069, 1072-73 (S.D.N.Y. 1985).

**C.    Even if Sapere Had Standing, the Complaint Fails to State a
Claim for Direct Violation of the CEA Based on MFGI's T-Bill Swaps.**

Count IV also makes certain allegations regarding certain T-Bill Swaps.  (*See* Compl. ¶¶
157-58.)  Specifically, Sapere alleges that funds deposited with MFGI for purposes of trading on
non-U.S. exchanges were required to be maintained in conformity with the UK regime for
safeguarding customer assets.  (*See id.* ¶ 156).  Sapere further alleges that according to Richard
Heis, one of the Joint Special Administrators of MFGUK, MFGI "swapped out" cash for "T-
Bills and/or Eurobonds" to be held on an "'absolute title'" basis by MFGUK (*id.* ¶ 157(c)), and
that "[i]f what Heis states is true" (*id.* ¶ 158), then the T-Bill swaps violated the CEA.

But even assuming that Heis' statements are true, the Complaint fails to state a violation
of the CEA.  The treatment of customer funds deposited with a U.S. FCM, and held at a qualified

depository, such as MFGUK, was governed by Rule 30.7.[11]  Rule 30.7 does not require compliance with the regulations of the foreign jurisdiction where the account is physically held, and permits an FCM to invest funds deposited by a customer trading on foreign exchanges in accordance with the provisions of Rule 1.25.  *See* 17 C.F.R. § 30.7(g).  The only activity Sapere alleges violated the CEA -- the investment of cash held in the MFGUK omnibus account in T-Bills -- was in fact in compliance with Rule 30.7 and permissible under Rule 1.25.  *See id.* § 1.25(a)(1)(i) (permitting FCMs to invest customer money in "[o]bligations of the United States and obligations fully guaranteed as to principal and interest by the United States").

## III.  SAPERE FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A VIOLATION OF THE CEA (COUNT VI).

Count VI alleges that each of the Individual Defendants "willfully aided, abetted, counseled, induced and/or procured the commission by MFGI of one or more violations of the [CEA]," including violations of segregation requirements and the anti-fraud provisions of the CEA and CFTC Rules.  (Compl. ¶¶ 173, 174.)  Sapere asserts that the Individual Defendants are therefore liable pursuant to Section 22(a)(1), 7 U.S.C. § 25(a)(1).

The Second Circuit has recently held that aiding and abetting a violation of the CEA "requires a defendant to 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'"  *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 182 (2d Cir. 2013) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)); *see also* Mot. Dismiss Customer Class Action 29-32; Reply Mot. Dismiss Customer Class Action 9-12.

---

[11]  MFGUK was a member of a foreign board of trade and a qualified depository under Rule 30.7(c)(1)(v).

The Complaint fails to meet the *Amaranth* standard.  Sapere provides a laundry list of provisions allegedly violated by MFGI, but does not allege that any of the Individual Defendants knew of or intended to further those violations.[12]  At most, Sapere alleges that, based on certain reports, some of the Individual Defendants should have drawn conclusions about the propriety of fund transfers during the last week of October.  This falls far short of alleging knowledge or intent to violate the CEA.

For the overwhelming majority of the Individual Defendants, the Complaint does nothing more than allege that the individuals *failed to take action* that might have prevented a violation of the CEA and CFTC Rules (*see, e.g.*, Compl. ¶¶ 17, 19, 26, 34, 42, 44, 49, 59, 61, 63-65, 98, 107), or that certain individuals *failed diligently to supervise* the actions of others (*id.* ¶¶ 144-45, 147, 148, 168-70).  But a failure to act is insufficient to state a claim for aiding and abetting a violation of the CEA.  *See In re Amaranth*, 730 F.3d at 182; *In re Rough Rice Commodity Litig.*, No. 11 c 618, 2012 WL 473091, at *8 (N.D. Ill. Feb. 9, 2012) ("'omissions or passive inaction'" are insufficient to state a claim for aiding and abetting under the CEA); *see also* Mot. Dismiss Customer Class Action 30-31.

To the extent that the Complaint purports to allege that the Individual Defendants caused MF Global to "take wrongfully from customer accounts" (*see, e.g.*, Compl. ¶ 46), the Complaint contains no allegations about the knowledge or intent of any specific individuals.  While there

---

[12]     For example, Sapere faults defendants Messrs. Steenkamp, Stockman, and Klejna, and Ms. Ferber for not informing regulators of an alleged Rule 1.25 violation on October 26, 2011, yet the Complaint fails to allege that any of those defendants knew of the alleged violation prior to speaking with regulators.  (*See* Compl. ¶ 61(l).)  Similarly, Sapere seeks to impose liability on Ms. Ferber and Mr. Klejna in connection with the October 28, 2011 transfer even though there is no allegation that either of those defendants knew prior to October 30, 2011 that customer funds had allegedly been misused.  (*Id.* ¶¶ 98-99.)

are several references to risks that *might* occur, there are no allegations that any Individual

Defendant *knew* that MFGI intended to misuse and in fact did misuse customer funds.  Instead,

Sapere asserts that certain Individual Defendants were aware that Firm Invested In Excess was

negative at certain times.  (*See, e.g., id.* ¶¶ 86-87.)  As explained at pp. 6-7, *supra*, those

allegations cannot support the conclusion that a violation of the CEA had occurred because

MFGI could remain in full compliance with all relevant rules and regulations even if such figures

were negative.  In the one instance where the Complaint asserts that the accounts actually

became undersegregated (Compl. ¶ 83.), Sapere provides no factual allegations that any

Individual Defendant knowingly participated in the creation of the alleged deficiency.

## IV.   SAPERE'S CLAIMS PREMISED ON THE EXISTENCE OF A FIDUCIARY DUTY FAIL FOR LACK OF ANY SUCH DUTY (COUNTS VII & VIII).

Counts VII (breach of fiduciary duty) and VIII (constructive fraud) share a common and

fatal defect.  Both counts are predicated on the existence of a fiduciary duty owed by the

defendants to Sapere, but none of the Individual Defendants owed Sapere any such duty.  Sapere

maintained an account with MFGI and had a contract with MFGI, and that is the entity that had

duties to Sapere.  The officers, directors and employees of MFGI and of its corporate parents --

that is, the Individual Defendants -- did not.

### A.    The Individual Defendants Did Not Owe a Fiduciary Duty to Sapere.

Corporate officers and directors do not owe any fiduciary duty to the corporation's

customers.  *See generally* Mot. Dismiss Customer Class Action 36-49 (collecting authority).

Similarly, the officers and directors of a corporate parent owe no duty to the creditors of its

subsidiaries.  *See* n.9, *supra*.  Accordingly, none of the Individual Defendants who were officers

or directors of MFG(USA), MFGI, or MF Global owed Sapere a fiduciary duty.

**B.     Because the Individual Defendants Did Not Owe a Fiduciary Duty to Sapere, Its Claim for Constructive Fraud Must Also Fail.**

To state a claim for constructive fraud, a plaintiff must establish the "same elements as actual fraud except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." *Faktor v. Yahoo! Inc.*, No. 12 Civ. 5220, 2013 WL 1641180, at *2 (S.D.N.Y. Apr. 16, 2013) (quoting *E*TRADE Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009)).  None of the Individual Defendants owed Sapere a fiduciary duty, *see* Point IV.A, *supra*, and there is no allegation of a "confidential relationship," let alone facts showing any such relationship between Sapere and any Individual Defendant. Sapere's claim for constructive fraud therefore fails.  *See Faktor*, 2013 WL 1641180, at *3 (dismissing claims for breach of fiduciary duty and constructive fraud where plaintiff "failed to adequately plead a fiduciary or confidential relationship"); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 258 (S.D.N.Y. 2008) ("In order to sustain a claim for breach of fiduciary duty, constructive fraud, or negligent misrepresentation, a plaintiff must allege the existence of a fiduciary or special relationship with the defendant.").

**V.     COUNT IX MUST BE DISMISSED BECAUSE SAPERE HAS FAILED TO PLEAD FRAUD WITH PARTICULARITY AND HAS OTHERWISE FAILED TO STATE A CLAIM.**

**A.     Sapere Has Failed to Plead Fraud with Particularity.**

"When alleging fraud, 'a party must state with particularity the circumstances constituting fraud,' … which … requires the plaintiff to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).  "When fraud is alleged against

18

multiple defendants, a plaintiff must plead with particularity by setting forth *separately* the acts or omissions complained of by *each defendant*." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (emphasis added).

Sapere takes exactly the opposite approach, asserting vague allegations of fraud against an undifferentiated aggregation of no fewer than 22 individuals and one limited liability company.[13]  *Cf. Mills*, 12 F.3d at 1175 (dismissing fraud claims where complaint did "not link the alleged fraudulent statements to particular [defendants]" but instead "vaguely attribute[d] the alleged fraudulent statements to 'defendants'").

Courts have repeatedly rejected such "wholesale naming of directors and officers of corporations" as inadequate.  *The Limited, Inc. v. McCrory Corp.*, 645 F. Supp. 1038, 1043 n.10 (S.D.N.Y. 1986); *see also Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227, 2010 WL 685009, at *5 (S.D.N.Y. Feb. 23, 2010) ("Attributing fraudulent statements to a group … does not satisfy the Rule 9(b) standard, as allegations of false representations must be attributed to specific defendants.").  Because the complaint "fails to separate" the so-called "MFG Defendants" with "specific allegations of wrongdoing as to each one of them, the complaint does not pass muster under Rule 9(b)." *Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 641 (S.D.N.Y. 1999).

Sapere's allegations of misrepresentation rest principally on statements contained in reports and publications allegedly filed, issued, or distributed by MFGI, as well as on

---

[13]     Sapere's allegations of fraud and/or nondisclosure are generally directed either at the "MFG Defendants" or, even more vaguely, at the "MF Global enterprise." (*See* Compl. ¶¶ 13, 42, 45, 49, 61(1), 63(a)-(b), 64(a)-(b), 79, 101, 107, 111, 116, 182, 187, 189, 191.) Occasionally, Sapere's allegations are framed in the passive voice (*see id.* ¶¶ 43, 44, 60), or the alleged misrepresentations are attributed to a website (*see id.* ¶¶ 14, 39), again providing no basis to attribute such statements to any Individual Defendant.

information allegedly available on the "MF Global website" and the "eMidas" portal.[14]  Sapere's claim appears to be that these statements led it to understand (wrongly and contrary to the applicable regulations and the terms of the standard customer agreements) that Sapere's funds were held in a separate account and not commingled with any other funds.  But Sapere (a) fails to allege when the alleged misstatements were made;[15] (b) identifies no specific misstatement that led it to this understanding; and (c) never explains how a sophisticated investor such as Sapere could have misunderstood such a fundamental point.  Blanket allegations against "directors and officers of corporations," without "any indication of the role of the individual defendants in the preparation or dissemination" of allegedly misleading materials, do not satisfy the requirements of Rule 9(b).  *The Limited*, 645 F. Supp. at 1043 n.10; *see also American*

---

[14]     *See* Compl. ¶¶ 13, 39, 116 ("eMidas"); 14 ("MF Global website"); 63(a) ("customer-accessible, password-protected, digital account displays"); 63(b) ("monthly and material-change 'Segregated Investment Detail Reports,'" "monthly SEC FOCUS and/or CFTC Form 1-FR-FCM reports"); 64(a) ("Managed Futures Today February 2011 Safeguarding Customers Through Segregated Funds"); 64(b) ("MF Global ® October 2011 Financial Overview"); 182, 187 ("online, in account statements and in website and other publications").  Notably, the document titled "Safeguarding Customers Through Segregated Funds" purports to have been written by the staff of a publication titled "Managed Futures Today," not by anyone at MF Global, let alone any of the Individual Defendants.  *See* "Safeguarding Customers Through Segregated Funds," Managed Futures Today, Feb. 2011, *available at* http://www.managedfuturestodaymag.com/safeguarding-customers-through-segregated-funds (last visited Dec. 4, 2013).

[15]     Sapere's repeated assertions that the alleged misrepresentations were made "at all material times" (Compl. ¶ 13), or "continuously" (*id.* ¶ 14), or "24/7" (*id.* ¶¶ 116, 182, 187), fail to provide the specificity required by Rule 9(b).  *See American Financial*, 2007 WL 1732427, at *7 ("Alleging that misrepresentations were made 'at all relevant times' does not give the defendants fair notice as to which statements were misleading").  Broad references to "monthly" reports or filings (Compl. ¶ 63(b)) are likewise inadequate.  *Alnwick*, 281 F. Supp. 2d at 640 (designating a "vague window of time is insufficient to satisfy the pleading standards of Rule 9(b)"); *Sendar, Inc. v. Megaware, Inc.*, 705 F. Supp. 159, 161-62 (S.D.N.Y. 1989) (dismissing claim for fraud where amended complaint failed to allege the "specific time and place" of alleged misrepresentations).

*Financial*, 2007 WL 1732427, at *11 (dismissing fraud claim where, among other things, plaintiff's complaint offered "no basis for the inference that the website statements were made by any of the moving defendants").

### B.    Sapere Fails to Allege That It Relied on Representations Made by Any of the Individual Defendants.

To the extent that the Complaint even attributes an alleged misstatement to a specific Individual Defendant, Sapere fails to allege reliance on that statement.[16]  In the absence of particularized factual allegations showing actual and reasonable reliance, a fraud claim cannot stand.  *See, e.g.*, *Warren v. John Wiley & Sons, Inc.*, No. 12 Civ. 5070, 2013 WL 3328224, at *11 (S.D.N.Y. Jul. 2, 2013); *Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011).

### C.    Sapere Has Failed to Allege Facts Giving Rise to a Strong Inference of Fraudulent Intent.

To state a claim for fraud, a plaintiff must also "'allege facts that give rise to a *strong* inference of fraudulent intent.'"  *Nakahata*, 723 F.3d at 198 (citation omitted; emphasis in original).  The required inference can be demonstrated only by facts establishing either "'motive and opportunity'" or "'conscious recklessness -- *i.e.*, a state of mind *approximating actual intent, and not merely a heightened form of negligence*.'"  *S. Cherry St., LLC v. Hennessee Grp. LLC*,

---

[16]    In paragraph 64(c), the Complaint alleges that Mr. Steenkamp "knowingly and falsely told Moody's that 'capital and liquidity has never been stronger.'" Compl. ¶ 64(c). Sapere fails to allege that Moody's provided this statement to the public or that Sapere (or Moody's) relied on it in any way.  Similarly, at paragraphs 61(l) and 79, Sapere alleges that "Defendants O'Brien, Lyons and Simons together with others falsely pretended that $325 million in a BD account at Bank of New York Mellon Bank comprised an investment of FCM segregated funds in compliance with 17 CFR § 1.25 …."  Again, the Complaint fails to allege any reliance.

573 F.3d 98, 109 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)) (emphasis in original).

The Complaint alleges that the Individual Defendants were motivated by a desire to justify their "investment banker-level compensation" and to prevent commodities customers from "withdrawing their funds from the MF Global enterprise." (Compl. ¶¶ 107, 111.) But a motive to keep "corporate profits high or to increase one's own compensation" does not support the requisite inference of fraudulent intent. *See American Financial*, 2007 WL 1732427, at *8; *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("[A] plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."). A "desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud." *Rodriguez*, 2010 WL 685009 at *6.

Sapere has likewise failed to meet the "significant burden" of pleading a claim of fraud based on recklessness or conscious misbehavior. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996). Where, as here, the allegations involve multiple defendants, "plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009). As set forth above, Sapere does not satisfy its burden because it does not distinguish between any of the Individual Defendants -- and barely identifies most of them.

**D.    Sapere Has Failed to Allege a Duty to Disclose.**

The Complaint repeatedly alleges that the "MFG Defendants" either "knew" or "had reason to know" of facts which they failed to disclose, but the allegations are "so broad and conclusory as to be meaningless." *Shields*, 25 F.3d at 1129 (citation and quotation marks

22

omitted).  Once again, Sapere has failed to identify which, if any, of the Individual Defendants was "specifically responsible" for the alleged omissions.

Sapere has also failed to allege any facts giving rise to a duty to disclose on the part of any of the Individual Defendants.  *See Odyssey*, 85 F. Supp. 2d at 294 (pleading inadequate under Rule 9(b) where, among other things, plaintiff failed to specify how allegedly "fraudulently omitted facts" related to each defendant and failed to distinguish "which of the six parties … was specifically responsible for the failure to disclose").  A duty to disclose material facts "may arise in two situations:  first, where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984) (citations omitted).  A duty to disclose based on superior knowledge arises "only 'in the context of business negotiations where parties are entering a contract.'"  *Jurgensen v. Felix Storch, Inc.*, No. 12 Civ. 1201, 2012 WL 2354247, at *9 (S.D.N.Y. June 14, 2012) (citation omitted); *see also Ray Larsen Assocs., Inc. v. Nikko America, Inc.*, No. 89 Civ. 2809, 1996 WL 442799, at *5 (S.D.N.Y. Aug. 6, 1996) ("A review of the cases which recognize a duty to disclose due to one party's superior knowledge reveals that the duty ordinarily arises only in the context of business negotiations where parties are entering a contract."); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citing cases).

As discussed in Point IV.A, *supra*, Sapere was not in a fiduciary relationship with any of the Individual Defendants.  The Complaint nowhere alleges that any of the alleged non-disclosures occurred in the context of contract negotiations.  Accordingly, Sapere has failed to state a claim for fraud based on a duty to disclose.

VI.   **SAPERE'S CONVERSION CLAIM IS NOTHING MORE THAN AN IMPERMISSIBLE BREACH OF CONTRACT CLAIM AGAINST MFGI (COUNT X).**

In Count X, Sapere alleges that the Individual Defendants "jointly and severally[] converted portions of Sapere's accounts, including cash and securities" through the actions alleged in the Complaint.  (Compl. ¶ 200.)

Once again, this is a breach of contract claim, not a conversion claim.  The argument is simply that MFGI did not return the money as required by Sapere's agreement with MFGI.  The remedy is a breach of contract claim against the contracting party, MFGI, not a conversion claim against corporate directors, officers and employees.  Courts routinely reject attempts, like Sapere's, to plead contract claims as conversion claims.  *See, e.g.*, *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 332 (S.D.N.Y. 2010) ("New York law does not permit a plaintiff to raise a breach of contract into a conversion claim.") (citing *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000)); *see also Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008) (New York "courts have found that in actions involving the contractual duties of corporations and financial institutions, a [tort] action may not be maintained and parties must proceed under a contract theory.").

Sapere also fails to plead facts to support a conversion claim.  Under New York law, "to establish a cause of action to recover damages for conversion, the plaintiff must show [1] legal ownership or an immediate superior right of possession to a specific identifiable thing and must show [2] that the defendant exercised an unauthorized dominion over the thing in question . . . [3] to the exclusion of the plaintiff's rights."  *Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 161-62 (2d Dep't 2012) (quoting *Scott v. Fields*, 925 N.Y.S.2d 135, 137 (2d Dep't 2011)).  The Complaint lacks any well-pleaded allegation that any of the Individual Defendants

24

independently exercised "unauthorized dominion" over customer funds -- let alone Sapere's funds (which are the subject of its claims) -- and must therefore be dismissed.

As alleged in the Complaint, "Sapere had deposited money, securities and property (including Sapere's cash and T-Bills) in the aforesaid accounts pursuant to a written contract[.]" (Compl. ¶ 208.)  Because Sapere has refused to provide a copy of its customer agreement, it is fair to refer to the standard form MFGI contract.  Those contracts contain a "Consent to Loan or Pledge," granting MFGI (and its affiliates) the right "to borrow, pledge, repledge, transfer, hypothecate, rehypothecate, loan or invest" funds deposited by customers, including using that money "to purchase or sell securities pursuant to repurchase agreements or reverse repurchase agreements with any party."  *See* Declaration of Neil S. Binder in Support of Motion to Dismiss Customer Class Action Ex. 9 (Customer Agreement) at § 7 (Doc. 430-19, at 15); *see also id.* Ex. 10, at § 8 (Doc. 430-20, at 11).[17]  MFGI could engage in such actions "without notice" and with "no obligation to retain a like amount of similar Collateral in [its] possession and control."  *Id.*

These contractual provisions establish that MFGI's dominion was expressly agreed to in writing.  There was nothing "unauthorized" about it.  *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 538 (S.D.N.Y. 2009) (dismissing FCM customer's conversion claim against the former FCM officers when the customer agreement had specifically authorized the FCM to "'loan, pledge, hypothecate or otherwise dispose'" of client property); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330-31 (S.D.N.Y 2011) (dismissing a conversion claim based upon actions "explicitly authorized" in the parties' agreement).

---

[17]   These documents may be considered by the Court because they are in the same form as the contract between Sapere and MFGI and because Sapere's contract is referenced in and otherwise integral to the Complaint.  (*See, e.g.*, Compl. ¶ 208-10.)

## VII.   SAPERE'S CLAIM FOR TRESPASS TO CHATTELS FAILS (COUNT XI).

Sapere's claim for trespass to chattels (Count XI) fails for many of the same reasons that its claim for conversion fails.  Sapere alleges, in pertinent part, that: (1) the cash and T-Bills held in Sapere's accounts at MFGI are chattels belonging to Sapere; (2) the MFG Defendants "intentionally dispossessed Sapere of the chattels, used them and/or intermeddled with them for a substantial time"; and (3) trespass of the MFG Defendants "impaired the chattels" causing damage to Sapere.  (Compl. ¶¶ 203-205.)  "Under New York law, '[a] claim for trespass to chattels occurs when defendant intentionally, and without justification or consent, physically interferes with the use and enjoyment of plaintiff's personal property in plaintiff's possession, thereby causing harm to plaintiff.'"  *Elektra Entm't Grp., Inc. v. Santangelo*, No. 06 Civ. 11520, 2008 WL 4452393, at * 6 (S.D.N.Y. Oct. 1, 2008) (*quoting Davidoff v. Davidoff,* No. 101728/06, 2006 WL 1479558, at *11 (N.Y. Sup. Ct. May 10, 2006)).

Any alleged injury to Sapere resulted from the treatment of funds deposited into an account.  However, funds do not constitute a "chattel."  "Chattel is defined as [m]ovable or transferable property [such as] personal property.  Money is fungible and not properly characterized as a chattel."  *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) (internal quotations and footnotes omitted).  Furthermore, Sapere was not wrongfully "dispossessed" of the alleged chattels:  the cash and T-Bills were not in Sapere's possession (as required to state a claim for trespass), but were instead in MFGI's possession by consent.  As discussed above, each customer agreement contains a "Consent to Loan or Pledge" provision.  Thus, there was no "wrongful dispossession"; rather, MFGI was contractually authorized to engage in the conduct described in the Complaint.

Finally, as with Sapere's conversion claim, *see* Point VI, *supra*, Sapere's claim for

trespass to chattels is nothing more than a breach of contract claim that cannot be asserted as a

tort. *See, e.g.*, *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (observing that "[i]t is

also settled under New York law that a tort claim will not arise 'where plaintiff is essentially

seeking enforcement of the bargain'" (citations omitted)).

## VIII.   SAPERE'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS CANNOT BE ASSERTED AGAINST THE INDIVIDUAL DEFENDANTS (COUNT XII).

Sapere alleges that the Individual Defendants tortiously interfered with Sapere's contract

with MFGI.  (Compl. ¶¶ 207-10 (Count XII).)  The only circumstance under which corporate

insiders (like the Individual Defendants) can be liable for intentionally interfering with a contract

involving their employer or a corporate affiliate of their employer is where their actions "were

beyond the scope of their employment or, if not, were motivated by their personal gain, as

distinguished from gain for the corporation." *Petkanas v. Kooyman*, 759 N.Y.S.2d 1, 2 (1st

Dep't 2003); *see also* Mot. Dismiss Customer Class Action 65-68.  In addition, a plaintiff must

show that the allegedly tortious acts "were performed with malice and were calculated to impair

the plaintiff's business for the personal profit of the defendant." *Joan Hansen & Co., Inc. v.

Everlast World's Boxing Headquarters Corp., et al.*, 774 N.Y.S.2d 384, 391 (1st Dep't 2002).

The Complaint does not allege that any of the Individual Defendants acted outside the

scope of their employment.  Nor does it allege that any of them acted with malice or were

motivated by personal gain "as distinguished from gain for the corporation." *Petkanas*,

759 N.Y.S.2d at 2.  Finally, even if the tortious interference with contract claim were not wholly

misdirected, it would fail because, here too, there is no allegation as to *which* defendant did *what*,

and the allegations against each of the Individual Defendants are woefully inadequate.

## IX.   SAPERE FAILS TO STATE A CLAIM UNDER § 349 OF NEW YORK'S GENERAL BUSINESS LAW (COUNT XIII).

Count XIII alleges that the defendants violated New York General Business Law Section 349 ("§ 349"), which prohibits "[d]eceptive acts or practices in the conduct of any business."

Critically, § 349 is not intended to apply to transactions involving "large sums of money." *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984); *see also Waverly Props., LLC v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 567 (S.D.N.Y. 2011) (Marrero, J.) ("[W]hile [plaintiff] asserts that 'there is no exception for wealthy purchasers under [§] 349,' the amount of money involved in the transaction unquestionably is an important factor in the analysis.") (citation and internal quotation marks omitted).  Rather, the purpose of the statute is to redress "an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (internal quotation marks omitted). *Accord Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) ("[P]laintiffs claiming the benefit of section 349 . . .  must charge conduct of the defendant that is consumer-oriented.").  And, as New York courts have explained, § 349 "only prohibits those deceptive practices which are of a recurring nature and affect the public interest." *Quail Ridge Assocs. v. Chem. Bank*, 558 N.Y.S.2d 655, 658 (3d Dep't 1990).  Additionally, for allegedly deceptive acts or practices to be actionable under § 349, "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002).

Similarly, § 349 is not intended to protect sophisticated parties who mutually enter into complex transactions. *Genesco Entm't*, 593 F. Supp. at 752 (holding "'single shot transaction[s]' involving complex arrangements, knowledgeable and experienced parties and large sums of

28

money" are outside the purview of § 349); *see also Eden Rock Fin. Fund, L.P. v. Gerova Fin. Grp. Ltd.*, No. 650613/2011, 34 Misc. 3d 1205(A), 2011 WL 6955884, at *5 (Sup. Ct. [N.Y. Cnty.] Dec. 21, 2011) ("Investments in hedge funds are not the type of transactions that the statute is intended to cover."); *In re Evergreen Mut. Funds Fee Litig.,* 423 F. Supp. 2d 249, 264-65 (S.D.N.Y. 2006) (denying § 349 claim of plaintiff investors "who were seeking income, investment growth, and the preservation of capital -- not consumers who were purchasing traditional goods or services," and who were already protected under federal securities laws); *In re Eaton Vance Mut. Fund Litig.*, 380 F. Supp. 2d 222, 240 (S.D.N.Y. 2005) (denying claim because § 349 does not cover securities transactions).

Sapere alleges that it had more than $200 million in cash and T-Bills on deposit with MFGI.  (Compl. ¶ 1.)  Its relationship with MFGI was governed by a contract (*id.* ¶ 208), and the Complaint contains only allegations of harm to Sapere resulting from its private contractual relationship with MFGI.  Sapere has pleaded no facts showing that any alleged "deception" occurred in New York, or that its effects were experienced in New York.[18]  In fact, many of the allegations relate to actions by individuals located in Chicago.  To the extent that alleged misconduct is premised on the T-Bill swap program, much of the activity occurred in London.  And it is further clear that § 349 is not intended to protect sophisticated investors like Sapere.  For these reasons alone, any § 349 claim fails.

---

[18]     To the extent Sapere relies on its allegation that the liquidation impacted more than 38,000 customers, the Complaint still fails to allege facts sufficient to demonstrate that the alleged misconduct occurred in New York.  *See Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 687 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) (dismissing § 349 claim where the complaint fell short of "pleading facts from which the Court can infer deception of Kaufman, and those similarly-situated, that occurred in New York.").

In any event, Sapere's claims are also not the types that can be redressed by § 349, because § 349 is not intended to be a method to seek relief for breach of contract. *See Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25 ("[p]rivate contract disputes, unique to the parties" are not appropriate for relief under § 349); *see also Teller,* 630 N.Y.S.2d at 774 ("The statute was intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses.  It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract."). Even if Sapere's claims could be remedied by § 349, Sapere's allegations that defendants injured Sapere through "deceptive acts or practices in the conduct of business ..." (Compl. ¶¶ 212-13) are conclusory and insufficient.  *See, e.g., Stadt v. Fox News Network LLC,* 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010) (dismissing claim where "the Complaint lack[s] any allegations as to how consumers were harmed by [defendant's] 'misleading' behavior . . .").

## X.   THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING TORTIOUS CONDUCT (COUNT XIV).

Count XIV of the Complaint, entitled Aiding and Abetting Tortious Conduct, seeks to hold each of the Individual Defendants liable for aiding and abetting unspecified breaches of fiduciary duty by the "approximately forty-five corporations and other entities," defined by Sapere as "the MF Global enterprise."  (Compl. ¶¶ 3, 215, 216-217.)  It also contains other catch-all boilerplate allegations that, even if not liable as principals, each and every MFG Defendant, "did a tortious act in concert with" the others, "knew and/or recklessly ignored" each other's breaches of duties, and "gave substantial assistance" to each other, to MF Global, MFG(USA), and MFGI "in accomplishing a tortious result."  (*Id.* ¶ 216.)  Such "[c]onclusory allegations that

the defendant violated the standards of law do not satisfy the need for plausible factual allegations." *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 191 (2d Cir. 2010).

Three elements are required to state a claim under New York law for aiding and abetting a breach of fiduciary duty.  *In re Sharp Int'l Corp.,* 403 F.3d 43, 49 (2d Cir. 2005).  "The first element is 'a breach by a fiduciary of obligations to another,' of which the aider and abettor had 'actual knowledge.'"  *Id.* (quoting *Kaufman v. Cohen,* 760 N.Y.S.2d 157, 169 (1st Dep't 2003)). Constructive knowledge of another person's breach of fiduciary duty is legally insufficient to impose aiding and abetting liability.  *Kaufman,* 760 N.Y.S.2d at 169; *see also Kolbeck v. LIT Am., Inc.,* 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998).  The second is "that the defendant knowingly induced or participated in the breach"; and the third is "that plaintiff suffered damage as a result of the breach."  *Kaufman,* 760 N.Y.S.2d at 157; *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000); *S&K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847-48 (2d Cir. 1987); *Whitney v. Citibank, NA,* 782 F.2d 1106, 1115 (2d Cir. 1986).  The Complaint fails to satisfy any of these required elements.

First, as shown in Point IV.A, *supra*, none of the Individual Defendants owed a fiduciary duty to Sapere.  Even if some member of the "MF Global enterprise" owed a fiduciary duty to Sapere, the Complaint fails to identify what conduct by which of the "approximately forty five corporations and other entities" (Compl. ¶ 3) constituted a breach of that duty.

Second, the Complaint also fails to allege that any Individual Defendant knowingly induced or participated in the breach of a fiduciary duty.  While the Complaint gives lip service to this required element by alleging that "each MFG Defendant … gave substantial assistance to each other, Holdings, MF Global Holdings USA, Inc. and/or MFGI," (Compl. ¶ 216(c)), Sapere fails to identify what conduct by which "MFG Defendant" constituted "substantial assistance,"

31

from which this Court might infer that such defendant "'knowingly induced or participated in the breach.'"  *In re Sharp Int'l Corp.,* 403 F.3d at 49.

Third, having failed to state a claim for breach of a fiduciary duty, and having failed to plead knowing inducement of or participation in such a breach, Sapere cannot show that it was harmed by any of the Individual Defendants.

## XI.   AS A MATTER OF LAW, SAPERE IS NOT ENTITLED TO PUNITIVE DAMAGES.

Sapere overreaches in seeking punitive damages from the Individual Defendants for: Count I (Breach of Common Law Duty of Care), Count VIII (Constructive Fraud), Count IX (Actual Fraud), Count X (Conversion), Count XII (Interference with Contract Rights) and Count XIV (Aiding and Abetting Tortious Conduct).

"Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be do prompted, from indulging in similar conduct in the future."  *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961) (citations omitted).  To warrant an award of punitive damages, a plaintiff must show "'conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless to amount to such disregard.'"  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 127 (2d Cir. 2013) (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990)); *see also Sapirstein-Stone-Weiss Found. v. Merkin*, No. 13 Civ. 415, 2013 WL 2495141, at *7 (S.D.N.Y. June 11, 2013) (Marrero, J.) ("Punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in

32

such conscious disregard of the rights of another that it is deemed willful and wanton." (citations and internal quotation marks omitted)); *Loitz v. Remington Arms Co.,* 138 Ill. 2d 404, 415-16 (1990) (same); *Jardel Co., Inc. v. Hughes,* 523 A.2d 518, 529-30 (Del. 1987) (same).

Sapere does not -- and cannot -- allege that any of the Individual Defendants acted for "evil or reprehensible" reasons.  There is no allegation or claim of any improper motive or personal gain.  Moreover, Sapere does not allege any facts in support of its claim that the Individual Defendants' conduct was "a conscious and deliberate disregard of Sapere's rights." (Compl. ¶¶ 125, 201, 206, 210, 217.)  Without alleging facts sufficient to satisfy the high threshold of misconduct required, Sapere is not entitled to maintain a claim for punitive damages.  *See, e.g., Shanahan v. Vallet*, No. 03 Civ. 3496, 2004 WL 2937805, at *11-12 (S.D.N.Y. Dec. 19, 2004) (dismissing claim for punitive damages where plaintiffs did not "allege [] facts that point to high moral culpability or to gross, wanton, or willful fraud"); *Fin. Servs. Vehicle Trust v. Saad*, 72 A.D.3d 1019, 1021 (2d Dep't 2010) (holding that motion to dismiss claim for punitive damages should have been granted where plaintiff "failed to allege facts sufficient to demonstrate . . . conduct which rose to the high level of moral culpability necessary to support a claim for punitive damages").

In addition, Sapere concedes that the deposit and maintenance of its funds with MFGI was at all times governed by and pursuant to a contract.  Where the tort claims alleged "arise[] out of a contract" or a contractual relationship, New York federal courts have required a showing of conduct "'aimed at the public generally'" in order to justify an award of punitive damages. *See Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 610 (S.D.N.Y. 2011) (Marrero, J.), *aff'd*, 510 F. App'x 74 (2d Cir. 2013) (requiring conduct "'aimed at the public generally'" to award punitive damages where a tort claim "arises out of a contract"); *Mayline Enters., Inc. v.*

33

*Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311-12 (S.D.N.Y. 2009) (holding a showing of "public harm" necessary for an award of punitive damages where there was a "contractual relationship").

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint must be dismissed in its entirety as to each of the Individual Defendants.  Furthermore, as Sapere has twice amended its Complaint, after having access to voluminous public disclosures, the Complaint should be dismissed with prejudice.

[Remainder of Page Intentionally Left Blank]

34

Dated: New York, New York                          Respectfully submitted,
      December 6, 2013

DECHERT LLP                                        KRAMER LEVIN NAFTALIS & FRANKEL
                                                   LLP


By: /s/ Benjamin E. Rosenberg                      By: /s/ Arthur H. Aufses III

Andrew J. Levander                                 Arthur H. Aufses III
Benjamin E. Rosenberg                              Paul Schoeman
Rebecca S. Kahan                                   Craig L. Siegel
Matthew L. Mazur

1095 Avenue of the Americas                        1177 Avenue of the Americas
New York, New York  10036                          New York, New York  10036
Tel: (212) 698-3500                                Tel: (212) 715-9100
Fax: (212) 698-3599                                Fax: (212) 715-8000
benjamin.rosenberg@dechert.com                     pschoeman@kramerlevin.com

*Attorneys for Jon S. Corzine*                     *Attorneys for Bradley I. Abelow*

BINDER & SCHWARTZ LLP                              DAVIS POLK & WARDWELL LLP

By: /s/ Neil S. Binder                             By: /s/ Edmund Polubinski III

Neil S. Binder                                     Edmund Polubinski III
                                                   David B. Toscano

28 West 44th Street, 6th Floor                     450 Lexington Avenue
New York, New York  10036                          New York, New York  10017
Tel: (347) 334-5090                                Tel: (212) 450-4000
Fax: (347) 772-3072                                Fax: (212) 450-3659
nbinder@binderschwartz.com                         edmund.polubinski@davispolk.com

                                                   *Attorneys for David P. Bolger, Eileen S. Fusco,*
*Attorneys for Henri J. Steenkamp*                 *David Gelber, Martin J.G. Glynn, Edward L.*
                                                   *Goldberg, David I. Schamis, and Robert S.*
                                                   *Sloan*

LANKLER SIFFERT & WOHL LLP

By: /s/ Daniel E. Reynolds

Daniel E. Reynolds
Michael D. Longyear

500 Fifth Avenue, 33rd Floor
New York, New York  10110
Tel: (212) 921-8399
Fax: (212) 764-3701
dreynolds@lswlaw.com

*Attorneys for Laurie R. Ferber*

ROBINSON MCDONALD & CANNA LLP

By: /s/ Jayne S. Robinson

Jayne S. Robinson
Kathryn Ann McDonald
Brett Canna

61 Broadway, Suite 1415
New York, New York  10006
Tel: (212) 953-3400
Fax: (212) 953-3690
jrobinson@rmc-llp.com

*Attorneys for Christine A. Serwinski*

AKIN GUMP STRAUS HAUER & FELD LLP

By: /s/ Robert H. Hotz, Jr.

Robert H. Hotz, Jr.
Estela Diaz

One Bryant Park
New York, New York  10036
Tel: (212) 872-1000
Fax: (212) 872-1002
rhotz@akingump.com

*Attorneys for John Ranald MacDonald*

MILBANK TWEED HADLEY & MCCLOY LLP

By: /s/ Thomas Arena

Thomas Arena
James N. Benedict
Sean Murphy

1 Chase Manhattan Plaza
New York, New York  10005
Tel: (212) 530-5000
Fax: (212) 530-5219
jbenedict@milbank.com

*Attorneys for Michael G. Stockman*

THOMPSON COBURN LLP

GAGE SPENCER & FLEMING LLP

By: /s/ Helen B. Kim_____

By: /s/ G. Robert Gage_____

Helen B. Kim

G. Robert Gage

2029 Century Park East, Suite 1900
Los Angeles, California  90067
Tel: (310) 282-9430
Fax: (310) 282-2501
hkim@thompsoncoburn.com

410 Park Avenue
New York, New York  10002
Tel: (212) 768-4900
Fax: (212) 768-3629
grgage@gagespencer.com

*Attorneys for Dennis A. Klejna*

*Attorneys for David Simons, and Robert Lyons*

STEPTOE & JOHNSON LLP

DE FEIS O'CONNELL & ROSE, P.C.

By: /s/ Christopher J. Barber_____

By: /s/ Gregory J. O'Connell_____

Christopher J. Barber
Darren B. Kinkead

Gregory J. O'Connell
Vera M. Kachnowski
Philip C. Patterson

115 South Lasalle Street, Suite 3100
Chicago, Illinois  60603
Tel: (312) 577-1300
Fax: (312) 577-1370
cbarber@steptoe.com

500 Fifth Avenue, 26th Floor
New York, New York  10110
Tel: (212) 768-1000
Fax: (212) 768-3511
gjo@dorlaw.com

*Attorneys for Edith O'Brien*

*Attorneys for Vinay Mahajan*

GEIER HOMAR & ROY LLP

SULLIVAN & WORCESTER LLP

By: /s/ David A. Geier_____

By: /s/ Laura Steinberg_____

David A. Geier

Laura Steinberg

119 W. Washington Avenue
Madison, Wisconsin 53703
Tel: (608) 333-0001
Fax: (866) 282-1449
dageier@wislaw.net

One Post Office Square
Boston, MA 02109
Tel: (617) 338-2800
Fax: (617) 338-2880
lsteinberg@sandw.com

*Attorneys for Matthew M. Hughey*

*Attorneys for David Dunne*

HERRICK FEINSTEIN LLP

By:  /s/ Therese Doherty

Therese M. Doherty
LisaMarie Collins

2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Fax: (212) 592-1500
tdoherty@herrick.com

*Attorneys for Matthew V. Besgen*

15101389.8