**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH DEANGELIS,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>JON S. CORZINE et al.,<br><br>　　　　　*Defendants*. | 11 Civ. 7866 (VM) (USCFTC) |
| U.S. COMMODITY FUTURES TRADING<br>COMMISSION,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>MF GLOBAL HOLDINGS LTD.,<br>JON S. CORZINE, and<br>EDITH O'BRIEN,<br><br>　　　　　*Defendants*. | |

## <u>EDITH O'BRIEN'S ANSWER TO THE AMENDED COMPLAINT</u>

Defendant Edith O'Brien, by and through her undersigned counsel, respectfully submits

her unsworn and nontestimonial answer to the Amended Complaint for Injunctive and Other

Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act,

Dkt. No. 587 ("Amended Complaint").

## INTRODUCTORY STATEMENT

Ms. O'Brien denies each and every allegation of wrongdoing or inculpatory knowledge

asserted against her in the Amended Complaint.

The Amended Complaint contravenes the Federal Rules of Civil Procedure by combining

factual allegations and legal conclusions or arguments, which makes it difficult and at times

impossible to respond appropriately. In addition, many of the allegations asserted in the

Amended Complaint are overly broad, vague, conclusory, or contain terms that are undefined or

susceptible to different meanings. Accordingly, Ms. O'Brien denies all allegations asserted in the

Amended Complaint unless expressly admitted, and any factual allegation admitted below is

admitted only as to the specific facts and not as to any conclusions, characterizations,

implications, or speculation contained therein or in the Amended Complaint as a whole.

The Amended Complaint is replete with references to various documents and recordings.

Ms. O'Brien respectfully refers to the relevant documents and recordings for a complete and

accurate statement of their contents, without admitting the truth or admissibility thereof. To the

extent the Amended Complaint contains purported descriptions, summaries, or quotations from

documents or recordings not in Ms. O'Brien's possession, custody, or control, or which are

otherwise unclear, Ms. O'Brien lacks knowledge or information sufficient to form a belief about

the truth of the corresponding allegations or about the accuracy of the purported descriptions,

summaries, or quotations.

All terms defined in the Amended Complaint shall have the same meaning herein unless

context dictates otherwise.

This Introductory Statement is incorporated into each paragraph and subparagraph of the

Specific Responses below.

## SPECIFIC RESPONSES

1.      Ms. O'Brien admits the CFTC has implemented rules and regulations regarding

the segregation of certain funds deposited by the customers of an FCM and admits for a certain

time she was MF Global's Assistant Treasurer. Ms. O'Brien denies the remaining allegations

asserted in paragraph 1 of the Amended Complaint.

2.      Ms. O'Brien admits the allegations asserted in paragraph 2 of the Amended Complaint.

3.      Ms. O'Brien admits Mr. Corzine joined the Firm as the CEO for Holdings in March 2010, admits she understood Mr. Corzine planned to change the Firm into an investment bank that generated revenues from proprietary trading activities, and admits the Firm made investments in the sovereign debt of certain European countries. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 3 of the Amended Complaint.

4.      Ms. O'Brien admits there were strains on the Firm's liquidity during the latter half of 2011, admits in late October 2011 the Firm took steps to sell itself to another financial services company, and admits at times Firm employees communicated with one another by email or on recorded telephone lines. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 4 of the Amended Complaint.

5.      Ms. O'Brien admits Holdings and certain other affiliated companies filed for bankruptcy protection on October 31, 2011. Ms. O'Brien denies the remaining allegations asserted in paragraph 5 of the Amended Complaint.

6.      To the extent paragraph 6 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 6 of the Amended Complaint.

7.      Ms. O'Brien admits for a certain time she was the Assistant Treasurer of

MF Global. Ms. O'Brien denies the remaining allegations asserted in paragraph 7 of the Amended Complaint.

8.     Ms. O'Brien admits the CME Group's Audit Department conducted a financial and compliance examination of certain MF Global regulatory filings dated January 31, 2011, and, by letter to MF Global dated August 4, 2011, noted certain investments of customer segregated funds were not in compliance with 17 C.F.R. § 1.25, including maintaining investments which were not readily marketable or highly liquid, and further noted these problems had no effect on excess segregated funds or excess net capital. Ms. O'Brien denies the remaining allegations asserted in paragraph 8 of the Amended Complaint.

9.     To the extent paragraph 9 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 9 of the Amended Complaint.

10.     Ms. O'Brien admits the CFTC has brought this action pursuant to 7 U.S.C. § 13a–1 and seeks the relief described in paragraph 10 of the Amended Complaint. Ms. O'Brien denies the remaining allegations asserted in paragraph 10 of the Amended Complaint.

11.     Ms. O'Brien admits this Court has jurisdiction over this action pursuant to 7 U.S.C. § 13a–1(a). Ms. O'Brien denies the remaining allegations asserted in paragraph 11 of the Amended Complaint.

12.     Ms. O'Brien admits venue properly lies with this Court pursuant to 7 U.S.C. § 13a–1(e), admits MF Global's and Holdings' headquarters were in the Southern District of New York, and admits Mr. Corzine was present in the Southern District of New York during the last week of October 2011. Ms. O'Brien denies the remaining allegations asserted in

paragraph 12 of the Amended Complaint.

13.     Ms. O'Brien admits the allegations asserted in paragraph 13 of the Amended Complaint.

14.     As to the allegations asserted in the first sentence of paragraph 14 of the Amended Complaint, Ms. O'Brien admits MF Global is a Delaware corporation with its headquarters in New York, New York. Ms. O'Brien admits the allegations asserted in the second sentence of paragraph 14 of the Amended Complaint. Ms. O'Brien admits the allegations asserted in the third sentence of paragraph 14 of the Amended Complaint. As to the allegations asserted in the fourth sentence of paragraph 14 of the Amended Complaint, Ms. O'Brien admits as an FCM MF Global accepted customer funds intended for futures trading on U.S. exchanges and was required to protect these customer funds by keeping them in customer segregated accounts. Ms. O'Brien admits the allegations asserted in the fifth sentence of paragraph 14 of the Amended Complaint. Ms. O'Brien admits the allegations asserted in the sixth sentence of paragraph 14 of the Amended Complaint. Ms. O'Brien admits the allegations asserted in the seventh sentence of paragraph 14 of the Amended Complaint. Ms. O'Brien admits the allegations asserted in the eighth sentence of paragraph 14 of the Amended Complaint.

15.     As to the allegations asserted in the first sentence of paragraph 15 of the Amended Complaint, Ms. O'Brien admits Holdings is a Delaware corporation with its headquarters in New York, New York. Ms. O'Brien admits the allegations asserted in the second sentence of paragraph 15 of the Amended Complaint. As to the allegations asserted in the third sentence of paragraph 15 of the Amended Complaint, Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegation that MF Global Holdings USA Inc. was a listed principal of MF Global in MF Global's registration filings with the NFA but admits the

remaining allegations asserted in the third sentence of paragraph 15 of the Amended Complaint.

16.     Ms. O'Brien admits the allegations asserted in paragraph 16 of the Amended Complaint.

17.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 17 and subparagraph 17(a) through subparagraph 17(g) inclusive of the Amended Complaint.

18.     Ms. O'Brien admits the allegations asserted in paragraph 18 of the Amended Complaint.

19.     Ms. O'Brien admits she was the Assistant Treasurer of MF Global during October 2011. Ms. O'Brien denies the remaining allegations asserted in paragraph 19 of the Amended Complaint.

a.     Ms. O'Brien denies the allegations asserted in subparagraph 19(a) of the Amended Complaint.

b.     Ms. O'Brien admits at times she received and reviewed daily customer segregation reports. Ms. O'Brien denies the remaining allegations asserted in subparagraph 19(b) of the Amended Complaint.

c.     Ms. O'Brien denies the allegations asserted in subparagraph 19(c) of the Amended Complaint.

d.     Ms. O'Brien denies the allegations asserted in subparagraph 19(d) of the Amended Complaint.

e.     Ms. O'Brien denies the allegations asserted in subparagraph 19(e) of the Amended Complaint.

f.     Ms. O'Brien admits she was one of several Firm employees who had

responsibility for investing certain customer segregated funds pursuant to 17 C.F.R. § 1.25.

  g.  Ms. O'Brien admits at times she communicated with certain other MF Global departments regarding certain cash transfers. Ms. O'Brien denies the remaining allegations asserted in subparagraph 19(g) of the Amended Complaint.

  h.  Ms. O'Brien admits on at least one occasion she answered certain questions from another MF Global employee regarding customer segregation laws and rules and admits on one occasion she requested another MF Global employee to direct certain customer questions regarding "customer segregation" to her. Ms. O'Brien denies the remaining allegations asserted in subparagraph 19(h) of the Amended Complaint.

20.  Ms. O'Brien admits on one occasion she referred to herself as "the best versed on Regulatory and Customer Protection"; admits on October 3, 2011, Holdings' Global Treasurer sent her an email to her Firm email address attaching a PowerPoint slide titled "Treasury Organization Chart" that included a box labeled "Liquidity Management" in which her name appears; and admits she has never been registered with the CFTC in any capacity. Ms. O'Brien denies the remaining allegations asserted in paragraph 20 of the Amended Complaint.

21.  Ms. O'Brien admits the allegations asserted in paragraph 21 of the Amended Complaint.

22.  Ms. O'Brien admits FCMs are required to account separately for customer segregated funds and admits customer segregated funds are held in customer segregated accounts that are named so as to identify the account clearly as one containing customer segregated funds. Ms. O'Brien denies the remaining allegations asserted in paragraph 22 of the Amended Complaint.

23.     Ms. O'Brien admits the aggregate amount of customer segregated funds an FCM must hold in customer segregated accounts is known as the NLV and is calculated by the NLV method. Ms. O'Brien denies the remaining allegations asserted in paragraph 23 of the Amended Complaint.

24.     Ms. O'Brien admits pursuant to regulations in effect during the period relevant to the Amended Complaint an FCM was permitted to use a certain amount of secured funds for the FCM's own purposes, admits pursuant to regulations in effect during the period relevant to the Amended Complaint an FCM was permitted to keep in customer secured accounts an amount of funds that was less than the FCM's total obligations to its customers trading on foreign boards of trade or exchanges, and admits the methodology for calculating the required balance of secured customer funds the FCM was required to maintain was known as the "alternative method" or the "alternative calculation." Ms. O'Brien denies the remaining allegations asserted in paragraph 24 of the Amended Complaint.

25.     Ms. O'Brien admits an FCM is required to adhere to certain requirements relating to the proper handling of customer funds in both customer segregated accounts and customer secured accounts. Ms. O'Brien denies the remaining allegations asserted in paragraph 25 of the Amended Complaint.

26.     Ms. O'Brien admits the allegations asserted in paragraph 26 of the Amended Complaint.

27.     Ms. O'Brien admits the allegations asserted in paragraph 27 of the Amended Complaint.

28.     Ms. O'Brien admits the allegations asserted in paragraph 28 of the Amended Complaint.

29.     Ms. O'Brien admits excess segregated funds can lawfully be used by an FCM for its own proprietary purposes, admits an FCM should not use customer segregated funds for the FCM's own proprietary purposes, and admits an FCM's own proprietary purposes include paying margins on proprietary investments. Ms. O'Brien denies the remaining allegations asserted in paragraph 29 of the Amended Complaint.

30.     Ms. O'Brien admits an FCM may invest customer segregated funds only if the investment is on the applicable CFTC Regulation's list of permitted investments. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 30 of the Amended Complaint.

31.     Ms. O'Brien admits in 2008 the Firm's FCM and broker-dealer business operations were merged into the single company MF Global; admits MF Global was a broker for commodities and listed derivatives; admits MF Global was a broker-dealer in markets for fixed income securities, equities, and foreign exchange; and admits MF Global became a primary dealer authorized to trade U.S. government securities with the Federal Reserve Bank of New York. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 31 of the Amended Complaint.

32.     Ms. O'Brien admits when Mr. Corzine joined the Firm as its CEO in March 2010 MF Global was a commodity brokerage firm that earned revenue from interest income for servicing customers' deposits and from commissions on customer transactions and admits she understood Mr. Corzine planned to change the Firm into an investment bank that generated revenues from proprietary trading activities. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 32 of the Amended Complaint.

33.     Ms. O'Brien admits one of the Firm's proprietary trading strategies was the investment in the bonds of certain European nations through RTMs and admits one of the risks in this strategy was that these bonds could decline in value. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 33 of the Amended Complaint.

34.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 34 of the Amended Complaint.

35.     Ms. O'Brien admits the former CRO left MF Global in March 2011. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 35 of the Amended Complaint.

36.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 36 of the Amended Complaint.

37.     To the extent paragraph 37 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits Holdings acquired a portfolio of securities that it classified as HTM assets on its balance sheet; admits Holdings financed the HTM portfolio by entering into a reverse repurchase agreement using customer segregated funds; admits the CME Group's Audit Department conducted a financial and compliance examination of certain MF Global regulatory filings dated January 31, 2011, and, by letter to MF Global dated August 4, 2011, noted certain investments of customer segregated funds were not in compliance with 17 C.F.R. § 1.25, including maintaining investments which were not readily marketable or highly liquid, and further noted these problems had no effect on excess segregated funds or excess net capital; admits the Firm thereafter unwound the financing and removed the referenced securities from the

customer segregated accounts; and admits the Firm thereafter obtained a more expensive form of financing from third parties. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 37 of the Amended Complaint.

38.     To the extent paragraph 38 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 38 of the Amended Complaint.

39.     To the extent paragraph 39 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 39 of the Amended Complaint.

40.     To the extent paragraph 40 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits at times written and verbal updates regarding MF Global's estimated liquidity position and forecasts were provided to Mr. Corzine, admits at times the daily liquidity reports and verbal updates included information gathered in part from traders at MF Global, and admits these updates were only estimates of sources and uses. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 40 of the Amended Complaint.

41.     To the extent paragraph 41 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits MF Global failed to enhance MF Global's liquidity management

systems. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 41 of the Amended Complaint.

42.     To the extent paragraph 42 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 42 of the Amended Complaint.

43.     To the extent paragraph 43 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 43 of the Amended Complaint.

44.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 44 of the Amended Complaint.

45.     Ms. O'Brien admits MF Global's CFO considered whether secured customer funds that exceeded the minimum balance determined by the alternative calculation could be used for overnight funding of the Firm's operations and admits MF Global's CFO concluded the law at the time permitted such use of secured customer funds. Ms. O'Brien denies the remaining allegations asserted in paragraph 45 of the Amended Complaint.

46.     Ms. O'Brien admits as a general matter the Firm assessed lawfully available liquidity by combining the amount of lawfully available funds in the customer segregated accounts with the amount of lawfully available funds in the customer secured accounts and admits at times a version of this figure appeared as a line item on the daily liquidity report circulated to Mr. Corzine and others. Ms. O'Brien denies the remaining allegations asserted in paragraph 46 of the Amended Complaint.

47.    Ms. O'Brien admits in October 2011 she recognized MF Global faced liquidity stresses. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 47 of the Amended Complaint.

48.    Ms. O'Brien denies she agreed the referenced margin obligation would have to be paid from FCM Excess Cash because the Firm had no other readily available source of cash that could cover that amount. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 48 of the Amended Complaint.

49.    Ms. O'Brien admits in October 2011 the Firm had access to an approximately $1.2 billion line of credit through an RCF administered by JPM. Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 49 of the Amended Complaint.

50.    Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 50 of the Amended Complaint.

51.    Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 51 of the Amended Complaint.

52.    Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 52 of the Amended Complaint.

53.    Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 53 of the Amended Complaint.

54.    Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 54 of the Amended Complaint.

55.     Ms. O'Brien admits on October 18, 2011, Holdings drew $125 million from the revolver. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 55 of the Amended Complaint.

56.     Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 56 of the Amended Complaint.

57.     To the extent paragraph 57 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 57 of the Amended Complaint.

58.     Ms. O'Brien admits on October 24, 2011, Moody's downgraded its rating of Holdings' credit and admits as a general matter credit downgrades can have a negative impact. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 58 of the Amended Complaint.

59.     Ms. O'Brien admits the allegations asserted in paragraph 59 of the Amended Complaint.

60.     Ms. O'Brien admits during the last week of October 2011 MF Global experienced increased liquidity demands and admits during the last week of October 2011 certain customers of both the FCM and the broker-dealer demanded return of funds from MF Global. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 60 of the Amended Complaint.

61.     Ms. O'Brien denies the $303 million available to draw from the revolver on October 25, 2011, was not enough to meet the Firm's ensuing cash requirements and states that

14

certain banks refused to fund their obligations under the revolver. Ms. O'Brien admits the remaining allegations asserted in paragraph 61 of the Amended Complaint.

62.     Ms. O'Brien denies the allegations asserted in paragraph 62 of the Amended Complaint.

a.     Ms. O'Brien admits the remaining $303 million of the revolver was requested to be drawn and admits she understood thereafter the revolver was no longer a source of liquidity for the Firm. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 62(a) of the Amended Complaint.

b.     Ms. O'Brien admits at approximately 12:50 pm ET on October 26, 2011, an email was sent to her Firm email address attaching a segregation report that showed MF Global held almost $300 million of excess segregated funds as of the close of business on October 25, 2011; admits she reviewed the referenced segregation report; and admits at approximately 1:12 pm ET on October 26, 2011, she sent an email stating "This is precisely as I projected. No issues." Ms. O'Brien denies the remaining allegations asserted in subparagraph 62(b) of the Amended Complaint.

c.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 62(c) of the Amended Complaint.

d.     Ms. O'Brien denies the allegations asserted in subparagraph 62(d) of the Amended Complaint.

e.     Ms. O'Brien admits she personally believed that any use of customer segregated funds for proprietary purposes was prohibited even if the customer segregated

funds were later returned to the customer segregated accounts; admits at approximately 5:58 pm ET on October 26, 2011, she sent an email to broker-dealer staff with the subject "I NEED THE BNY MONEY RELEASED - ASAP"; admits at approximately 6:00 pm ET on October 26, 2011, she sent an email to broker-dealer staff stating "We cannot afford a SEG issue……"; and admits BONY was one of MF Global's primary banks housing certain MF Global customer segregated accounts, certain MF Global proprietary accounts, and certain other Firm accounts. Ms. O'Brien denies the remaining allegations asserted in subparagraph 62(e) of the Amended Complaint.

f.      Ms. O'Brien denies the allegations asserted in subparagraph 62(f) of the Amended Complaint.

g.      To the extent subparagraph 62(g) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 62(g) of the Amended Complaint.

h.      Ms. O'Brien admits BONY agreed to transfer $325 million of funds from MF Global's proprietary operating account at BONY to a customer segregated account that MF Global maintained at BONY. Ms. O'Brien denies the remaining allegations asserted in subparagraph 62(h) of the Amended Complaint.

i.      Ms. O'Brien denies the allegations asserted in subparagraph 62(i) of the Amended Complaint.

j.      Ms. O'Brien admits at approximately 11:30 pm ET on October 26, 2011, she sent an email to an MF Global employee with the subject "Heads up - my projection"

16

stating, among other things, "Due to the large B/D Client wires, we could be negative Segs tomorrow a.m." Ms. O'Brien denies the remaining allegations asserted in subparagraph 62(j) of the Amended Complaint.

63.　　Ms. O'Brien denies the allegations asserted in paragraph 63 of the Amended Complaint.

　　　　a.　　Ms. O'Brien admits at approximately 12:39 am ET on October 27, 2011, she emailed a liquidity report to Mr. Corzine and certain other MF Global employees stating, among other things, that the FCM had $0 of liquidity on hand as of October 26, 2011, and expected to have $0 of liquidity on hand as of October 27, 2011. Ms. O'Brien denies she understood this meant there was no FCM Excess Cash available for MF Global to use for the Firm's proprietary purposes. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(a) of the Amended Complaint.

　　　　b.　　Ms. O'Brien admits at approximately 12:59 am ET on October 27, 2011, a member of her staff in the Treasury Investments Department sent an email to her Firm email address stating, among other things, "That, and having a positive seg bal in the am are all we can hope for. I think we need to be rather careful of that going forward." Ms. O'Brien denies the remaining allegations asserted in subparagraph 63(b) of the Amended Complaint.

　　　　c.　　Ms. O'Brien admits at approximately 8:00 am ET on October 27, 2011, a Firm employee sent an email to her Firm email address and to Mr. Corzine's Firm email address stating, among other things, "URGENT see amended figures below – initial drain is $365mm." Ms. O'Brien lacks knowledge or information sufficient to form a belief

about the truth of the remaining allegations asserted in subparagraph 63(c) of the Amended Complaint.

      d.     To the extent subparagraph 63(d) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(d) of the Amended Complaint.

      e.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 63(e) of the Amended Complaint.

      f.     Ms. O'Brien admits the allegations asserted in subparagraph 63(f) of the Amended Complaint.

      g.     Ms. O'Brien admits at some point on October 27, 2011, she received certain documents reflecting that, as of the close of business on October 26, 2011, the Firm's excess funds in customer segregated accounts totaled approximately $116 million and the FCM Excess Cash was approximately negative $341 million. Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(g) of the Amended Complaint.

      h.     Ms. O'Brien admits at approximately 12:01 pm ET on October 27, 2011, an email was sent to her Firm email address with the subject "Seg estimate" and attaching a draft segregation report; admits the referenced draft segregation report stated the Firm's excess funds in customer segregated accounts totaled approximately $116 million and the

18

overall FCM Excess Cash was negative $341 million; admits she briefly reviewed this draft segregation report; and admits at approximately 12:16 pm ET on October 27, 2011, she sent an email stating "Looks way too low. I expected @ 200mm – including debit swing…." Ms. O'Brien denies the remaining allegations asserted in subparagraph 63(h) of the Amended Complaint.

      i.      Ms. O'Brien denies the allegations asserted in subparagraph 63(i) of the Amended Complaint.

      j.      Ms. O'Brien admits at approximately 2:02 pm ET on October 27, 2011, an email was sent to her Firm email address attaching a segregation report and admits the referenced segregation report stated the Firm had $116 million in excess segregated funds, negative $341 million in FCM Excess Cash, and $9.9 million in cash in the customer secured accounts. Ms. O'Brien denies the remaining allegations asserted in subparagraph 63(j) of the Amended Complaint.

      k.      To the extent subparagraph 63(k) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(k) of the Amended Complaint.

      l.      Ms. O'Brien denies the allegations asserted in subparagraph 63(*l*) of the Amended Complaint.

      m.      Ms. O'Brien denies the allegations asserted in subparagraph 63(m) of the Amended Complaint.

      n.      Ms. O'Brien denies the allegations asserted in subparagraph 63(n) of the

Amended Complaint.

  o.  Ms. O'Brien admits at approximately 12:44 pm ET on October 27, 2011, at the request of certain broker-dealer staff, she sent an email to a BONY employee stating, among other things, "Please consider this e-mail and [sic] authorization and instruction for an early unwind of the MFGI Tri-party funds in the amount of $ 325mm. These proceeds are unencumbered and not required to be segregated intra-day under CFTC or SEC rules." Ms. O'Brien denies the remaining allegations asserted in subparagraph 63(o) of the Amended Complaint.

  p.  Ms. O'Brien admits she personally believed MF Global was required to have sufficient customer segregated funds at all times, including intraday. Ms. O'Brien denies the remaining allegations asserted in subparagraph 63(p) of the Amended Complaint.

  q.  Ms. O'Brien denies the allegations asserted in subparagraph 63(q) of the Amended Complaint.

  r.  Ms. O'Brien denies the allegations asserted in subparagraph 63(r) of the Amended Complaint.

  s.  To the extent subparagraph 63(s) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits at approximately 5:13 pm ET on October 27, 2011, she sent an email to certain broker-dealer staff with the subject "MF GLOBAL - OUTSTANDING PAYMENTS..." stating, among other things, "**PRIORITY IS FOR THE INTRA-CO MONIES TO BE REPAID – <u>IT MUST BE DONE IN FULL: $ 815MM  USD</u>**  >>>>  **MFGI.**" Ms. O'Brien lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(s) of the Amended Complaint.

t.      To the extent subparagraph 63(t) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(t) of the Amended Complaint.

u.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 63(u) of the Amended Complaint.

v.      To the extent subparagraph 63(v) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(v) of the Amended Complaint.

w.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 63(w) of the Amended Complaint.

x.      To the extent subparagraph 63(x) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 63(x) of the Amended Complaint.

y.      Ms. O'Brien denies the allegations asserted in subparagraph 63(y) of the Amended Complaint.

64.      Ms. O'Brien denies the allegations asserted in paragraph 64 of the Amended Complaint.

a.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(a) of the Amended Complaint.

b.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(b) of the Amended Complaint.

c.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(c) of the Amended Complaint.

d.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(d) of the Amended Complaint.

e.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(e) of the Amended Complaint.

f.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(f) of the Amended Complaint.

g.      Ms. O'Brien lacks knowledge or information sufficient to form a belief

about the truth of the allegations asserted in subparagraph 64(g) of the Amended Complaint.

h.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(h) of the Amended Complaint.

i.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(i) of the Amended Complaint.

j.      Ms. O'Brien admits the allegations asserted in subparagraph 64(j) of the Amended Complaint.

k.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(k) of the Amended Complaint.

l.      Ms. O'Brien denies the allegations asserted in the first sentence of subparagraph 64(*l*) of the Amended Complaint. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in the second sentence of subparagraph 64(*l*) of the Amended Complaint. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in the third sentence of subparagraph 64(*l*) of the Amended Complaint. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in the fourth sentence of subparagraph 64(*l*) of the Amended Complaint. As to the allegations asserted in the fifth sentence of subparagraph 64(*l*) of the Amended Complaint, Ms. O'Brien admits Mr. Corzine did not inquire of her how she

would find funds to pay for the referenced overdrafts but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in the fifth sentence of subparagraph 64(*l*) of the Amended Complaint. Ms. O'Brien admits the allegations asserted in the sixth sentence of subparagraph 64(*l*) of the Amended Complaint.

m.    Ms. O'Brien admits at approximately 9:27 am ET on October 28, 2011, the Global Treasurer sent an email to her Firm email address and to Mr. Corzine's Firm email address stating "$175 [sic] TO FUND LONDON OVERDRAFT – THEY WILL RETURN $100 [sic] WHEN THEIR FINANCING REPO SETTLES – THANKS!"; admits at approximately 9:27 am ET on October 28, 2011, she replied to the Global Treasurer's aforementioned email stating "BEING RELEASED RIGHT NOW"; and admits at approximately 9:34 am ET on October 28, 2011, she forwarded the Global Treasurer's aforementioned email to MFGUK's European Treasurer with the note "Per JC's direct instructions." Ms. O'Brien denies she directed a $200 million transfer from a customer segregated account at JPM to an MF Global proprietary account at JPM and denies she directed a $175 million transfer from that proprietary account at JPM to an MFGUK proprietary account at JPM. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(m) of the Amended Complaint.

n.    To the extent subparagraph 64(n) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(n) of the

Amended Complaint.

o.      Ms. O'Brien denies the allegations asserted in subparagraph 64(o) of the Amended Complaint.

p.      Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(p) of the Amended Complaint.

q.      To the extent subparagraph 64(q) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits Mr. Corzine contacted her with respect to an inquiry by JPM about a $175 million transfer to MFGUK; admits she emailed Mr. Corzine documentation for a $175 million transfer from MF Global's proprietary account to MFGUK executed on October 28, 2011; and admits she did not at that time email Mr. Corzine any additional documentation. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(q) of the Amended Complaint.

r.      Ms. O'Brien admits at approximately 2:44 pm ET on October 28, 2011, Holdings' GC forwarded to her Firm email address and to the AGC's Firm email address an email attaching a version of the JPM letter and admits this version of the JPM letter carried a signature line for her. Ms. O'Brien denies she reviewed this version of the JPM letter by 2:56 pm ET on October 28, 2011. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(r) of the Amended Complaint.

s.      Ms. O'Brien admits at approximately 3:35 pm ET on October 28, 2011,

she sent an email to Holdings GC and to the AGC stating "I am continuing business as usual, until I have an opportunity to review this. I have numerous moving parts under critical deadlines, and will review this at close of business." Ms. O'Brien denies the remaining allegations asserted in subparagraph 64(s) of the Amended Complaint.

t.      To the extent subparagraph 64(t) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(t) of the Amended Complaint.

u.      To the extent subparagraph 64(u) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(u) of the Amended Complaint.

v.      To the extent subparagraph 64(v) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits she never signed the JPM letter. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(v) of the Amended Complaint.

w.      To the extent subparagraph 64(w) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(w) of the

Amended Complaint.

x.      Ms. O'Brien denies the allegations asserted in subparagraph 64(x) of the Amended Complaint.

y.      Ms. O'Brien denies the allegations asserted in subparagraph 64(y) of the Amended Complaint.

z.      Ms. O'Brien denies the allegations asserted in subparagraph 64(z) of the Amended Complaint.

aa.     To the extent subparagraph 64(aa) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien denies she directed her staff to consult with MF Global's Regulatory Reporting Department to deal with an alleged deficiency in the segregation calculation. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(aa) of the Amended Complaint.

bb.     Ms. O'Brien denies the allegations asserted in subparagraph 64(bb) of the Amended Complaint.

cc.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in subparagraph 64(cc) of the Amended Complaint.

dd.     To the extent subparagraph 64(dd) of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in subparagraph 64(dd) of the

Amended Complaint.

        ee.     Ms. O'Brien denies the allegations asserted in subparagraph 64(ee) of the Amended Complaint.

65.     To the extent paragraph 65 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 65 of the Amended Complaint.

66.     Ms. O'Brien admits at approximately 12:47 pm ET on October 30, 2011, the head of MF Global's Regulatory Reporting Department sent an email to her Firm email address, the AGC's Firm email address, the Holdings' GC's Firm email address, and others attaching a document titled "102811 Daily Summary Regs (PRELIMINARY-NOT FINAL).xls" and stating, among other things, "We are looking for an adjustment and support for that ajustment [sic] to eliminate the negative $952 million seg deficit." Ms. O'Brien denies the remaining allegations asserted in paragraph 66 of the Amended Complaint.

67.     To the extent paragraph 67 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits the remaining allegations asserted in paragraph 67 of the Amended Complaint.

68.     To the extent paragraph 68 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits the remaining allegations asserted in paragraph 68 of the Amended Complaint.

69.     Ms. O'Brien admits the Firm did not have an automated system that had the

capability to determine, in real time, the portion of the customer segregated accounts balance that the Firm was lawfully permitted to use for its own purposes. Ms. O'Brien denies the Firm relied on manual tracking by individuals to determine, in real time, the portion of the customer segregated accounts balance that the Firm was lawfully permitted to use for its own purposes. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 69 of the Amended Complaint.

70.     To the extent paragraph 70 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 70 of the Amended Complaint.

71.     To the extent paragraph 71 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien denies the existence of the referenced Firm policy. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 71 of the Amended Complaint.

72.     Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in paragraph 72 and subparagraph 72(a) through subparagraph 72(j) of the Amended Complaint.

73.     Ms. O'Brien repeats her responses to paragraph 1 through paragraph 72 inclusive and all subparagraphs thereto of the Amended Complaint.

74.     Ms. O'Brien denies the allegations asserted in paragraph 74 of the Amended Complaint comprise a complete and accurate statement of the law as set forth in 7 U.S.C.

29

§ 6d(a)(2).

75.     Ms. O'Brien denies the allegations asserted in paragraph 75 of the Amended Complaint comprise a complete and accurate statement of the law as set forth in 17 C.F.R. § 1.20.

76.     Ms. O'Brien denies the allegations asserted in paragraph 76 of the Amended Complaint comprise a complete and accurate statement of the law as set forth in 17 C.F.R. § 1.22.

77.     Ms. O'Brien denies the allegations asserted in paragraph 77 of the Amended Complaint comprise a complete and accurate statement of the law as set forth in 17 C.F.R. § 1.23.

78.     Ms. O'Brien denies the allegations asserted in paragraph 78 of the Amended Complaint comprise a complete and accurate statement of the law as set forth in 17 C.F.R. § 1.25.

79.     Ms. O'Brien admits the CME Group's Audit Department conducted a financial and compliance examination of certain MF Global regulatory filings dated January 31, 2011, and, by letter to MF Global dated August 4, 2011, noted certain investments of customer segregated funds were not in compliance with 17 C.F.R. § 1.25, including maintaining investments which were not readily marketable or highly liquid, and further noted these problems had no effect on excess segregated funds or excess net capital. Ms. O'Brien denies the remaining allegations asserted in paragraph 79 of the Amended Complaint.

80.     To the extent paragraph 80 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien admits Holdings was the parent company of MF Global. Ms. O'Brien

lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 80 of the Amended Complaint.

81.     To the extent paragraph 81 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 81 of the Amended Complaint.

82.     Ms. O'Brien denies the allegations asserted in paragraph 82 of the Amended Complaint.

83.     To the extent paragraph 83 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 83 of the Amended Complaint.

84.     Ms. O'Brien denies the allegations asserted in paragraph 84 of the Amended Complaint.

85.     To the extent paragraph 85 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 85 of the Amended Complaint.

86.     To the extent paragraph 86 of the Amended Complaint asserts allegations of wrongdoing or inculpatory knowledge against Ms. O'Brien, Ms. O'Brien denies these allegations. Ms. O'Brien lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in paragraph 86 of the Amended Complaint.

87.     Ms. O'Brien repeats her responses to paragraph 1 through paragraph 86 inclusive

and all subparagraphs thereto of the Amended Complaint.

88.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 88 of the Amended Complaint because Count Two of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 88 of the Amended Complaint.

89.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 89 of the Amended Complaint because Count Two of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 89 of the Amended Complaint.

90.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 90 of the Amended Complaint because Count Two of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 90 of the Amended Complaint.

91.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 91 of the Amended Complaint because Count Two of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 91 of the Amended Complaint.

92.     Ms. O'Brien repeats her responses to paragraph 1 through paragraph 91 inclusive and all subparagraphs thereto of the Amended Complaint.

93.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 93 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 93 of the Amended Complaint.

94.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 94 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 94 of the Amended Complaint.

95.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 95 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 95 of the Amended Complaint.

96.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 96 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 96 of the Amended Complaint.

97.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 97 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 97 of the Amended Complaint.

98.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 98 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 98 of the Amended Complaint.

99.     Ms. O'Brien declines to respond to the allegations asserted in paragraph 99 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 99

of the Amended Complaint.

100.    Ms. O'Brien declines to respond to the allegations asserted in paragraph 100 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 100 of the Amended Complaint.

101.    Ms. O'Brien declines to respond to the allegations asserted in paragraph 101 of the Amended Complaint because Count Three of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 101 of the Amended Complaint.

102.    Ms. O'Brien repeats her responses to paragraph 1 through paragraph 101 inclusive and all subparagraphs thereto of the Amended Complaint.

103.    Ms. O'Brien declines to respond to the allegations asserted in paragraph 103 of the Amended Complaint because Count Four of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 103 of the Amended Complaint.

104.    Ms. O'Brien declines to respond to the allegations asserted in paragraph 104 of the Amended Complaint because Count Four of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 104 of the Amended Complaint.

105.    Ms. O'Brien declines to respond to the allegations asserted in paragraph 105 of the Amended Complaint because Count Four of the Amended Complaint is not asserted against her. To the extent a response is required, Ms. O'Brien denies the allegations asserted in paragraph 105 of the Amended Complaint.

Ms. O'Brien denies the CFTC is entitled to any of the relief requested in the Amended Complaint or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Ms. O'Brien alleges the following separate and independent affirmative defenses without in any way admitting any allegation asserted in the Amended Complaint or admitting or suggesting she has the burden of proof on any of the following issues. Ms. O'Brien expressly reserves the right to amend this pleading to assert any additional affirmative defenses that may become available or apparent during subsequent proceedings in this action.

1.      The Amended Complaint fails to state a claim against Ms. O'Brien upon which relief can be granted.

2.      Neither the Commodity Exchange Act nor any regulation promulgated thereunder authorizes the relief requested in the Amended Complaint, and the CFTC is not otherwise entitled to the relief it seeks.

3.      Any affirmative defense asserted or to be asserted by any other defendant in this action to the extent such affirmative defense may be applicable to Ms. O'Brien.

## DEMAND FOR JURY TRIAL

Ms. O'Brien respectfully demands a jury trial.


WHEREFORE, Ms. O'Brien respectfully requests this Court to enter judgment that the CFTC take nothing by virtue of the Amended Complaint; that Count One of the Amended Complaint be dismissed with prejudice as to Ms. O'Brien; that Ms. O'Brien be awarded the costs of defending this action, including reasonable attorneys' fees, costs, and disbursements; and for such additional relief as this Court may deem just and proper.

Dated: February 21, 2014

Respectfully submitted,

 /s/ Christopher J. Barber

Christopher J. Barber
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, Illinois  60603-3903
Telephone: (312) 577-1230
Facsimile: (312) 577-1370
Email: cbarber@steptoe.com

*Counsel for Defendant Edith O'Brien*