UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X
                          :

JOSEPH DEANGELIS, et al.,     :

        Plaintiffs,    :

     - against -      :

JON S. CORZINE, et al.,     :

        Defendants.    :

----------------------------------X
                           :

SAPERE CTA FUND, L.P.,      :

        Plaintiff,     :

     - against -      :

JON S. CORZINE, et al.,     :

        Defendants.    :

----------------------------------X

11 Civ. 7866 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

## I.   INTRODUCTION

This case is yet another in a plethora of actions filed in the aftermath of the catastrophic collapse of MF Global Holdings Limited ("MF Global") and its wholly-owned subsidiary, MF Global, Inc. ("MFGI"). Plaintiff Sapere CTA Fund, L.P. ("Sapere") filed this suit by amended complaint dated December 18, 2012 (the "Complaint") against defendants Jon S. Corzine ("Corzine"), Bradley I. Abelow ("Abelow"), Henri J. Steenkamp ("Steenkamp"), Vinay Mahajan

("Mahajan"), Edith O'Brien ("O'Brien"), and David Dunne ("Dunne") (collectively, the "Customer Class Defendants"[1]); defendants David P. Bolger ("Bolger"), Eileen S. Fusco ("Fusco"), David Gelber ("Gelber"), Martin J. Glynn ("Glynn"), Edward L. Goldberg ("Goldberg"), David I. Schamis ("Schamis"), and Robert S. Sloan ("Sloan") (collectively, the "Independent Directors" or the "Independent Director Defendants"); defendants Michael G. Stockman ("Stockman") and Dennis A. Klejna ("Klejna") (collectively, the "Sapere-Only Defendants"[2]); and defendant J.C. Flowers & Co. LLC ("JCF," and, together with the Customer Class Defendants, the Independent Director Defendants, and the Sapere-Only Defendants, "Defendants"). (Dkt. No. 403.) The Complaint alleges that Defendants (1) aided and abetted violations of the Commodity Exchange Act of 1936, as amended (the "CEA"), and the regulations promulgated thereunder (the "CFTC Regulations"), in violation of Section 22 of the CEA, 7 U.S.C. § 25 ("Section 22"), and (2) committed various violations of state

---

[1] These defendants were also sued in a class-action complaint filed by former commodities customers of MFGI, which is proceeding separately under this docket.  (Dkt. No. 382.)

[2] In the several separate complaints proceeding under this docket, Sapere is the only party to sue Stockman and Klejna.

statutory and common law.[3]   Defendants moved to dismiss all counts of the Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (Dkt. Nos. 588, 596), and the parties have fully briefed the motions.

Sapere was one of many customers who maintained accounts of segregated and secured funds with MF Global and MFGI.   The Court recently granted in part and denied in part motions to dismiss a class-action complaint filed on behalf of all such customers.   See In re MF Global Holdings Ltd. Inv. Litig. (MF Global II), --- F. Supp. 2d ---, No. 11 Civ. 7866, 2014 WL 667481 (S.D.N.Y. Feb. 11, 2014) (the "Commodities Customer Action").   Sapere's separate Complaint arises from the same core facts and raises many of the same claims as the complaint in the Commodities Customer Action, and the Court assumes familiarity with its decision in the Commodities Customer Action.   As the

---

[3] Prior to the filing of any motions to dismiss, Sapere withdrew, without prejudice, its claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (Dkt. No. 568), and its claims against defendants Sumit Advani (Dkt. No. 555), Tim Mundt (Dkt. No. 556), Christy Vavra (Dkt. No. 557), and Thomas Connolly (Dkt. No. 572).   After motions to dismiss were filed, Sapere further withdrew, without prejudice, its claims against all Defendants for direct violations of the CEA under Section 22 and for breach of fiduciary duty, and all its claims against defendants Laurie R. Ferber, Christine A. Serwinski, John Ranald MacDonald, David Simons, Robert Lyons, Matthew V. Besgen, Matthew M. Hughey, and PricewaterhouseCoopers LLP.   (Dkt. No. 662.)   The Court subsequently dismissed as moot all motions to dismiss filed as to those counts and by those defendants.   (Dkt. No. 675.)

parties forthrightly admit, the Court's ruling in the Commodities Customer Action effectively disposes of several of Sapere's claims.   The Court appreciates the extent to which the parties have acknowledged areas of agreement and consensus.   See MF Global II, 2014 WL 667481, at *1.

However, the Complaint filed here contains claims beyond those made in the Commodities Customer Action. Sapere raises causes of action for fraud and violation of New York state law, and it has brought claims against defendants not sued in the Commodities Customer Action.   To this extent, Sapere repeats the failures made by the plaintiffs in the Commodities Customer Action: it has "brought claims that fly in the face of clear precedent" and "brought other claims against some defendants who could not plausibly bear responsibility for any of the harm [Sapere] allege[s]."   Id. at *3.   And Sapere's lengthy, 75-page opposition memorandum of law cannot save those claims because "[n]o amount of argument can overcome the lack of legal support for several of the claims [Sapere] filed in this action."   Id.

Therefore, for the reasons detailed below, Defendants' motions to dismiss are granted in part and denied in part.

## II.  BACKGROUND

The Court has previously addressed in detail the facts and circumstances surrounding MF Global's monumental collapse.  See MF Global II, 2014 WL 667481, at *4-9; In re MF Global Holdings Ltd. Sec. Litig. (MF Global I), --- F. Supp. 2d ---, No. 11 Civ. 7866, 2013 WL 5996426, at *4-13 (S.D.N.Y. Nov. 12, 2013).  The Court assumes familiarity with these prior decisions.

Briefly restated, MF Global, under Corzine's leadership, undertook a business strategy that involved risky investments in European sovereign debt.  As MF Global increased its exposure to sovereign debt, it struggled to meet capital and liquidity demands.  MF Global's liquidity crisis worsened through the summer of 2011, which led the company to transfer funds among its subsidiaries to cover MF Global's proprietary operations.  Eventually, the liquidity demands were so great that the intra-company transfers -- described by O'Brien as a "shell game" -- caused MF Global to transfer money from MFGI's segregated and secured customer accounts to MF Global's proprietary operations.  Those transfers violated the CFTC Regulations, which prohibited MF Global and MFGI from using segregated and secured customer funds for business purposes.  As a

- 5 -

result, MF Global went bankrupt, and $1.6 billion in customer funds disappeared.

### III. LEGAL STANDARD

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of a court in ruling on a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003))

- 6 -

(internal quotation marks omitted), aff'd sub nom., Tenney v. Credit Suisse First Bos. Corp., Nos. 05-3430-CV, 05-4759-CV, 05-4760-CV, 2006 WL 1423785 (2d Cir. May 19, 2006). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where Rule 8(a)'s pleading standard governs, "dismissal is improper as long as the complaint furnishes adequate notice of the basis of the plaintiff's claim . . . and 'relief could be granted under [some] set of facts consistent with the allegations.'" In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005) (alteration in original) (quoting Swierkewicz v. Sorema N.A., 534 U.S. 506, 512-14 (2002)). However, fraud-based claims must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") by "stat[ing]

with particularity the circumstances constituting fraud."
Fed. R. Civ. P. 9(b).

## IV.  DISCUSSION

As it now stands, the Complaint brings direct claims against the Customer Class Defendants, the Independent Director Defendants, and the Sapere-Only Defendants (collectively, the "Individual Defendants").  The Complaint also alleges those same claims against JCF for its control of and responsibility for Corzine and Schamis, whom Sapere alleges to be JCF's agents.  Finally, the Complaint seeks punitive damages for all tort-based claims.  Defendants have moved to dismiss all counts of the Complaint and also to prohibit Sapere from pursuing claims for punitive damages.

A.   CLAIMS AGAINST INDIVIDUAL DEFENDANTS

1.   Breach of Duty of Care

Count One of the Complaint alleges that the Individual Defendants breached a common-law duty of care to Sapere. "In order to state a claim for negligence, a plaintiff must allege '(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach.'"  MF Global II, 2014 WL 667481, at

- 8 -

*19 (quoting <u>Di Benedetto v. Pan Am World Serv., Inc.</u>, 359 F.3d 627, 630 (2d Cir. 2004)).   In the Commodities Customer Action, the Court denied the Customer Class Defendants' motion to dismiss negligence claims brought againt them by MFGI's customers.  <u>See id.</u> at *18-20.  The Court denies the Customer Class Defendants' motion to dismiss Sapere's negligence claim for the same reasons.

However, the Court grants the motion to dismiss for the Independent Directors and the Sapere-Only Defendants. Those defendants "can be held liable only if they affirmatively participated in the wrongful conduct at issue; they cannot be held liable for the mere failure to act."  <u>Id.</u> at *20.  The Independent Directors did not participate in MFGI's day-to-day operations.  And the Complaint does not plausibly allege that either of the Sapere-Only Defendants "affirmatively participated in illegal transfers of customer funds."  <u>Id.</u>  For that reason, Sapere fails to state a claim for negligence against either the Independent Directors or the Sapere-Only Defendants.

### 2.   <u>Aiding and Abetting Violations of the CEA</u>

Count Six of the Complaint alleges that Defendants aided and abetted MFGI's violations of the CEA.   "'[I]n

evaluating a complaint alleging the aiding and abetting of a violation of the CEA, allegations about the defendant's knowledge, intent, and actions should not be evaluated in isolation, but rather in light of the complaint as a whole.'" Id. at *12 (quoting In re Amaranth Natural Gas Commodities Litig., 730 F.3d 170, 183 (2d Cir. 2013)). "[A]iding and abetting requires the defendant to 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.'" Amaranth, 730 F.3d at 182 (quoting United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938)).

The Court denies the Customer Class Defendants' motion to dismiss Count Six because the Complaint here, like the complaint in the Commodities Customer Action, alleges sufficient facts to "permit an inference of [the Customer Class Defendants'] intent to further MFGI's eventual violation of the CEA." MF Global II, 2014 WL 667481, at *12. But the Court grants dismissal for the Independent Directors and the Sapere-Only Defendants because, as to those defendants, the Complaint does not plausibly allege knowledge of or intent to further the misuse of customer

funds.   See id. at *13 (dismissing claims for aiding-and-abetting CEA violations against certain defendants).

### 3.   Fraud and Constructive Fraud

Count Nine of the Complaint alleges common law fraud against Defendants.   "The elements of common law fraud under New York law are: '(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff.'"   Bui v. Industrial Enters. of Am., Inc., 594 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (quoting Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006)).   Because fraud claims must be pled with particularity, see Fed. R. Civ. P. 9(b), a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."   Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation marks omitted).   A plaintiff asserting fraud claims also "must 'allege facts that give rise to a strong inference of fraudulent intent.'"   Id. at 198 (quoting First Capital

_Asset Mgmt., Inc. v. Satinwood, Inc._, 385 F.3d 159, 179 (2d Cir. 2004)) (emphasis in original).

Sapere relies heavily on the group pleading doctrine. (Mem. of Law Opp'n Defs.' Mots. Dismiss Am. Compl., dated Feb. 4, 2014 ("Sapere's Opp'n"), at 25-26, Dkt. No. 634.) The group pleading doctrine permits a court to presume, at the motion-to-dismiss stage, that "group-published" documents such as "statements in prospectuses, registration statements, annual reports, [and] press releases" are attributable to "individuals with direct involvement in the everyday business of the company." _In re BISYS Sec. Litig._, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) (quoting _In re NTL, Inc. Sec. Litig._, 347 F. Supp. 2d 15, 22 n.26 (S.D.N.Y. 2004)). In order to invoke the group pleading doctrine against a particular defendant, the complaint must allege facts indicating that the defendant was a corporate insider, with direct involvement in day-to-day affairs, within the entity issuing the statement. _See_ _id._ at 440-41; _see_ _also_ _In re Parmalat Sec. Litig._, 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) ("Alleging direct involvement in the company's everyday business is critical to support the [group pleading] presumption.").

The Court concludes that Sapere's use of the group pleading doctrine is inappropriate for several reasons. First, the Complaint fails to allege facts to suggest that several of the Individual Defendants were sufficiently involved with MF Global and MFGI's daily affairs. In particular, Sapere makes no showing that the Independent Directors were corporate insiders or involved in MF Global's day-to-day operations. See Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 494 (S.D.N.Y. 2005) (rejecting use of group pleading doctrine against outside directors absent allegation that directors "acted like corporate insiders").

Second, several of the statements that Sapere alleges to have been fraudulent are not the type of group-published statements subject to the group pleading doctrine. For instance, Sapere relies on statements made on MF Global's public website and on private, customer-accessible online account displays. (See, e.g., Compl. ¶¶ 13, 14, 39, 63(a), 116, 182, 187.) But "it is far from obvious that senior corporate officers would be involved in drafting text for a corporate website." American Fin. Int'l Grp.-Asia, L.L.C. v. Bennett, No. 05 Civ. 8988, 2007 WL 1732427, at *11 (S.D.N.Y. June 14, 2007). At its core, Sapere's theory is

- 13 -

that the Individual Defendants are liable for any statement that has any link to MF Global or its subsidiaries. The group pleading doctrine does not extend so far. See Camofi Master LDC v. Riptide Worldwide, Inc., No. 10 Civ. 4020, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011) (noting that group pleading doctrine "is extremely limited in scope" and "is limited to group-published documents").

Third, and most significantly, Sapere improperly attempts to group-plead the scienter requirement. "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009) (citing Devaney v. Chester, 813 F.2d 566, 568 (2d Cir. 1987)); see also In re CRM Holdings, Ltd. Sec. Litig., No. 10 Civ. 975, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012). The Court is persuaded that the Complaint does not offer a sufficient basis to permit a reasonable inference that the Individual Defendants acted with scienter. This finding is particularly true of the Independent Directors and the Sapere-Only Defendants, against whom, as noted above, the Complaint fails to

- 14 -

plausibly allege knowledge of or intent to further the misuse of customer funds.

In sum, the facts pled in the Complaint do not permit a reasonable inference that the Individual Defendants made statements with the intent to defraud Sapere. The Complaint neither adequately identifies who made particular statements nor explains why those statements give rise to a strong inference of fraudulent intent. Sapere has thus failed to meet its burden to plead fraud with particularity. See Nakahata, 723 F.3d at 197-98.

Count Eight of the Complaint alleges constructive fraud. "Constructive fraud requires establishing the same elements as actual fraud except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." Faktor v. Yahoo! Inc., No. 12 Civ. 5220, 2013 WL 1641180, at *2 (S.D.N.Y. Apr. 16, 2013) (internal quotation marks omitted). Count Eight suffers from many of the same deficiencies as Count Nine. Count Eight further fails because Sapere cannot establish a fiduciary relationship between itself and Defendants. While the Complaint might allege a fiduciary relationship between Sapere and MFGI, "'derivative' allegations" against MFGI's officers are insufficient to hold those officers

- 15 -

directly liable for breaches of fiduciary duty.  MF Global
II, 2014 WL 667481, at *15 (quoting Krys v. Butt, 486 F.
App'x 153, 156 (2d Cir. 2012)).

Finally, to the extent that Sapere premises Counts
Eight and Nine on a duty to disclose (Sapere's Opp'n at 29-
30), the lack of either a fiduciary duty between Sapere and
the Individual Defendants or a failure to disclose in the
course of contract negotiations precludes a finding that
the Individual Defendants had a duty to disclose
information to Sapere.  See Lerner v. Fleet Bank, N.A., 459
F.3d 273, 292 (2d Cir. 2006).

The Court thus grants the Individual Defendants'
motion to dismiss Counts Eight and Nine.

### 4.   Conversion

Count Ten of the Complaint alleges conversion.

> To withstand a motion to dismiss in a conversion
> claim, a plaintiff must allege: (1) the property
> subject to conversion is a specific identifiable
> thing; (2) plaintiff had ownership, possession or
> control over the property before its conversion; and
> (3) defendant exercised an unauthorized dominion over
> the thing in question, to the alteration of its
> condition or to the exclusion of the plaintiff's
> rights.

MF Global II, 2014 WL 667481, at *17-18 (internal quotation
marks omitted).  The Court previously denied Corzine and
O'Brien's motion to dismiss a conversion claim in the

- 16 -

Commodity Customer Action.  See id. at *18.  The Customer Class Defendants' argument for dismissal of Sapere's conversion count -- that MFGI's contract with Sapere precludes such a claim -- is the same argument that the Court previously rejected.  See id.  The Court thus denies the Customer Class Defendants' motion to dismiss Sapere's Count Ten.

However, the Court is not persuaded that the Complaint contains facts sufficient to permit it to draw a reasonable inference that the Independent Directors and the Sapere-Only Defendants "exercised an unauthorized dominion over" Sapere's funds.  See id. at *17 (quoting Kirschner v. Bennett, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009)).  Sapere fails to meet its burden to sufficiently allege that the Independent Directors and the Sapere-Only Defendants ever participated in or had knowledge of any improper transfers of Sapere's property.  The Court therefore grants the motion to dismiss Count Ten as to the Independent Director Defendants and the Sapere-Only Defendants.

　　5.　 Trespass to Chattels

Count Eleven of the Complaint brings a claim for trespass to chattels.  "The essential elements of trespass to chattels are (1) intent, (2) physical interference with

- 17 -

(3) possession (4) resulting in harm." Chevron Corp. v. Donziger, 871 F. Supp. 2d 229, 258 (S.D.N.Y. 2012) (internal quotation mark omitted). A claim for trespass to chattels overlaps with a claim for conversion: "[W]here a defendant merely interfered with plaintiff's property then the cause of action is for trespass, while denial of plaintiff's dominion, rights, or possession is the basis of an action for conversion." Sweeney v. Bruckner Plaza Assocs. LP, No. 23941/00, 2004 WL 5644706, at *4 (N.Y. Sup. Ct. July 12, 2004) (citing Sporn v. MCA Records, Inc., 448 N.E.2d 1324, 1326 (N.Y. 1983)).

The Individual Defendants cite Chevron for the proposition that "funds do not constitute a 'chattel.'" (Mem. of Law Supp. Individual Defs.' Mot. Dismiss Am. Compl., dated Dec. 6, 2013, at 26, Dkt. No. 589.) The Court is not persuaded that Chevron stands for the broad reasoning that the Individual Defendants ascribe to it. In Chevron, the court held that the expenditure of money could not form the basis for a trespass-to-chattels claim because "[m]oney is fungible and not properly characterized as a 'chattel.'" Chevron Corp., 871 F. Supp. 2d at 259. But in a footnote, the Chevron Court acknowledged that a claim based on interference with funds could lie where the funds

- 18 -

"can be described, identified, or segregated in the manner that a specific chattel can be and when [they are] subject to an obligation to be returned." Id. at 259 n.172 (quoting Meisels v. Schon Family Found., No. 22024/09, 2010 WL 2674049, at *3 (N.Y. Sup. Ct. June 28, 2010)); see also Republic of Haiti v. Duvalier, 626 N.Y.S.2d 472, 475 (App. Div. 1st Dep't 1995) (recognizing conversion action for money that is "specifically identifiable and . . . subject to an obligation to be returned or to be otherwise treated in a particular manner"). Sapere's claim falls within that definition because it alleges that the Individual Defendants interfered with Sapere's segregated and identifiable funds. Sapere has thus identified a "chattel" associated with its claim.

Because the elements of a trespass-to-chattels claim are substantially similar to the elements of a conversion claim, the Court applies the same analysis to Count Eleven as it applied to Count Ten. The Court thus denies the motion to dismiss Count Eleven as to the Commodity Class Defendants and grants the motion to dismiss as it relates to the Independent Directors and the Sapere-Only Defendants.

- 19 -

6.   <u>Tortious Interference with Contract</u>

Count Twelve of the Complaint alleges tortious interference with contract. "'To state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff.'" <u>MF Global II</u>, 2014 WL 667481, at *20 (quoting <u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>, 547 F.3d 115, 124-25 (2d Cir. 2008)). The Court rejected the Customer Class Defendants' motion to dismiss the same claim in the Commodity Customer Action, <u>see</u> <u>id.</u>, and denies their motion to dismiss Count Twelve of the Complaint for the same reasons. However, the Court concludes that the Complaint does not allege sufficient facts to permit a reasonable inference that either the Individual Directors or the Sapere-Only Defendants intentionally procured a breach of contract. The Court thus grants the motion to dismiss as to those defendants.

7.   <u>Violation of N.Y. General Business Law § 349</u>

Count Thirteen of the Complaint alleges that Defendants are liable for violating N.Y. Gen. Bus. Law § 349(a) ("§ 349"), which prohibits "[d]eceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state." "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). To prove that an act or practice was consumer-oriented, the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995).

The Court is not persuaded that the transactions involved here are consumer-oriented. In an analogous context, courts have rejected the use of § 349 in claims involving securities transactions. See, e.g., In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006); Morris v. Gilbert, 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986); Gray v. Seaboard Sec., Inc., 788 N.Y.S.2d 471, 472-73 (App. Div. 3d Dep't 2005); Fesseha v. TD Waterhouse Inv. Servs., 761 N.Y.S.2d 22, 23-24 (App. Div. 1st Dep't 2003). But see Scalp & Blade, Inc. v. Advest, Inc., 722 N.Y.S.2d 639, 640-41 (App. Div. 4th Dep't 2001)

(holding that § 349 applies to securities transactions). In Morris, the court explained that purchases of securities are distinguishable from purchases of traditional consumer goods: "[S]ecurities are purchased as investments, not as goods to be 'consumed' or 'used.'" 649 F. Supp. at 1497. The court further noted that "the securities markets are subject to pervasive federal regulation, and it is questionable that New York's legislature intended to give securities investors an added measure of protection beyond that provided by the securities acts." Id.

Sapere's § 349 claim suffers from the same defects as the claim in Morris. Sapere invested funds with MF Global and MFGI as investments, not as a purchase of traditional consumer goods. Further, the commodities markets, like the securities markets, are subject to federal oversight and regulation. The Court thus rejects Sapere's attempt to apply § 349 in this case.

Sapere argues that this interpretation of § 349 is improperly narrow in light of the substantial harm that MF Global's collapse caused to the commodities markets as a whole. (Sapere's Opp'n at 59-61.) But § 349 does not cover all widespread harms. The statute offers redress only for those public harms suffered in connection with

- 22 -

consumer activity. The Court is not persuaded that commodities investments constitute consumer activity as described in § 349.

For these reasons, the Court grants the Individual Defendants' motion to dismiss Count Thirteen.

### 8.   Aiding and Abetting Tortious Conduct

In Count Fourteen of the Complaint, Sapere alleges that Defendants aided and abetted violations of all of Sapere's tort-based claims. In general, a defendant is liable for aiding and abetting a tort only if the defendant knew of and knowingly participated in the primary violation. See MF Global II, 2014 WL 667481, at *16-18. The Court concludes that Sapere has met its burden to plead the Customer Class Defendants' knowledge and participation. On the other hand, the Court is not persuaded that the facts stated in the Complaint permit a similar reasonable inference of knowledge and participation by the Independent Directors or the Sapere-Only Defendants. The motion to dismiss Count Fourteen is thus denied as to the Customer Class Defendants and granted for the Independent Directors and the Sapere-Only Defendants.

B.   <u>CLAIMS AGAINST JCF</u>

Sapere names JCF as a defendant in several counts of the Complaint and premises its allegations on JCF's relationship with two alleged agents, Corzine and Schamis.[4] The Court has dismissed all claims against Schamis, who is one of the Independent Director Defendants.   The claims against JCF thus rise or fall on whether JCF is liable for any of Corzine's alleged tortious conduct.

Sapere first claims that JCF is directly liable because it was "negligent in selecting, supervising, or otherwise controlling" Corzine.   (Sapere's Opp'n at 54.) To prevail on this claim, Sapere must show that: (1) Corzine and JCF "were in an employee-employer relationship," (2) JCF "knew or should have known of [Corzine's] propensity for the conduct which caused the injury prior to the injury's occurrence," and (3) "the tort was committed on [JCF's] premises or with [JCF's] chattels."   <u>See</u> <u>Ehrens v. Lutheran Church</u>, 385 F.3d 232, 235 (2d Cir. 2004) (citations and internal quotation marks omitted).   The Complaint contains no allegations that

---

[4] The parties dispute JCF's role in this case.  Sapere alleges that JCF was an MF Global stakeholder. (Sapere Opp'n at 8).  JCF claims that it was only "an investment advisor to a fund . . . that was an [MF Global] shareholder." (Mem. of Law in Supp. Def. J.C. Flowers & Co. LLC's Mot. to Dismiss Am. Compl., dated Dec. 6, 2013, at 2, Dkt. No. 597.)  The dispute is immaterial to resolving this motion to dismiss.

Corzine had any propensity to commit any of his alleged misconduct, much less that JCF knew of any such propensity. Sapere also fails to allege that any of Corzine's conduct occurred on JCF's premises or with JCF's chattels.   The Court thus concludes that JCF is not directly liable for Corzine's actions.

Sapere next argues that JCF is subject to vicarious liability because "Corzine . . . acted as Defendant JCF's agent within the scope of [his] authority in committing the wrongful acts that harmed Sapere." (Sapere's Opp'n at 55.) According to the Complaint, Corzine "acted within the scope of his express, implied and apparent authority" in his work at MF Global. (Compl. ¶ 4(r)(i).) Sapere also claims that Corzine's "performance and recompense" at JCF were tied to his work at MF Global. (Compl. ¶ 4(r)(ii).) Finally, the Complaint states that JCF's chief executive officer "directed and advised" Corzine and other MF Global employees about MF Global's business activities. (Compl. ¶ 4(r)(iii).) The Court is not persuaded that these meager and conclusory allegations are sufficient to state a claim of vicarious liability, either through actual authority or through apparent authority.

To establish an actual agency theory of liability, Plaintiffs must allege "(1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 462 (2d Cir. 2003). The "consent for actual authority may be either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances." Cromer Fin. Ltd. v. Berger, Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847, at *4 (S.D.N.Y. May 2, 2002) (quoting Riverside Research Inst. v. KMGA, Inc., 489 N.Y.S.2d 220, 223 (App. Div. 1st Dep't 1985), aff'd, 497 N.E.2d 669 (N.Y. 1986)) (internal quotation marks omitted). Plaintiffs must also show that "the principal . . . maintain[ed] control over key aspects of the undertaking." Commercial Union Ins. Co., 347 F.3d at 462. However, "the control asserted need not include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective." Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (internal quotation marks omitted). Finally, "[t]he question whether an agency relationship exists is highly factual . . . and can turn on a number of factors . . . ." Id.

The Complaint contains no allegations to support a reasonable inference that JCF controlled Corzine's conduct at MF Global. Instead, the conclusory allegations fail to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Sapere leans heavily on Corzine's financial compensation from JCF as a factor in determining control. But compensation itself does not establish control. Cf. In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 589 (S.D.N.Y. 2007) (rejecting agency liability based solely on one corporation's funding of another corporation's activities). Thus, even assuming that JCF compensated Corzine for his work at MF Global, the Court cannot reasonably infer JCF's control over Corzine, particularly in light of the absence of any other allegations that would tend to suggest JCF's control of Corzine's actions at MF Global.

"Apparent authority is 'the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.'" In re Worldcom, Inc., No. 02-13533, 2007 WL 735021, at *5 (Bankr. S.D.N.Y. Mar. 9, 2007) (quoting Restatement (Second) of Agency § 8 (1958)). "Second

- 27 -

Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations." Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989); see also Ben-Reuven v. Kidder, Peabody & Co., 661 N.Y.S.2d 28, 29 (App. Div. 2d Dep't 1997) ("Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." (internal quotation marks omitted)). The appearance of authority must be created by the principal; "the agent cannot confer authority upon himself or make himself an agent simply by saying that he is one." Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 161 (S.D.N.Y. 2007) (internal quotation marks omitted).

Again, the Complaint contains no facts to permit a reasonable inference that Corzine acted with apparent authority. Nowhere in the Complaint does Sapere allege any communications made by JCF that would reasonably give a third party the impression that Corzine was JCF's agent.

The Court thus finds no basis to hold JCF liable for Corzine's conduct, either directly or vicariously. Accordingly, the Court grants JCF's motion to dismiss all claims against it.

C.   <u>PUNITIVE DAMAGES</u>

The Complaint seeks punitive damages in connection with Sapere's tort-based claims.  Because the Court has dismissed all claims against the Independent Directors, the Sapere-Only Defendants, and JCF, it is only necessary to consider whether the Complaint states a claim for punitive damages against the Customer Class Defendants.

"'Punitive damages, in contrast to compensatory damages, are awarded to punish a defendant for wanton and reckless or malicious acts and to protect society against similar acts.'" <u>In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.</u>, 725 F.3d 65, 127 (2d Cir. 2013) (quoting <u>Rivera v. City of New York</u>, 836 N.Y.S.2d 108, 117 (App. Div. 1st Dep't 2007)).  The defendant's alleged tortious conduct "must be close to criminality" for the plaintiff to collect punitive damages.  <u>Id.</u> (quoting <u>Roginsky v. Richardson-Merrell, Inc.</u>, 378 F.2d 832, 843 (2d Cir. 1967)) (internal quotation mark omitted).  A court should evaluate the "underlying right or public policy

- 29 -

jeopardized by the tortfeasor's conduct" to determine the level of culpability necessary for the plaintiff to obtain punitive damages.   Id. at 128 (citation and internal quotation mark omitted).   "[T]he more important the right at issue, the greater the need to deter its violation." Id. (alteration in original) (citation and internal quotation marks omitted).

The Court is not persuaded that Sapere should be prohibited from seeking punitive damages against the Customer Class Defendants at this early stage of the litigation.   A motion to dismiss a claim for punitive damages should be granted only if the plaintiff has "failed to allege facts sufficient to demonstrate that the [defendants] engaged in conduct which rose to the high level of moral culpability necessary to support a claim for punitive damages." Financial Servs. Vehicle Trust v. Saad, 900 N.Y.S.2d 353, 355 (App. Div. 2d Dep't 2010).   The facts alleged here are sufficient to permit a reasonable inference that the Customer Class Defendants committed "wanton and reckless or malicious acts" of the type punishable by punitive damages. See In re MBTE Prods., 725 F.3d at 127.   As the Court acknowledged in the Customer Class Decision, the facts surrounding MF Global's collapse

are "sufficient to permit an inference of [the Customer Class Defendants'] intent to further MFGI's eventual violation of the CEA." MF Global II, 2014 WL 667481, at *12. The Court has also observed that the facts support a reasonable inference that the Customer Class Defendants "knew of [MF Global's] liquidity crisis and its increasing impact on the firm's excess share of customer accounts," but nonetheless "continued to transfer money from MFGI to MF Global's other operations as part of MF Global's 'shell game.'" Id. at *17.

On these facts, the Complaint's claim for punitive damages survives a motion to dismiss. The intentional transfer of funds that the CEA and CFTC Regulations required to be segregated and secured represents a substantial breach of trust that, if proved with sufficient evidence, would warrant punishment "to protect society against similar acts." In re MBTE Prods., 725 F.3d at 127 (internal quotation mark omitted). To the extent that the Customer Class Defendants oppose Sapere's interpretation of the facts, their arguments "would be more properly addressed either on a motion for summary judgment or to a factfinder at trial, after a fuller record is developed

during discovery." <u>Deangelis v. Corzine</u>, No. 11 Civ. 7866, 2014 WL 216474, at *1 (S.D.N.Y. Jan. 17, 2014).

The Customer Class Defendants also argue that Sapere's punitive damages claim must allege public harm because Sapere's tort actions arise out of its contract with MFGI. Under New York law, punitive damages are available for claims that arise out of a contract only if they cause harm directed at the general public. <u>See New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)</u>, 266 F.3d 112, 130 (2d Cir. 2001) (<u>citing New York Univ. v. Continental Ins. Co.</u>, 662 N.E.2d 763, 767 (N.Y. 1995)). Here, however, Sapere's claims do not arise out of its contract with MFGI. Rather, the claims arise out of "violations of the CEA and the CFTC Regulations that are independent of the contract itself." <u>MF Global II</u>, 2014 WL 667481, at *18. Therefore, the Court is not persuaded that Sapere must allege public harm to collect punitive damages.

The Court thus denies the Customer Class Defendants' motion to preclude Sapere from pursuing claims for punitive damages in this action.

D.   <u>LEAVE TO REPLEAD</u>

Though a court "should freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it

is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted).

The Court previously gave the plaintiffs in the Commodity Customer Action leave to replead "only upon a good faith, compelling request . . . containing sufficient new factual allegations plausibly showing that such repleading would correct the deficiencies identified in the Court's findings that warranted dismissal of particular claims." MF Global II, 2014 WL 667481, at *25. Because Sapere is similarly situated to those plaintiffs, the Court will grant Sapere leave to replead under the same circumstances. Any application for leave to replead may be filed within twenty-one days of the date of this Decision and Order.[5]

---

[5] The Court notes that the time for the plaintiffs in the Commodity Customer Action to replead the claims that the Court dismissed has expired. The Commodity Customer Action plaintiffs did not seek such leave to replead.

- 33 -

## V.   ORDER

For the reasons discussed above, it is hereby

    **ORDERED** that the joint motion (Dkt. No. 588) of defendants Jon S. Corzine ("Corzine"), Bradley I. Abelow ("Abelow"), Henri J. Steenkamp ("Steenkamp"), Vinay Mahajan ("Mahajan"), Edith O'Brien ("O'Brien"), David Dunne ("Dunne"), David P. Bolger ("Bolger"), Eileen S. Fusco ("Fusco"), David Gelber ("Gelber"), Martin J. Glynn ("Glynn"), Edward L. Goldberg ("Goldberg"), David I. Schamis ("Schamis"), Robert S. Sloan ("Sloan"), Michael G. Stockman ("Stockman"), and Dennis A. Klejna ("Klejna") to dismiss is **GRANTED** as to defendants Bolger, Fusco, Gelber, Glynn, Goldberg, Schamis, Sloan, Stockman, and Klenja, and **GRANTED IN PART** and **DENIED IN PART** as to defendants Corzine, Abelow, Steenkamp, Mahajan, O'Brien, and Dunne; and it is further

    **ORDERED** that the motion (Dkt. No. 596) of defendant J.C. Flowers & Co. LLC is **GRANTED**; and it is finally

    **ORDERED** that plaintiff Sapere CTA Fund, L.P. herein is granted leave to replead upon submitting to the Court, within twenty-one days of the date of this Decision and Order, in the form of a letter-brief not to exceed three pages, an application plausibly showing that such

- 34 -

repleading would correct the deficiencies identified in the Court's findings discussed above, and thus would not be futile.


**SO ORDERED.**


Dated:     New York, New York
           16 April 2014



                              _____
                                   Victor Marrero
                                     U.S.D.J.