# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MF GLOBAL HOLDINGS LIMITED SECURITIES LITIGATION | : <br> : Civil Action No. 1:11-CV-07866-VM <br> : |
| THIS DOCUMENT RELATES TO: | : <br> : |
| All Securities Actions <br> (*DeAngelis v. Corzine*) | : ECF CASE <br> : <br> : |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Salvatore J. Graziano
Hannah G. Ross
Jai Chandrasekhar
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444

**BLEICHMAR FONTI**
**TOUNTAS & AULD LLP**
Javier Bleichmar
Dominic J. Auld
Cynthia Hanawalt
7 Times Square, 27th Floor
New York, New York 10036
Telephone:  (212) 789-1340
Facsimile:   (212) 205-3960

*Co-Lead Counsel for Lead Plaintiffs and the Settlement Classes*

Dated:  October 9, 2015

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.      THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL ......................... 5

     A.    The Current Settlements Are Presumptively Fair, Reasonable and
          Adequate ..............................................................................................................6

     B.    Application of the *Grinnell* Factors Demonstrates That the Current
          Settlements Are Substantively Fair, Reasonable and Adequate ...........................9

          1.    The Complexity, Expense and Likely Duration of the Litigation
                Support Approval of the Current Settlements............................................10

          2.    The Reaction of the Settlement Classes to the Current Settlements..........12

          3.    The Advanced Stage of the Proceedings and the Substantial
                Amount of Discovery Completed Support Approval of the Current
                Settlements................................................................................................14

          4.    The Risks of Establishing Liability and Damages Support
                Approval of the Current Settlements .........................................................15

                (a)    Risks of Litigation Against PwC .................................................. 16

                (b)    Risks of Litigation Against the Individual Defendants................. 18

          5.    The Ability of Defendants to Withstand a Greater Judgment...................19

          6.    The Range of Reasonableness of the Settlement Funds in Light of
                the Best Possible Recoveries and all the Attendant Risks of
                 Litigation Support Approval of the Current Settlements...........................20

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD
        BE APPROVED ............................................................................................... 21

III.    THE PWC AND INDIVIDUAL DEFENDANT SETTLEMENT CLASSES
        SHOULD BE FINALLY CERTIFIED............................................................. 23

IV.    NOTICE TO THE SETTLEMENT CLASSES SATISFIED ALL THE
        REQUIREMENTS OF RULE 23 AND DUE PROCESS.............................. 24

CONCLUSION..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................9, 25

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................................................5

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
  *aff'd*, 688 F.3d 713 (11th Cir. 2012) ...................................................................17

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................*passim*

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................15

*City of Detroit v. Grinnell Corp*. 495 F.2d 448 (2d Cir. 1974).........................9, 15, 20

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................5, 10

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y 2013).....................................................................9

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) .................6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................................8, 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..............................................................................................24

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......10, 12, 19, 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................22

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ..........................10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015).....................................18

*In re Global Crossing Secs. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... *passim*

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).........................................................................9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...........................21, 22

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..............................11

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001).........................................................................23

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... *passim*

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................21

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................20, 23

*In re Marsh & McLennan Cos. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...............................25

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................................22

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012).............................20

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................6

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................10

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..........................................................................20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2015)...............................................................................16

*Padro v. Astrue,*
    No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ...................6

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)........................................22, 23

*In re Pfizer Inc. Sec. Litig.,*
    No. 04-CV-9866-LTS, 2014 WL 3291230 (S.D.N.Y. July 8, 2014)....................................18

*In re Puda Coal Sec. Inc., Litig.,*
    30 F. Supp. 3d 230 (S.D.N.Y. 2014).................................................................................17

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000)................................................................................................17

*Shapiro v. JPMorgan Chase & Co.,*
    Nos. 11 Civ. 8331, 11 Civ. 7961, 2014 WL 1224666
    (S.D.N.Y. Mar. 24, 2014) ............................................................................................15, 21

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
    No. 06 CIV 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008).............................11

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................11, 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
    No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)...........................20

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................6, 8

*Van Oss v. New York,*
    No. 10 CIV 7524 (SAS), 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ...............................9

*In re Veeco Instruments Inc. Sec. Litig.,* No. 05 MDL 01695 (CM),
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).............................................................9, 12, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)..........................................................................5, 6, 9, 24

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)................................................................................................14

*White v. First Am. Registry, Inc.,*
    No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007)..............................10

*In re WorldCom, Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................................................23

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 CIV 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) .............................23

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051 (CM), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ..................................22

**STATUTES**

11 U.S.C. § 362 ..................................................................................................................18

15 U.S.C. § 77z-1(a)(7) ......................................................................................................24

15 U.S.C. § 78u-4(a)(7) ......................................................................................................24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................................................2

Fed. R. Civ. P. 23(e) .......................................................................................................5, 24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................24, 25

Court-appointed lead plaintiffs, the Virginia Retirement System and Her Majesty the Queen in Right of Alberta ("Lead Plaintiffs"),[1] on behalf of themselves and the Settlement Classes (defined below), respectfully submit this memorandum of law in support of their motion for final approval of: (i) the proposed settlement resolving all of the PwC Settlement Class's claims in the Action against PricewaterhouseCoopers LLP ("PwC") in exchange for $65 million in cash (the "PwC Settlement"); (ii) the proposed settlement resolving all of the Individual Defendant Settlement Class's claims in the Action against defendants Jon S. Corzine, J. Randy MacDonald, Henri J. Steenkamp, David P. Bolger, Eileen S. Fusco, David Gelber, Martin J.G. Glynn, Edward L. Goldberg, David I. Schamis, and Robert S. Sloan (the "Individual Defendants") in exchange for $64.5 million in cash (the "Individual Defendant Settlement"); and (iii) approval of the proposed plan of allocation (the "Plan of Allocation") of the proceeds of all the Court-approved settlements.[2]

The Current Settlements are in addition to two settlements with certain Underwriter Defendants totaling more than $74.9 million that were previously approved by the Court following a hearing on June 26, 2015. If this motion is granted, the total recovery for investors in this Action will be $204.4 million. Claims asserted against the non-settling Underwriter Defendants – five of the eight underwriters of MF Global's 6.25% Senior Notes – have not been released by any of the

---

[1] All capitalized terms not separately defined herein have the same meanings as set forth in the concurrently filed Joint Declaration of Salvatore J. Graziano and Javier Bleichmar in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlements and Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Decl." or "Joint Declaration").

[2] PwC and the Individual Defendants are collectively referred to herein as the "Settling Defendants"; the PwC Settlement and Individual Defendant Settlement are collectively referred to herein as the "Current Settlements"; and the Current Settlements, together with the Underwriter Settlement and Commerz Settlement that were previously approved by the Court, are referred to herein as the "Settlements." The "Settlement Classes" means, collectively, the PwC Settlement Class, the Individual Defendant Settlement Class and the settlement classes certified for purposes of the Underwriter Settlement and Commerz Settlement.

Settlements and are being vigorously pursued by Lead Plaintiffs.

## PRELIMINARY STATEMENT

Lead Plaintiffs respectfully submit that each of the proposed Current Settlements is an excellent result for the relevant Settlement Class and satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.   As detailed in the accompanying Joint Declaration[3] and as set forth herein, each of the Current Settlements constitutes an extremely favorable recovery for members of the respective classes when compared to the risks inherent in the litigation.

In negotiating and agreeing to the Current Settlements, Lead Plaintiffs and Co-Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims asserted against each of the Settling Defendants.  Co-Lead Counsel's prosecution of the Action has included, *inter alia*: (i) an extensive factual investigation that involved interviews with numerous former employees of MF Global, consultation with experts, and a detailed review and analysis of the tremendous amounts of public information relating to the collapse of MF Global, such as documents from MF Global's Chapter 11 bankruptcy proceeding and MF Global Inc.'s SIPA liquidation proceeding, SEC filings, press releases and other public statements, media and news reports, analyst reports, and materials and transcripts from Congressional hearings; (ii) researching the law relevant to the claims against each Settling Defendant and the potential defenses available to these defendants; (iii) preparing extensive briefing in opposition to four separate motions to dismiss the Consolidated Amended Securities Class Action Complaint filed

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: (i) the history of the Action; (ii) the negotiations leading to the Current Settlements; (iii) the risks and uncertainties of continued litigation against PwC and the Individual Defendants; (iv) the dissemination of the Claim Packets to members of the Settlement Classes; and (v) the terms of the Plan of Allocation for the proceeds of the Settlements.

by the Individual Defendants (as well as two motions to dismiss filed by the Underwriter Defendants); (iv) preparing a Consolidated Second Amended Securities Class Action Complaint (the "Complaint") that added claims against PwC and then briefing the opposition to PwC's motion to dismiss the Exchange Act claims asserted against it; (v) conducting targeted review and analysis of the approximately 46 million pages of documents produced to Lead Plaintiffs by Defendants and third parties, including James W. Giddens, as Trustee for the SIPA liquidation of MF Global Inc., and Nader Tavakoli, MF Global's Litigation Trustee; (vi) taking, defending or actively participating in 31 depositions through May 8, 2015 (the date of the agreement in principal to settle with the Individual Defendants), which included three depositions of PwC employees and numerous depositions of senior MF Global officers, including Individual Defendant Jon Corzine (MF Global's former CEO), who was deposed over three days, Individual Defendant John R. MacDonald (MF Global's former CFO), and other key former MF Global employees; (vii) retaining and consulting with experts regarding damages, liquidity, and accounting and with counsel specializing in bankruptcy matters; (viii) drafting and filing a motion for class certification and an accompanying expert report on market efficiency and classwide damages; and (ix) participating in extensive arm's-length settlement negotiations, which included mediation with former California Superior Court Judge Daniel Weinstein and U.S. Magistrate Judge James C. Francis (with respect to the claims against the Individual Defendants) and with former U.S. District Court Judge Layn Phillips (with respect to the claims against PwC). ¶¶ 5, 13-48.[4]  As a result of these efforts, Co-Lead Counsel were able to negotiate from a position of strength and believe that the Current Settlements are excellent results in light of the risks of continued litigation.

      While Lead Plaintiffs and Co-Lead Counsel believe that the claims asserted against the

---

[4] All references to "¶ _" are to paragraphs in the Joint Declaration.

Settling Defendants are meritorious, they also recognize that Plaintiffs would have faced substantial challenges in: (i) proving that the Settling Defendants made material misstatements and omissions; (ii) establishing that the Settling Defendants acted with *scienter* (with respect to the Exchange Act claims); and (iii) demonstrating loss causation and proving classwide damages. ¶¶ 6-8, 49-60.  Although Lead Plaintiffs were able to overcome the Individual Defendants' motions to dismiss, PwC's motion to dismiss was still pending when the PwC Settlement was reached, and there is no guarantee Lead Plaintiffs would have prevailed on that motion, or on summary judgment or at trial once the factual record was fully developed.  This is especially true given that the claims in the Action involve complex financial transactions and accounting principles, and both plaintiffs and defendants would have presented substantial expert testimony before the jury. The inevitable "battle of the experts" at trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.  ¶¶ 56, 59.

It is also important to recognize that even if Plaintiffs were to prevail at trial and on appeal, there would remain substantial collectability issues with respect to the Individual Defendants. Continued litigation would likely have provided a lesser recovery because MF Global itself was in bankruptcy and MF Global's available officers' and directors' insurance was being rapidly depleted by the costs of litigation of numerous interrelated actions brought against the Individual Defendants by MF Global's customers, the MF Global bankruptcy trustees and the government, all of which are still ongoing.  Indeed, given the substantial ongoing defense costs and the possibility of settlements in the other actions, it is almost certain that the available insurance would be depleted before a litigated verdict could be obtained against the Individual Defendants.[5]

---

[5] The Individual Defendant Settlement was expressly conditioned on Lead Plaintiffs receiving confirmation of the representations made to Co-Lead Counsel as to the Officer Defendants' net worth in settlement negotiations.  With respect to Defendant Corzine, the settling parties agreed in

Finally, the Current Settlements save the Settlement Classes the considerable expense and delay posed by continued litigation.  In the absence of the Current Settlements, Plaintiffs faced the prospect of protracted litigation against the Settling Defendants through the remainder of fact discovery, costly expert discovery, anticipated motions for summary judgment, a trial, post-trial motion practice, and likely ensuing appeals.  Thus, if the litigation continued, members of the Settlement Classes would face additional expenses, and it would most likely be years before any recovery could be achieved – with the risk that there might be no recovery at all.  The Current Settlements avoid these risks while providing a substantial, certain and immediate benefit to each of the Settlement Classes.  In light of these considerations, Lead Plaintiffs and Co-Lead Counsel strongly believe that the Current Settlements are fair, reasonable and adequate and warrant final approval by the Court.

## ARGUMENT

## I.      THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).  Public policy favors the settlement of disputed claims among private litigants, particularly in class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in

---

the Stipulation to a net worth confirmation process conducted by Judge Weinstein.  That confirmation process has been completed.  Defendants MacDonald and Steenkamp also provided confirmation of their respective net worth representations in a form satisfactory to Co-Lead Counsel.  ¶ 48.

the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.");[6] *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'").

In ruling on final approval of a class settlement, "the Court should consider both the process by which the settlement agreement was negotiated and the substantive fairness of the agreed-upon terms in light of the circumstances of the litigation."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010); *see also Wal-Mart*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-*3 (S.D.N.Y. May 20, 2014).

## A.    The Current Settlements Are Presumptively Fair, Reasonable and Adequate

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart*, 396 F.3d at 116 (citations omitted); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("[A] strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel."); *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("Where the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement.").  Application of these principles demonstrates that the Current Settlements are presumptively fair, reasonable and adequate.

The Current Settlements are the result of negotiations that extended over the course of a number of years.  Starting in February 2013, Lead Plaintiffs and Defendants in the Action (including the Individual Defendants) participated in a global mediation of claims in the MDL

---

[6] Unless otherwise noted, all emphasis is added and internal citations are omitted in quotations.

before Judge Weinstein.  These mediation efforts extended over seven months and included three in-person sessions before Judge Weinstein, as well as multiple other in-person meetings with counsel for Defendants, and multiple telephonic conferences among the parties and with Judge Weinstein.  ¶¶ 40-41.  While these initial attempts were unsuccessful in resolving the Action, the parties continued to periodically engage in settlement negotiations as the litigation proceeded. ¶ 42.

In February 2015, while PwC's motion to dismiss the Exchange Act claims against it was being briefed, Lead Plaintiffs and PwC engaged in mediation under the supervision of former U.S. District Court Judge Layn Phillips.  Following the exchange of detailed opening and reply mediation statements addressing liability and damages issues, counsel for Lead Plaintiffs and PwC took part in an in-person mediation session with Judge Phillips on February 25, 2015 in New York City.  The settlement negotiations were vigorous, fully at arm's-length and conducted in good faith.  At the conclusion of that mediation session, Lead Plaintiffs and PwC executed a term sheet reflecting their agreement to settle for $65 million.  ¶ 43.

In early 2015, Lead Plaintiffs and the Individual Defendants resumed settlement negotiations in earnest and again conducted negotiations with the assistance of Judge Weinstein, as well as with the help of Magistrate Judge Francis, who conducted several settlement conferences.  During this time, Co-Lead Counsel and counsel for the Individual Defendants engaged in multiple telephone negotiations with each other and with Judge Weinstein, to determine whether an agreement could be reached.  These discussions were extremely hard fought and agreement was only reached after much difficulty.  Ultimately, on May 8, 2015, Lead Plaintiffs and the Individual Defendants reached an agreement to settle the Action as to the Individual Defendants for a payment of $64,500,000.  ¶ 45.

The extensive and arm's-length nature of the settlement negotiations and the involvement of experienced mediators like Judges Weinstein and Phillips, as well as a well-respected judicial officer like Magistrate Judge Francis, support the conclusion that the Current Settlements are fair and were achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in  "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *Telik*, 576 F. Supp. 2d at 576 ("Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion.").

Moreover, following three and a half years of litigation, including a thorough investigation, significant motion practice and extensive fact discovery, Co-Lead Counsel were fully informed of the strengths and weaknesses of Lead Plaintiffs' claims.  This, in combination with Co-Lead Counsel's substantial experience prosecuting complex securities class action cases, further strengthens the presumption that the Current Settlements are fair and reasonable.  *See D'Amato*, 236 F.3d at 85 (presumption of fairness applies where "the settlement resulted from 'arm's-length negotiations and . . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'"); *IMAX*, 283 F.R.D. at 189 ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Finally, it is important to recognize that Lead Plaintiffs, both of which are sophisticated institutional investors, played an active role in the litigation and have expressed their support for

the Current Settlements.  *See* Goodman Decl., attached to Joint Decl. as Exhibit 1, at ¶¶ 6, 12; Baccus Decl., attached to Joint Decl. as Exhibit 2, at ¶¶ 7, 13.  A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Accordingly, the Current Settlements are entitled to a strong presumption of fairness.  *See Van Oss v. New York*, No. 10 CIV. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (finding "a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations").

### B.    Application of the *Grinnell* Factors Demonstrates That the Current Settlements Are Substantively Fair, Reasonable and Adequate

Courts in this Circuit analyze a settlement's "substantive fairness through the lens of the nine factors set forth in [*Grinnell*]."  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y 2013).  In  *City of Detroit v. Grinnell Corp.*, the Second Circuit identified nine factors that courts should consider when determining whether to finally approve a settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), *see also Wal-Mart*, 396 F.3d at 117; *In re Advanced Battery Techs. Inc. Sec. Litig.,* 298 F.R.D. 171, 175 (S.D.N.Y. 2014).

"[N]ot every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances."  *IMAX*, 283 F.R.D. at 189.

9

Additionally, in deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

As demonstrated below, the Current Settlements easily merit approval under *Grinnell*.

### 1.   The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Current Settlements

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *Citigroup Bond*, 296 F.R.D. at 155.

When applying this factor to "the settlement of a securities class action, federal courts, including this Court, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010). Courts have also acknowledged that "[s]ecurities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007). This case was no exception.

As set forth in the Joint Declaration, this Action has been vigorously litigated by the parties for over three and a half years. At the time the Current Settlements were reached, Co-Lead Counsel had, among other things, conducted an exhaustive investigation, litigated six motions to dismiss and fully briefed that of PwC, reviewed and analyzed many millions of pages of documents, filed

Plaintiffs' class certification motion and an accompanying expert report on market efficiency and classwide damages, and taken, defended or actively participated in 31 depositions. ¶¶ 5, 13-38.

Continued litigation would have required additional, substantial expenditures of time and money, would have involved many complex issues of law and fact, and there would still exist a significant risk that the Settlement Classes would obtain a result far less beneficial than the one provided by the Current Settlements.  For example, in the absence of the Current Settlements, the Settlement Classes would have expended sizeable amounts of time and money conducting further factual discovery; litigating class certification; conducting expert discovery; engaging in motion practice, including responding to motions for summary judgment which, based on their vigorous defense of the Action, the Settling Defendants could be expected to file; litigating *Daubert* motions; and in proving the claims against the Settling Defendants at trial.  Even if Lead Plaintiffs could recover a larger judgment after a trial – which was far from certain given the risks discussed below – the additional delay through post-trial motions and the appellate process could deny the Settlement Classes any recovery for years, further reducing its value.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The subject matter involved in the claims asserted against the Settling Defendants also added to the complexity. Lead Plaintiffs allege that the federal securities laws were violated through the issuance of a series of material misstatements and omissions about MF Global, including representations regarding MF Global's deferred tax assets ("DTA"), internal controls, and the liquidity risks posed by MF Global's proprietary investments in European sovereign debt through repurchase-to-maturity ("RTM") transactions. These are extremely complicated issues, and they would require extensive assistance from experts and consultants to properly litigate. Additionally, the case against PwC would involve complex questions related to PwC's audits of MF Global's financial statements and internal controls for the fiscal years ended March 31, 2010 and March 31, 2011, and whether they were in accordance with the controlling auditing standards of the Public Company Accounting Oversight Board (United States). Such an inquiry would undoubtedly be complicated and expert intensive.

The $129.5 million all cash settlements at this juncture result in immediate and substantial tangible recoveries without the considerable risk, expense, and delay of trial and the likely appeals that would follow. Thus, Co-Lead Counsel respectfully submit that the Court should find that this factor weighs heavily in favor of the proposed Current Settlements. *See Strougo*, 258 F. Supp. 2d at 258 ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'").

### 2.    The Reaction of the Settlement Classes to the Current Settlements

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67; *FLAG Telecom*, 2010 WL 4537550, at *16; *Veeco*, 2007 WL 4115809, at *7.

Pursuant to the Preliminary Approval Orders, the Court-appointed Claims Administrator, Garden City Group, LLC ("GCG"), began mailing copies of Claim Packet (consisting of the combined notice of the PwC and Individual Defendant Settlements (the "PwC/Individual Defendant Notice" or "Notice"), a copy of the proposed Plan of Allocation and the Proof of Claim and Release Form) on August 5, 2015.  *See* Fraga Decl., attached to the Joint Decl. as Exhibit 4, at ¶¶ 4-5.  Through October 8, 2015, GCG disseminated a total of 77,965 Claim Packets to potential members of the Settlement Classes and nominees.  *Id.* ¶ 7.  In addition, the PwC/Individual Defendant Summary Notice was published once each in the national edition of the *Wall Street Journal* and *Investor's Business Daily* and transmitted over the *PR Newswire* on August 18, 2015. *Id.* ¶ 8.  The PwC/Individual Defendant Notice contained, among other things, a description of the Action and the Current Settlements and information about the rights of the members of the Settlement Classes to submit a Claim Form, to object to the PwC and Individual Defendant Settlements, the Plan of Allocation and/or Co-Lead Counsel's motion for fees and expenses, or to exclude themselves from the PwC and Individual Defendant Settlement Classes.  While the deadline set by the Court for members of the Settlement Classes to object to the Settlements or exclude themselves from the Settlement Classes has not yet passed, to date, only one request for exclusion and no objections have been received.  *Id.* ¶ 11; Joint Decl. ¶ 66.  Thus, the reaction of the Settlement Classes provides additional support for approving the Current Settlements.[7]

---

[7] The deadline for submitting objections and requesting exclusion is October 23, 2015.  As provided in the Preliminary Approval Orders, Co-Lead Counsel will file reply papers on November 13, 2015 that will address the requests for exclusion and any objections that may be received.

**3.     The Advanced Stage of the Proceedings and the Substantial Amount
of Discovery Completed Support Approval of the Current Settlements**

This factor examines whether Lead Plaintiffs had a sufficient amount of information

available regarding the claims and defenses in the litigation to ensure that they were able to

properly evaluate the case and assess the adequacy of the settlement.  *See Weinberger v. Kendrick*,

698 F.2d 61, 74 (2d Cir. 1982); *Bear Stearns*, 909 F. Supp. 2d at 267 ("In considering this factor,

the question is whether the parties had adequate information about their claims, such that their

counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses

asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.")

(internal quotation marks omitted); *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436,

458 (S.D.N.Y. 2004) (this requirement "is intended to assure the Court 'that counsel for plaintiffs

have weighed their position based on a full consideration of the possibilities facing them'").

There is no question that this litigation had reached the point where Co-Lead Counsel had

a thorough understanding of the strengths and weaknesses of the claims and defenses and could

make intelligent, informed appraisals regarding the chances of success.  As noted above and in the

Joint Declaration, this case was settled after more than three and a half years of vigorous, hard-

fought litigation, including extensive document and deposition discovery.  Co-Lead Counsel spent

significant time and resources analyzing and litigating the complex legal and factual issues in this

Action and were well-informed with respect to the core issues as a result of, among other things,

their: (i) extensive investigations prior to and during the process of preparing the amended

complaints; (ii) interviews with numerous former MF Global employees; (iii) retention and

consultation with experts concerning market efficiency, damages, accounting, liquidity, and due-

diligence standards; (iv) review and analysis of many millions of pages of MF Global and third-

party documents; (v) association with extremely competent bankruptcy counsel; (vi) extensive

motion to dismiss briefing, which thoroughly explored the Defendants' legal defenses; (vii) taking, defending or participating in 31 depositions, including a three-day deposition of MF Global's former CEO Jon Corzine; the deposition of John R. MacDonald, MF Global's former CFO; and the depositions of three PwC employees; and (viii) participation in the multi-year mediation process. ¶¶ 5, 13-48.

In light of the advanced stage of this litigation, and the extensive amount of information obtained and analyzed by Co-Lead Counsel, Lead Plaintiffs and Co-Lead Counsel clearly possessed sufficient information to understand the strengths and weaknesses of the case and, as such, were well-positioned to negotiate the terms of the Current Settlements. Thus, this factor supports final approval of the Current Settlements. *See Bear Stearns,* 909 F. Supp. 2d at 267 (parties had requisite knowledge to "gauge the strengths and weaknesses of their claims and adequacy of settlement" where they "conducted extensive investigations, obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues").

### 4.    The Risks of Establishing Liability and Damages Support Approval of the Current Settlements

In assessing the fairness, reasonableness and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. This involves weighing the risks of continued litigation against "the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459. In so doing, the Court need not "decide the merits of the case[,] resolve unsettled legal questions," *Carson v. Am. Brands*, *Inc*., 450 U.S. 79, 88 n.14 (1981), or "foresee with absolute certainty the outcome of the case," *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331, 11 Civ. 7961, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2014).

While Co-Lead Counsel believe that the claims that Lead Plaintiffs asserted against Settling Defendants are meritorious, they also recognize that they faced significant obstacles to proving liability and establishing loss causation and damages.  When compared to the certainty of the significant recovery achieved by the Current Settlements, these risks militated against further litigation, and informed Lead Plaintiffs' and Co-Lead Counsel's belief that the Current Settlements are fair, reasonable and adequate.

(a)       <strong>Risks of Litigation Against PwC</strong>

If the litigation were to continue, Lead Plaintiffs would have had to establish that PwC's audit opinions were materially false and misleading and that PwC failed to conduct adequate audits on MF Global.  In order to do so, Lead Plaintiffs would have had to prove that MF Global's financial statements did, in fact, materially misstate MF Global's DTA and materially misstated or omitted facts about MF Global's internal controls.  PwC argued and would have continued to argue that both of these issues involved application of judgment and that MF Global's financials were not materially misstated.

PwC would also have continued to argue that its audit opinions and the amount of DTA in MF Global's financial statements were matters of opinion for which Lead Plaintiffs would have been required to establish either that the opinions were not subjectively believed by PwC, or that facts showing that PwC lacked a reasonable basis for making the statements were omitted.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). In this regard, PwC would have contended that it conducted extensive audits of MF Global in compliance with applicable auditing standards and that its work undermined any claim that its audit opinion was false or was not subjectively believed.  PwC would also have asserted a due-diligence defense based on the work that it performed.

16

Lead Plaintiffs also faced the substantial hurdle of demonstrating that PwC had actual knowledge of the alleged fraud or acted with sufficient recklessness to establish *scienter*. This was a challenging task in light of case law holding that proving an auditor's recklessness is a very demanding standard that requires conduct approximating an actual intent to aid in the fraud or an audit so shoddy that it was effectively not performed at all. *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) ("to satisfy securities fraud scienter, '[an auditor's] recklessness must be conduct that is 'highly unreasonable', representing 'an extreme departure from the standards of ordinary care.' It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 248 (S.D.N.Y. 2014) ("a plaintiff must proffer facts suggesting far more than simply an audit that could have been better. Rather, the audit must have been so shoddy that it was a 'pretend' audit – an audit that in effect was not performed at all.").

Proving loss causation and damages against PwC presented additional challenges. PwC would have contended that MF Global's collapse was caused by its RTM trades and liquidity crisis, rather than by the alleged misstatements of MF Global's DTA in its financial statements. These are expert intensive issues and there was no guarantee that the trier of fact would have found for plaintiffs. *See In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

Finally, the risks presented by continued litigation were heightened because the case against PwC was still in the early stages and the Court had not yet ruled on PwC's motion to dismiss. Even if Lead Plaintiffs survived this hurdle, they still faced the challenges of prevailing

17

against a motion for summary judgment, at trial, and on any appeals before obtaining any recovery

from PwC.  These are very real risks, and even prevailing at trial does not assure a victory.  *See*

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015) (reversing $2.45

billion judgment in securities class action and ordering a new trial on loss causation and damages),

*reh'g denied* (July 1, 2015).

### (b)    Risks of Litigation Against the Individual Defendants

As with PwC, prevailing against the Individual Defendants was not certain.  Risks included

the challenges associated with proving that MF Global's financial statements and internal control

statements were materially false and misleading and – with respect to claims under Section 10(b)

of the Exchange Act against the Officer Defendants – that the alleged false statements were

intentionally or recklessly made.  The Individual Defendants would also have contested loss

causation and damages, both of which would have required prevailing in the always risky and

expensive battle of the experts.  *See In re Pfizer Inc. Sec. Litig.*, No. 04-CV-9866-LTS, 2014 WL

3291230, at *2-*3 (S.D.N.Y. July 8, 2014) (granting defendants' motion *in limine* to exclude the

testimony of the plaintiffs' damages expert and granting the defendants' motion for summary

judgment based on the plaintiffs' failure to proffer admissible loss-causation and damages

evidence).

Moreover, there were significant risks related to collecting a judgment against the

Individual Defendants and, in particular, any judgment on par with the $64.5 million settlement or

larger.  Lead Plaintiffs could not prosecute this Action against MF Global itself because the

Company had declared bankruptcy, and all litigation against it was stayed under the Bankruptcy

Code, 11 U.S.C. § 362.  This foreclosed an important potential source of recovery for investors.

MF Global's officers' and directors' insurance, which was a significant source of potential funding

for any settlement or verdict against the Individual Defendants, was being rapidly and continually depleted by the substantial ongoing costs of other litigation pending against MF Global's former officers and directors, which included actions by the CFTC, MF Global's trustee, and MF Global's former customers.  Indeed, given the substantial ongoing defense costs and the possibility of settlements in the other actions, it is almost certain that the available insurance would have been depleted before a litigated verdict could be obtained against the Individual Defendants. Furthermore, as part of the Individual Defendants' Settlement, Lead Plaintiffs sought and received information concerning the net worth of the Officer Defendants and, based on this inquiry, Co-Lead Counsel believe that the $64.5 million settlement is superior to continued litigation against them.

Finally, it is important to take into account the risk that the evidence and expert testimony ultimately might not have been enough to overcome summary judgment motions, or sufficient to prevail at trial and on appeal.  *See Bear Stearns*, 909 F. Supp. 2d at 267 ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *FLAG Telecom*, 2010 WL 4537550, at *18 ("The jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.")

For all these reasons, Lead Plaintiffs and Co-Lead Counsel respectfully submit that it is in the best interests of the Settlement Classes to accept the immediate and substantial benefits conferred by the PwC and Individual Defendant Settlements, instead of incurring the significant risk that the Settlement Classes might recover a lesser amount, or nothing at all, after protracted and arduous litigation.

### 5.     The Ability of Defendants to Withstand a Greater Judgment

Although PwC may have been able to pay a judgment in excess of the PwC Settlement amount, "defendants' ability to withstand a higher judgment . . . standing alone, does not suggest

that the settlement is unfair." *D'Amato*, 236 F.3d at 86.  A "defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *IMAX*, 283 F.R.D. at 191.  Indeed, Courts have repeatedly recognized that this factor, standing alone, does not weigh against approval of a settlement where, as here, the other factors weigh in favor of approving the settlement.  *See id.*; *FLAG Telecom*, 2010 WL 4537550, at *19 ("the mere ability to withstand a greater judgment does not suggest the settlement is unfair").

Moreover, as discussed *supra*, even if Lead Plaintiffs were to prevail on their claims against the Individual Defendants, it is unlikely they would have been able to recover more than the $64.5 million settlement given the wasting nature of the officers' and directors' insurance, the substantial costs of the other litigation pending against MF Global's former officers and directors, and the Officer Defendants ability to pay.  Accordingly, this factor favors approval of the Current Settlements.  *See, e.g.*, *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *4 (S.D.N.Y. May 14, 2004)  (likely depletion of insurance supports settlement approval); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (approving settlement where insurance "would be significantly depleted by defense costs").

### 6. The Range of Reasonableness of the Settlement Funds in Light of the Best Possible Recoveries and all the Attendant Risks of Litigation Support Approval of the Current Settlements

Courts commonly combine these two factors.  *See Grinnell*, 495 F.2d at 463; *accord Global Crossing*, 225 F.R.D. at 460.  They instruct a court to "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Grinnell*, 495 F.2d at 462.  This does not involve a "mathematical equation yielding a particularized sum."  *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). Instead, "there is a range of reasonableness with respect to a settlement."  *Newman v. Stein*, 464

F.2d 689, 693 (2d Cir. 1972); *see also Shapiro*, 2014 WL 1224666, at *11 (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Lead Plaintiffs submit that the PwC and Individual Defendants Settlements are both well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. When weighed against the risks of continued litigation, the proposed settlements of $65 and $64.5 million, respectively, are excellent results. As discussed above, if a jury or the Court had credited even some of the Settling Defendants' arguments with respect to liability or damages, the Settlement Classes might have recovered nothing or their recoverable damages might have been dramatically reduced. In light of these risks, the Current Settlements provide an excellent outcome for members of the Settlement Classes.

*        *        *

In sum, the *Grinnell* factors – including the expense and delay of further litigation, Lead Plaintiffs' and Co-Lead Counsel's well-developed understanding of the strengths and weaknesses of the case, and the risks of the litigation – support a finding that the Current Settlements are fair, reasonable and adequate.

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds should be approved if it is fair and reasonable. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation is fair and reasonable as long as it has a "rational basis." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *10 (S.D.N.Y. Dec. 19, 2014); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is

reasonable.  *See Hi-Crush Partners*, 2014 WL 7323417, at *10; *IMAX*, 283 F.R.D. at 192.  Plans

of allocation, however, need not be tailored to fit each and every class member with "mathematical

precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 133 (S.D.N.Y.), *aff'd*, 117 F.3d

721 (2d Cir. 1997).  In determining whether a plan of allocation is fair and reasonable, courts give

weight to the opinion of experienced counsel.  *See Yang v. Focus Media Holding Ltd.,* No. 11 Civ.

9051 (CM) (GWG), 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014); *see also In re Giant*

*Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether

a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA*

*Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same).

The details of the Plan of Allocation are set forth in the Joint Declaration at ¶¶ 67-75, which

are respectfully incorporated herein by reference.  The Plan of Allocation was developed with the

assistance of Lead Plaintiffs' damages expert, and provides for the equitable distribution of the net

proceeds of the Settlements to Settlement Class Members who submit Claim Forms that are

approved for payment by the Court.  Under the Plan of Allocation, the Net Settlement Funds

obtained through the Settlements will be divided into three funds based on: (i) the specific MF

Global Securities that were the subject of the claims settled against each group of settling

defendants; and (ii) whether the claims against those defendants were asserted under either the

Securities Act or the Exchange Act.  Settlement Class Members who submit valid Claim Forms

will be eligible to receive a *pro rata* share of one or more of these funds based on the specific MF

Global Securities they purchased during the Settlement Class Period and the calculated amount of

their claims.

Although some Settlement Class Members may benefit more from the Settlements than

others, this is fair and reasonable, as there is no rule that a settlement benefit all class members

equally.  *See Veeco*, 2007 WL 4115809, at *13; *Global Crossing*, 225 F.R.D. at 462.  Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing and types of securities purchased.  *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001); *Global Crossing*, 225 F.R.D. at 462 ("[a] reasonable plan may consider the relative strength and values of different categories of claims."); *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *7, *23 (S.D.N.Y. Nov. 12, 2004) (approving Plan of Allocation that differentiated between Securities Act and Exchange Act claims, and on the basis of the types of securities and the timing of purchases); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 351 (S.D.N.Y. 2005) (same).  Otherwise, certain class members may receive an inequitable windfall, to the detriment of others.  *See PaineWebber*, 171 F.R.D. at 133.

Co-Lead Counsel believe that the Plan of Allocation is fair and reasonable and respectfully submit that it should be approved by the Court.  This conclusion is further supported by the fact that not a single objection to the Plan of Allocation has yet been filed.  *See Veeco*, 2007 WL 4115809, at *14; *Maley*, 186 F. Supp. 2d at 367.

**III.   THE PWC AND INDIVIDUAL DEFENDANT
SETTLEMENT CLASSES SHOULD BE FINALLY CERTIFIED**

On April 20, 2015, the Court certified the PwC Settlement Class for settlement purposes, and on July 7, 2015, the Court certified the Individual Defendant Settlement Class for settlement purposes.  ECF Nos. 902, 975.   In each case, the Court appointed Lead Plaintiffs as class representatives, and appointed Co-Lead Counsel as class counsel.  *Id.*  Nothing has changed to alter the propriety of certification for settlement purposes and certification of the PwC and Individual Defendant Settlement Classes is appropriate for all of the reasons stated in Lead Plaintiffs' earlier briefing (ECF No. 900 at 11-19; ECF No. 970 at 15-23), which is incorporated

herein by reference.  The PwC and Individual Defendant Settlement Classes should, therefore, be finally certified.

## IV.   NOTICE TO THE SETTLEMENT CLASSES SATISFIED ALL THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The dissemination of the PwC/Individual Defendant Notice to members of the Settlement Classes satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).  The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114.

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Classes satisfied these standards.  The Notice includes the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the PwC and Individual Defendant Settlement Classes; (iii) a description of the basic terms of the Current Settlements, including the amount of each of them and the releases to be given; (iv) an explanation of the reasons why the settling parties are proposing the Current Settlements; (v) a description of Settlement Class Members' right to opt-out of the PwC and Individual Defendant Settlement Classes or to object to the Current Settlements; and (vi) notice of the binding effect of a judgment on Settlement Class Members.

As noted above, in accordance with the Preliminary Approval Orders, through October 8, 2015, GCG has mailed 77,965 copies of the Claim Packet by first-class mail to potential members

of the Settlement Classes and nominees.  *See* Fraga Decl. ¶ 7.  In addition, GCG caused the PwC/Individual Defendant Summary Notice to be published once each in the national edition of the *Wall Street Journal* and *Investor's Business Daily* and transmitted over the *PR Newswire* on August 18, 2015.  Fraga Decl. ¶ 8.  GCG also updated the previously established website for the Action, www.MFGlobalSecuritiesClassAction.com, to provide potential members of the Settlement Classes with information concerning the PwC and Individual Defendant Settlements and the applicable deadlines and access to downloadable copies of the Notice, the Plan of Allocation, and the Claim Form, as well as the Stipulations and Preliminary Approval Orders for each of the Settlements.  *See* Fraga Decl. ¶ 10.  Copies of the Notice, the Plan of Allocation, and the Claim Form were also made available on BLBG's website.  Joint Decl. ¶ 65.

This combination of individual first-class mail to all members of the Settlement Classes who could be identified with reasonable effort, supplemented by notice in widely-circulated publications, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Advanced Battery Techs.*, 298 F.R.D. at 182-83; *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-*13 (S.D.N.Y. Dec. 23, 2009).

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the PwC and Individual Defendant Settlements and the proposed Plan of Allocation.

Dated:  October 9, 2015
           New York, New York

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Hannah G. Ross
Jai Chandrasekhar
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

         -and-

**BLEICHMAR FONTI
     TOUNTAS & AULD LLP**
Javier Bleichmar
Dominic J. Auld
Cynthia Hanawalt
7 Times Square, 27th Floor
New York, New York 10036
Telephone:  (212) 789-1340
Facsimile:  (212) 205-3960

***Co-Lead Counsel for Lead Plaintiffs
and the Settlement Classes***

#931510

26