# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: 212.326.3939 • FACSIMILE: 212.755.7306

DIRECT NUMBER: (212) 326-3415
JRUEWITTSTEIN@JONESDAY.COM

November 9, 2015

VIA FASCIMILE AND HAND DELIVERY

The Honorable Victor Marrero
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *Deangelis v. Corzine;*
              *In re MF Global Holdings Ltd. Securities Litigation*
              Consolidated Under Case Number 11-cv-07866-VM

Dear Judge Marrero,

    Jones Day represents Nader Tavakoli, as Trustee of the Litigation Trust (the "Litigation Trustee") in the consolidated MDL proceedings, and also represents MF Global Holdings Ltd., on behalf of itself and its affiliates[1] (the "Plan Administrator;" collectively with the Litigation Trustee, "Objectors").

    As the Court is aware, on October 23, 2015, the Objectors filed an *Objection And Reservation Of Rights* [the "Objection;" MDL Docket No. 1006] with respect to the *Stipulation And Agreement Of Settlement With Individual Defendants* [MDL Docket No. 969 Exhibit 1] (the "Securities Settlement") currently pending final approval in this Court scheduled for hearing on November 20, 2015. At the request of the parties, the Court has scheduled a telephonic status conference for November 9, 2015, at 3:00 p.m. Eastern time.

    Though the Plan Administrator and Litigation Trustee object to the final approval of the Securities Settlement and the associated Plan of Allocation, they seek specific, limited relief: (i) a temporary delay in the Effective Date of the Securities Settlement to prevent $25 million in insurance proceeds available only to settle claims against the Director defendants in the

---

[1] Affiliates include MF Global Assigned Assets LLC, as assignee under a July 27, 2015 Sale and Assumption Agreement, as pertinent here with respect to claims the Net Equity Claims asserted in the Commodities Customers Class Action pending in the MDL [*see* MDL Docket No. 996], as to which the Plan Administrator has stepped into MFGI's shoes pursuant to a series of assignments approved by the Bankruptcy Court and this Court.

JONES DAY

The Honorable Victor Marrero
November 9, 2015
Page 2

Securities Action from being eliminated entirely, and (ii) the insertion of a provision into the Securities Settlement allowing for unclaimed funds from the Individual Defendants' settlement to be made available to satisfy other Estate-related claims in the MDL as opposed to securities claims against other defendants.[2] This relief is necessary to prevent an immediate and irreversible loss of assets that would otherwise be available to satisfy Estate-related claims with no corresponding benefit to the Plaintiff Class in this Securities Settlement or to any of the defendants.

The Plan Administrator and Litigation Trustee believe that this loss of assets could be prevented without undue burden on any settling party through a relatively straightforward proposal, explained more fully below.

Without waiving any rights to more fully brief the relevant issues, the Plan Administrator and Litigation Trustee submit this letter to inform the Court of the basis for their objection and request for limited relief as to the Securities Settlement, and to respond in part to certain issues raised in the Letter of Lead Plaintiffs and associated Reply Memorandum of Law delivered to the Court on November 6, 2015 under seal (the "Nov. 6 Letter") (similar papers were filed this morning by the Director defendants).

Before getting to the substance of the Objection, the Plan Administrator and Litigation Trustee note that the disclosure of discussions subject to mediation privilege in the Nov. 6 Letter and the Directors' submission is improper and not probative of the issues here, and the papers should be withdrawn and re-filed without such material. Naturally we have a different perspective on what occurred in mediation which we will not delve into here, except to note that this is why it is so irregular to present this kind of material to the Court (and Lead Plaintiffs and the Director defendants by definition only have a partial view into what discussions occurred at the time and subsequent to those sessions). More importantly, that history is irrelevant to the issues raised by the proposed Securities Settlement and the Objection. It is not Objectors' position that the settlement is an improper attempt of the Plaintiff Class to gain an unfair advantage as to certain insurance proceeds. On the contrary, our concern is solely with the timing and funding sources, which could have been negotiated in a way to prevent the harm to the Estates, and with insurance proceeds that will be preserved with no impact on the class. Essentially, all the Objectors seek here is to prevent a windfall to insurers and harm to the Estates (and to the defendants not named in the Securities Actions), who are losing access unnecessarily to $25 million in Side ABC D&O policy coverage that should be preserved for the defense and settlement of claims against the Officer Defendants.

---

[2] Since the Objection was filed, certain defendants have withdrawn their indemnification claims against the bankruptcy estate. [See Chapter 11 Docket No. 2154 at 5], leaving only the two issues identified above.

**JONES DAY**

The Honorable Victor Marrero
November 9, 2015
Page 3

### 1. Specific Relief Sought

The bankruptcy court has repeatedly confirmed that the D&O insurance policies are property of the bankruptcy estate. *In re MF Global Holdings Ltd.*, 515 B.R. 193, 202 (Bankr. S.D.N.Y. 2014) ("As this Court explained in its 2012 Opinion, 'it is well-settled that a debtor's liability insurance is considered property of the estate.'") (quoting *In re MF Global Holdings*, 469 B.R. 17, 190); *see also In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (distinguishing ownership of proceeds and ownership of a policy, and noting that where policies were property of the estate, "this empowers the bankruptcy court to prevent their cancellation, for example.").

At the time the Objection and Adversary Proceeding were filed, certain D&O proceeds were also property of the bankruptcy estate. Consequently the Plan Administrator and Litigation Trustee originally sought relief in the bankruptcy court to protect those assets (and Judge Glenn has set a Status Conference for this Thursday and a hearing for next Monday, November 16, 2015 with respect to the relief sought there).

At a hearing on October 26, 2015, Bankruptcy Judge Glenn suggested for the Litigation Trustee and Plan Administrator to work with the parties to the settlement to "go to Judge Marrero with a united front and proposal that would permit him to go forward with this settlement hearing on November 20th" and "permit the claims process to go forward." *See* Oct. 26 Tr. at 33. Judge Glenn suggested that if the parties could agree to a "conditional approval" of the Securities Settlement, the Estates' interests could be preserved while the claims process for the Securities Settlement would not be delayed.

Judge Glenn's suggestion is sensible. The Litigation Trustee and Plan Administrator do not intend to undo the Securities Settlement, nor do they claim superior rights to the settlement fund given that it is funded out of D&O proceeds that are not property of the estate. They simply ask to have the Court delay the Effective Date of the Securities Settlement such that the timing does not result in releases that would preclude tapping different funds, which could then be substituted for the funds currently in escrow. The Securities Settlement, for reasons that are unclear but which benefitted only the insurers, purported to lock in which D&O funds would be used for the settlement *at the time the settlement was entered*, instead of within a certain number of days of the final approval or when the funds would be needed after claims have been submitted. Even though competing demands have been or could be made against the Side ABC and Side A excess policies prior to the Securities Settlement going effective, the Securities Settlement had no reallocation mechanism that could require the Directors' excess policy to have to contribute if the Side ABC funds were needed for defense costs or other settlements for the non-Director defendants. If this Settlement is permitted to go final in its current form, this is

JONES DAY

The Honorable Victor Marrero
November 9, 2015
Page 4

almost certain to result in $25 million of D&O proceeds being lost from policies that are estate property with the only party benefitting being the top level D&O insurers.

Accordingly, the Litigation Trustee and Plan Administrator have reviewed the proposed Securities Settlement and proposed Plan of Allocation to determine practically how these issues could be resolved without undue prejudice to the settling parties. We are preparing a suggested form of Final Judgment (a "Conditional Final Approval"), and are prepared to work with the parties to arrive at a form that will hopefully address the concerns raised by all parties.

For the Conditional Final Approval, the Litigation Trustee and Plan Administrator do not intend to derail or rewrite the Securities Settlement. On the contrary, the Conditional Final Approval would propose for the Court to approve all aspects of the Securities Settlement that do not affect the Litigation Trustee or Plan Administrator, merely withholding making a finding under Rule 54(b) that would permit final judgment to be entered or approving any releases or source of funding provisions until the Final Judgment.

Nor do the Litigation Trustee and Plan Administrator ask the Court to do anything it lacks power to do. The Securities Settlement's effectiveness is contingent on final approval of the Court, and so withholding final approval is well within the Court's powers when confronting a proposed settlement. Furthermore, the settlement fund is under the direct control of the Court, pursuant to the Court's own Preliminary Settlement Order:

> The contents of the Individual Defendant Settlement Fund held by Citibank, N.A. (which the Court approves as the Escrow Agent) shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Individual Defendant Stipulation and/or further order(s) of the Court.

[MDL Docket no. 975, at 16].

Courts in this circuit have granted conditional or partial approval of class settlements before.[3] This Court recently withheld final approval of a class settlement conditioned on the resolution of a funding issue:

---

[3] *See, e.g., Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 148 (N.D.N.Y. 2005) ("ORDERED, that in the event of fulfillment by Mellon Trust of the conditions noted above, the proposed settlement will be APPROVED and the bar order, as revised, will be issued by the court; . . . ."); *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 763-64 (E.D.N.Y. 1984) *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987) ("Conditional approval of the settlement now will permit work to begin on the development of a distribution plan unaccompanied by the doubts and uncertainties that would exist if the settlement between the plaintiffs and defendant chemical companies were not tentatively ratified by this court.").

JONES DAY

The Honorable Victor Marrero
November 9, 2015
Page 5

> Now I am going to grant the approval, but I am going to make the approval contingent upon the resolution of the outstanding issues that remain with regards to the 30 million. In other words, the settlement is approved, but the effective date of it will be upon submission by the parties of—a filing by the parties of notice indicating that those remaining issues concerning the 30 million have been resolved. So if that could be done in two days, then the approval will be going into effect in two days. If it take two months, it will take two months. If it takes three years, by that time we'll see whether or not those funds are still there.

Hearing Tr. at 91, *Anwar v. Fairfield Greenwich Group* (S.D.N.Y. May 15, 2013) (final approval hearing for a class settlement).

### 2. Additional Grounds for Relief

Without waiving the right to more fully brief these issues, and without prejudice to additional arguments that may be raised in support of their position, the Litigation Trustee and Plan Administrator believe it beneficial to make certain points in support of relief in this Court, separate and apart from those points raised before the bankruptcy court, in the hopes of focusing on the legal and relevant factual issues that are in actual dispute.

First, the Litigation Trustee and Plan Administrator have standing to object to the settlement in this Court because their rights are affected by it. "In a class action settlement, the normal focus is on the fairness, reasonableness and adequacy of the settlement to the plaintiff class. Where the rights of third parties are affected, however, their interests too must be considered." *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1025-26 (2d Cir. 1992) (citations omitted).

In this case, standing exists because the Securities Settlement will immediately and irreversibly extinguish the top $25 million of excess D&O insurance policies, policies which have been ruled to be property of the bankruptcy estate, and policies which were purchased and for which premiums were paid specifically to provide funding in the sort of catastrophic scenario that has come to pass here. Only the independent directors can draw on the top $25 million layer of coverage. Once the independent directors are released from claims in the securities action, no additional claims will remain pending against them in the MDL. Therefore, merely due to the timing of the finality of this settlement, $25 million in D&O insurance policies will be gone—policies which have been adjudicated to be property of the estate multiple times. This is not a strategic or tactical disadvantage against the defendants, nor is it a hypothetical problem given the enormous claims of damages still pending in the MDL.

JONES DAY

The Honorable Victor Marrero
November 9, 2015
Page 6

      Second, the Litigation Trustee and Plan Administrator are parties in the MDL, and have standing to object to the settlement proponents' request under Rule 54(b) of the Federal Rules of Civil Procedure that the Court direct entry of final judgment of fewer than all claims therein. Rule 54(b) permits the Court to do so "only if the court expressly determines that there is no just reason for delay." "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in setting such as this, a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

      Here, preventing $25 million in excess insurance coverage from being thrown away to no benefit of any settling party provides just reason to delay finality. So long as the delay is temporary and does not unduly delay ultimate distribution of Securities Settlement proceeds to the settlement class, the equities favor conditionally approving the settlement and deferring final judgment to preserve access to the top level policies to partially fund the Securities Settlement.

### 3. Conclusion

      As this letter is intended merely as an aid to the Court and all parties at the status conference scheduled for November 9, 2015, the Litigation Trustee and Plan Administrator request the right to address these issues more fully in writing.

                                        Respectfully submitted,

                                        Jane Rue Wittstein

cc:    Bruce Bennett (bbennett@jonesday.com)
       Counsel of Record in the MDL

NAI-1500633648v2