DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 11/25/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH DEANGELIS, et al.,

Plaintiffs,

- against -

JON S. CORZINE, et al.,

Defendants.

11 Civ. 7866

IN RE MF GLOBAL HOLDINGS LTD. INVESTMENT LITIGATION

12 MD 2338

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

## I. BACKGROUND

On July 7, 2015, Lead Plaintiffs the Virginia Retirement System and Her Majesty the Queen in Right of Alberta ("Lead Plaintiffs"), on behalf of a class of former shareholders of MF Global Holdings Limited ("MF Global"), filed a Motion for Preliminary Approval of Proposed Settlement with Defendants David P. Bolger, Eileen S. Fusco, David Gelber, Martin J.G. Glynn, Edward L. Goldberg, David I. Schamis, Robert S. Sloan (collectively, the "Independent Directors"), Jon S. Corzine, Henri J. Steenkamp, and J. Randy MacDonald (collectively, the "Officer Defendants" and, together with the Independent Directors, the "Individual Defendants"). (Dkt. No. 969.)

The proposed settlement ("Proposed Settlement") relates to the consolidated class action (the "Securities Action") brought by Lead Plaintiffs on behalf of investors who sustained losses on their investments during and after MF Global's October 31, 2011 collapse (the "Securities Class"). In their Motion for Preliminary Approval, the Lead Plaintiffs stated that they had reached an agreement as to settlement terms with the Individual Defendants. The Proposed Settlement incorporated the parties' Stipulation and Agreement of Settlement (Dkt. No. 969, Ex. 1)("Settlement Stipulation") which would resolve all claims in the Securities Action against the Individual Defendants in exchange for $64.5 million in cash. By Order dated July 7, 2015, the Court preliminarily approved the Proposed Settlement as fair, reasonable, and adequate, and in the best interests of the Lead Plaintiffs and the Proposed Settlement Class. (Dkt. No. 975 at 4.)

The Court's preliminary approval of the Proposed Settlement with the Individual Defendants followed its preliminary approval of Lead Plaintiffs' proposed settlement with Defendant PricewaterhouseCoopers LLP ("PwC") on April 20, 2015, which would resolve all Securities Action claims against PwC for $65 million in cash. (Dkt. Nos. 899, 902.) The Court preliminarily approved both settlement agreements

subject to further consideration at a final settlement hearing, which the Court scheduled for November 20, 2015. (Dkt. Nos. 902, 975.)

By motion dated October 9, 2015, Lead Plaintiffs requested final approval of the Proposed Settlement with the Individual Defendants and the Proposed Settlement with PwC. (Dkt. No. 998.) Counsel for Lead Plaintiffs simultaneously moved for an award of attorneys' fees and reimbursement of litigation expenses. (Dkt. No. 1000.)

On October 22, 2015, MF Global Holdings Ltd. as Plan Administrator under the Chapter 11 Joint Plan of Liquidation and Trustee of the MF Global Litigation Trust Nader Tavakoli (collectively, "Plan Administrator") filed an objection to the Proposed Settlement with the Individual Defendants.[1] ("Plan Administrator's Objection") (Dkt. No. 1006.) The Plan Administrator's Objection raised opposition to the Proposed Settlement's funding and release mechanisms, which the Plan Administrator argued would cause the "immediate and irremediable" loss of a top layer of $25 million of Directors

[1] The Plan Administrator also filed an Objection and Reservation of Rights as to the Proposed Settlement with PwC. (See Objection and Reservation of Rights with Respect to Final Approval of Sec. Pl.'s Stipulation and Agreement of Settlement with Def. PricewaterhouseCoopers LLP, Oct. 22, 2015 , Dkt. No. 1005). That objection purported only to state for the record, "out of an abundance of caution," that the releases contained in the Proposed Settlement with PwC do not release any claims brought by the Plan Administrator in its separate action against PwC, MF Global Holdings, Ltd., as Plan Administrator v. PricewaterhouseCoopers LLP, No. 14-cv-2197. (Dkt. No. 1005 at 2.)

and Officers ("D&O") insurance proceeds reserved solely for independent directors, while funding the settlement using lower layers of insurance proceeds that could otherwise be available for recoveries by creditors of the bankruptcy estate. (Dkt. No. 1006 at n.2.)[2]

By letter dated November 9, 2015, the Plan Administrator clarified that it sought relief from the Court in the form of a contingent approval of the Proposed Settlement delaying the effective date of the Proposed Settlement, at which time the releases of claims detailed in the Settlement Stipulation would become final and the insurance proceeds funding the settlement would leave escrow. The Plan Administrator argued that such a delay would allow estate creditors to access excess D&O proceeds lower down in the insurance policy 'tower' before the Proposed Settlement became final, leaving the top $25 million of independent director-only excess coverage available to fund the settlement with the Independent Directors. (Dkt. No. 1009 at 3.)

Lead Plaintiffs replied to the objection. (Dkt. No. 1010.) Lead Plaintiffs argued that: 1) the Plan Administrator lacks standing because it is not a party to the Proposed

[2] The Plan Administrator simultaneously commenced an adversary proceeding in the Chapter 11 case pending in the U.S. Bankruptcy Court in the Southern District of New York, seeking to enjoin final approval the Proposed Settlement. See MF Global Holdings Ltd. v. Corzine et al., Adv. Proc. No. 15-01362 (Bankr. S.D.N.Y. Oct. 19, 2015).

Settlement; 2) as to the parties to the Proposed Settlement, the terms are fair, reasonable, and adequate; 3) the Proposed Settlement has already been fully funded by way of binding contracts, which the Court cannot rewrite; 4) the Plan Administrator has to date failed to achieve the global settlement it contends would be possible given a slightly delayed Effective Date; and 5) due to the structure of the insurance tower, the final $25 million layer of D&O insurance will not be reached "unless the securities settlement itself is voided at great harm to the class." (Dkt. No. 1010 at 2-5.)

In response, the Plan Administrator filed a further Supplemental Objection to the Individual Defendant Settlement on November 18, 2015 ("Supplemental Objection"). It argued that its contract rights and other interests would be adversely impacted by the settlement, giving it standing to object. (Dkt. No. 1015.) The Plan Administrator also reiterated that it seeks a "pause, not a reset" of the Proposed Settlement and argues that the loss of $25 million in insurance proceeds would constitute a "just reason for delay" under Rule 54(b) of the Federal Rules of Civil Procedure ("Rule 54(b)"). The Independent Director Defendants responded by letter dated November 19, 2015 to address matters raised in the Plan Administrator's Supplemental Objection,

including the Plan Administrator's standing to object to final approval of the Proposed Settlement. (Dkt. No. 1022.) Subsequently the Plan Administrator replied by letter to the Court on November 19, 2015, renewing its request for conditional approval of the Proposed Settlement to "give parties a short window" in which to negotiate a global settlement that would preserve $25 million for the benefit of creditors of the MF Global estates (Dkt. No. 1024 at 3.)

On November 20, 2015 the Court held a fairness hearing as to the Proposed Settlement. At the hearing, the Lead Plaintiffs and Individual Defendants argued for final approval of the settlement as fair, adequate, and reasonable to the settling parties under Rule 23(e)(2)of the Federal Rules of Civil Procedure. The Plan Administrator objected to final approval of the Proposed Settlement and continued to argue for conditional approval of the settlement. The Court reserved ruling on the final approval until November 25, 2015 and ordered the Plan Administrator and the parties to the settlement to inform the Court of any progress toward a global settlement agreement prior to that date. (Dkt. Minute Entry for Nov. 20, 2015.) As of November 25, the Court has not been informed of any such progress toward resolution.

## II. LEGAL STANDARD

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (quoting Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)). Courts look to both the settlement's terms and the negotiating process leading to settlement in determining the settlement's fairness. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116 (internal quotation marks omitted). Courts must be mindful of a "strong judicial policy in favor of settlements, particularly in the class action context." In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998).

In examining the fairness, adequacy, and reasonableness of a class settlement, courts in the Second Circuit examine the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

> withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possibly recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

## III. DISCUSSION

Under the terms of the Proposed Settlement, the Lead Plaintiffs, on behalf of themselves and the Securities Class, agree to release their potential claims against the Individual Defendants in exchange for $64.5 million to be allocated among the Securities Class according to the Plan of Allocation. (Dkt. No. 969, Ex. 1.)

The Plan Administrator states in its objection that it does not object to the terms of the Proposed Settlement and has repeated that it does not "intend to undo the Securities Settlement." (Dkt. No. 1009 at 3.) The Plan Administrator asserts that it has only a limited objection to the sources and timing of the funding provided for the Proposed Settlement. Those sources of funding were secured in an agreement executed between Lead Plaintiffs and various insurers who issued D&O insurance policies designed to cover claims against MF Global officers and directors. Specifically, the Plan Administrator objects to the

expenditure of $25 million in insurance proceeds from lower levels of the insurance 'tower' to fund the Proposed Settlement while excess policies of $25 million designated for coverage exclusively of litigation against Independent Directors remain unused.

The Plan Administrator argues that funding the settlement with the $25 million from the D&O policies would "waste" the $25 million in independent director-only policies. Such wasting of insurance proceeds, it argues, would constitute a "just reason for delay" under Rule 54(b). (Dkt. No. 1015 at 12.) Instead of $25 million of the D&O policies being used to fund the Proposed Settlement, the Plan Administrator contends, $25 million should be carved out of escrow pending a global settlement that would exhaust all lower layers of the insurance tower, permitting claims by the MF Global Estate to access layers of the insurance tower that would otherwise have been used in the Proposed Settlement. (Dkt. No. 1025 at 17.)

Under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") "a class member may object to the [settlement] proposal if it requires court approval . . . ." Fed. R. Civ. P. 23(e)(4). Because the Plan Administrator is not a party to the Proposed Settlement, it must demonstrate that its legal rights will be affected by the Proposed Settlement in order

to have standing under Rule 23 to delay the Court's final approval. It must further show that the Court has the authority to modify the Settlement Stipulation agreed to by the Lead Plaintiffs and Individual Defendants.

**A. THE PLAN ADMINISTRATOR'S STANDING TO OBJECT**

For a third party to object to a settlement under Rule 23, the third party must "demonstrate that it will sustain some formal legal prejudice as a result of the settlement." Bhatia v. Piedrahita, 756 F.3d 211, 218 (2d Cir. 2014); see also Zupnick v. Fogel, 989 F.2d 93, 98 (2d Cir. 1993)(exception to the general rule that non-settling defendants lack standing "permit[s] a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement").

The Plan Administrator is not a party to the Proposed Settlement. Regardless, it asserts that standing exists "because the [Proposed Settlement] will immediately and irreversibly extinguish the top $25 million of excess D&O insurance policies, policies which have been ruled to be property of the bankruptcy estate." (Dkt. No. 1009 at 5.) The Plan Administrator asserts it has rights "directly and adversely affected by the Securities Stipulation" because once the Court approves the Proposed Settlement, insurance

proceeds that could be used to fund creditor recoveries will be "extinguished."(Dkt. No. 1024 at 1.) Lead Plaintiffs and Individual Defendants reply that the D&O insurance proceeds funding the Proposed Settlement are not property of the MF Global estate, and therefore the loss of those proceeds cannot form the basis of an objection to settlement. (Dkt. Nos. 1010, 1022.)

The Plan Administrator is incorrect that the MF Global Estate holds any rights to the proceeds of the D&O insurance policies used to fund the Proposed Settlement. Although a debtor's liability insurance is considered property of the estate, see In re MF Glob. Holdings Ltd., 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012), when a policy covers the directors and officers exclusively, "courts have generally held that the proceeds are not property of the estate." In re MF Glob. Holdings Ltd., 515 B.R. 193, 202-03 (Bankr. S.D.N.Y. 2014)(citation omitted). Here, all insurance policies in the 'tower' used to fund the Proposed Settlement are D&O policies, the proceeds of which are available to MF Global officers, directors, and employees to fund litigation expenses, pay defense costs, and resolve claims. (Dkt. No. 1022 at 3.) Although certain of the policies are available to reimburse MF Global for indemnification claims, all indemnification

claims against the estate have by this time been withdrawn. (Dkt. No. 1010.)

Contrary to the Plan Administrator's assertions, the Bankruptcy Court has ruled that the D&O Proceeds used to fund the Proposed Settlement are not property of the MF Global estate, apart from $13.06 million that was set apart for indemnification claims against the estates. See In re MF Global Holdings Ltd., 515 B.R. 193, 204 (Bankr. S.D.N.Y. 2014)("[I]t appears that the D&O proceeds are not property of the MFGI or MFGH Debtors' estates, except for the $13.06 million related to [potential indemnification claims against the MF Global estates].") The $13.06 million that was set aside for indemnification was never implicated in the Proposed Settlement, as the Plan Administrator has conceded. See MF Global Holdings Ltd. v. Corzine et al., Adv. Proc. No. 15-01362 (Bankr. S.D.N.Y. Oct. 19, 2015), First Amended Adversary Complaint at 15. In any circumstance, the $25 million of independent director-only insurance proceeds have never been property of the MF Global estate, and the Plan Administrator has no right to the proceeds of that policy. The Plan Administrator's assertion that final approval of the Proposed Settlement erases a potential source of recovery for estate claimants does not change the fact that "MFGI and MFGH

do not have a property interest in the D&O proceeds." In re MF Glob. Holdings Ltd., 515 B.R. at 207.

The Plan Administrator will sustain no formal legal prejudice as a result of final approval of the Proposed Settlement, because it does not have a legal interest in the D&O insurance proceeds and therefore will lose no "legal claim . . . cause of action . . . [or] contract rights" if the settlement, funded by the agreed-upon insurance proceeds, is finalized. See Anwar v. Fairfield Greenwich Ltd., No. 09-cv-0118, 2015 WL 5547233, at *2 (S.D.N.Y. Sept. 15, 2015)(citing Bhatia, 756 F.3d at 218). Accordingly, the Court finds that the Plan Administrator lacks standing to challenge Lead Plaintiffs' settlement with the Individual Defendants.

**B. THE COURT'S AUTHORITY TO MODIFY THE SETTLEMENT AGREEMENT**

The Plan Administrator asks the Court to issue an order that would modify the "timing and funding sources" of the Proposed Settlement. (Dkt. No. 1009 at 2.) It frames the request as a narrow one. (See Dkt. No. 1015 at 10.) The Individual Defendants and Lead Plaintiffs respond that an inquiry into the funding sources of an agreed-upon settlement, and imposition of a $25 million carve-out to the fully funded settlement, are outside the proper scope of court

review under Rule 23. They argue that altering the funding sources and delaying settlement releases would improperly modify substantive terms of agreement. (Dkt. No. 1022 at 4; Pl.'s Reply Mem. at 17.)

The Second Circuit has held that a district court may not "dictate the terms of a class settlement; he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)(quoting Plummer v. Chem. Bank, 668 F.2d 654, 659 (2d Cir. 1982)).

The Plan Administrator cites the Court's decision in Anwar v. Fairfield Greenwich Group, et al. approving a final settlement contingent on "outstanding issues" regarding an agreed-upon $30 million portion of the settlement. Hr'g Tr., Anwar v. Fairfield Greenwich Group, et al., No. 09-cv-118 (S.D.N.Y. May 5, 2013)(Dkt. No. 1142 at 91.) The situation in the Anwar settlement is readily distinguished, however. In that case, the parties to the settlement had agreed to deposit $30 million in escrow for distribution to the settlement class after the resolution of certain claims; the Court neither changed the agreed-upon terms of the settlement nor modified the source of the funding. See id. at 9-10.

When the Individual Defendants and the Lead Plaintiffs signed the Settlement Stipulation, they contracted to terms to the settlement which the Court is not authorized now to modify. The Court may approve or disapprove the settlement based on its fairness, reasonableness, and adequacy to the settling parties, but it may not add or subtract terms -- here, a judicially imposed $25 escrow carve-out -- to the terms agreed upon by Lead Plaintiffs and Individual Defendants in the Settlement Stipulation.

**C. FAIRNESS OF THE SETTLEMENT AGREEMENT UNDER RULE 23**

The Proposed Settlement now before the Court is fair, reasonable and adequate as to the settling parties, as required by Rule 23. After notice to more than 75,000 potential members of the Securities Class more than 90 days prior to the final approval hearing, as required by the Class Action Fairness Act, 28 U.S.C. Section 1715(d), not a single member of the class objected to the proposed settlements, Plan of Allocation or request for attorneys' fees and expenses. (Dkt. No. 1010 at 1.) The Proposed Settlement resolves complex litigation lasting more than four years with an agreement that both parties find acceptable. The objections of the Plan Administrator would further delay final approval of the Proposed Settlement, creating

significant risk to the Lead Plaintiffs and Individual Defendants that insurance proceeds will become unavailable or one of the settling parties will seek to terminate the Proposed Settlement.

The Court is persuaded, therefore, that there exists no "just reason for delay" in entering final judgment as to the Securities Class and Individual Defendants under Rule 54(b), and that final approval of the Proposed Settlement should be granted under Rule 23.

**ORDER**

Accordingly, it is hereby

**ORDERED** that the Objection and Reservation of Rights with Respect to Final Approval of Securities Plaintiffs' Stipulation and Agreement of Settlement with Individual Defendants (Dkt. No. 1006) of MF Global Holdings Limited as Plan Administrator and Nader Tavakoli as Trustee of the Litigation Trust (collectively, the "Plan Administrator") is **DENIED**; and it is further

**ORDERED** that Lead Plaintiffs the Virginia Retirement System and Her Majesty The Queen in Right of Alberta's Motion for Final Approval of Class Action Settlements and Plan of Allocation (Dkt. No. 998) is **GRANTED**; and it is further

**ORDERED** that the Motion of Co-Lead Counsel Bernstein Litowitz Berger & Grossmann LLP and Bleichmar Fonti Tountas & Auld LLP for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses is **GRANTED**.

**SO ORDERED.**

Dated: NEW YORK, NEW YORK
25 November 2015

Victor Marrero
U.S.D.J.