**U.S. COMMODITY FUTURES TRADING COMMISSION**
140 Broadway, 19th Floor
New York, New York 10005
Telephone: (646) 746-9700
Facsimile: (646) 746-9940

Division of
Enforcement

**By Facsimile**

December 16, 2015

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/15

Re:   *Deangelis v. Corzine, et al.*, No. 11-cv-07866-VM (USCFTC)

Dear Judge Marrero:

We represent the U.S. Commodity Futures Trading Commission (the "Commission"), Plaintiff in the above-styled matter. Pursuant to Paragraph II.A of the Court's Individual Practices, the Commission requests a pre-motion conference regarding its anticipated motion for summary judgment against Defendants Jon S. Corzine ("Corzine") and Edith O'Brien ("O'Brien") (collectively, "Defendants"). As set forth below, the Commission will show through its motion for summary judgment that there is no genuine dispute as to any material fact; the evidence supporting the Commission's claims against Corzine and O'Brien are so compelling that no reasonable jury could return a verdict for Defendants.

I.   **Corzine Is Liable for MF Global's Violations as a Controlling Person and for His Failure to Supervise Diligently**

Defendant Corzine is liable as a controlling person, pursuant to Section 13(b) of the Act, for the unlawful use by MF Global Inc. ("MF Global") of customer segregated funds.[1] The undisputed facts establish that MF Global was undersegregated on Thursday, October 27 and Friday, October 28, 2011. By the end of business on Friday, MF Global had unlawfully used nearly one billion dollars of customer segregated funds to support its own proprietary operations and those of its affiliates. Undisputed material facts reveal that Corzine failed to act in good faith to prevent these segregation violations and, further, knowingly induced the violations.

First, Corzine's own testimony demonstrates that he used his power to shape policies and make direct determinations regarding the use of funds in customer accounts to satisfy the firm's liquidity needs. Together with other internal supervisory and control issues concerning liquidity forecasting, regulatory reporting, and reliance on manual operations, Corzine knew that one policy—one that was specifically designed to protect customer funds—was ignored and/or

---

[1] To be liable as a controlling person, a defendant must (1) have general control over the operation of the principally liable entity and possess the power or ability to control the specific transactions or activities upon which the primary violation was predicated, and (2) either knowingly induce, directly or indirectly, the violative acts or fail to act in good faith. 7 U.S.C. § 13c(b); *CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482, 504 (S.D.N.Y. 2004) (ordering summary judgment). Lack of good faith exists where the controlling person failed to maintain a reasonably adequate system of internal supervision and control or failed to enforce the system with reasonable diligence. *See Monieson v. CFTC*, 996 F. 2d 852, 860 (7th Cir. 1993).

violated on multiple occasions. This demonstrates a lack of good faith that directly resulted in a loss of customer segregated funds.

Second, and alternatively, knowing inducement is satisfied here because, at the very least, Corzine had constructive knowledge of the core activities constituting MF Global's wrongdoing and, failing to take any corrective action or make any appropriate inquiries, allowed them to continue. *See JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995). On Friday morning, October 28, 2011, Corzine knew that the only unencumbered free cash available to MF Global was $82 million in a firm account, that the firm's banks were likely to make additional margin calls, and that the banks were not clearing MF Global's securities transactions in a timely manner. Corzine also knew that MF Global needed to pay an exchange margin call of between 175 and 200 million dollars and that extensive overdrafts at a key bank needed to be satisfied in order to conduct business on that day. Notwithstanding this information, Corzine, as he himself testified, directed Defendant O'Brien to satisfy the overdrafts and, after learning that the bank wanted confirmation that the funds used to satisfy the overdrafts were in compliance with CFTC customer segregation rules, he failed to take any action with regard to any prospective transfers from customer accounts. Corzine also knew that firm funds were kept in customer accounts, that those funds were used to support MF Global's operations, that the FCM was not in compliance with respect to customer funds as of close of business Thursday, and that there was no automated system in place to determine in real time the amount of firm funds in those customer accounts. These undisputed facts show that Corzine is responsible for the unlawful use of customer money, the only liquid source of funds immediately available above and beyond the $82 million kept in the firm account to satisfy the firm's demands.

The remaining control element of the Section 13(b) claim is indisputably satisfied. Corzine, as CEO, had general control over MF Global and his broad and strategic responsibilities included making hiring, firing, and investment decisions, influencing relevant firm policies, and monitoring firm liquidity. Accordingly, the CFTC is entitled to summary judgment against Corzine as a controlling person.

The CFTC is also entitled to summary judgment on its claim that Defendant Corzine failed to supervise diligently the officers, employees, and agents of MF Global, in violation of CFTC Regulation 166.3, 17 C.F.R. § 166.3.[2] The same undisputed facts that establish Corzine's liability as a controlling person also show Corzine's failure to establish and ensure adequate controls and systems with regard to liquidity management, liquidity forecasting, regulatory reporting, and compliance with firm policy regarding the use of customer funds. For example, Corzine was aware of and/or received audit reports and other internal reports and communications identifying control and policy related concerns in the aforementioned functions. These very functions were vital to the protection of customer segregated funds.

---

[2] A violation of Regulation 166.3 is demonstrated by showing either that the registrant's supervisory system was generally inadequate or that the registrant failed to perform its supervisory duties diligently. *Monieson*, 996 F.2d at 862; *CFTC v. Trinity Fin. Grp. Inc.*, 1997 WL 820970, at *29 (S.D. Fla. Sept. 29, 1997), *aff'd in relevant part sub nom. CFTC v. Sidoti*, 178 F.3d 1132 (11th Cir. 1999). Further, the lack of an adequate supervisory system can be established by showing that the registrant failed to develop proper procedures or controls for the detection of wrongdoing. *Trinity*, 1997 WL 820970, at *29.

## II. O'Brien Is Liable for Aiding and Abetting MF Global's Violations

The Commission is likewise entitled to summary judgment on its claim that Defendant O'Brien is liable under Section 13(a) of the Act for aiding and abetting MF Global's segregation violations.[3] The undisputed material facts establish that, although O'Brien knew on account of reports and other information provided to her that MF Global lacked sufficient excess funds in its segregated accounts to make the payments, she still directed, approved, and/or caused transfers from segregated accounts on October 27 and 28, 2011, totaling $974.5 million.

O'Brien's wrongful intent is established by her own voice in recorded telephone conversations and emails. On October 21, 2011, O'Brien admitted that she knew exactly how much excess she had in customer balances and what can "walk out the door on any given day."[4] Further, by her own admissions, O'Brien knew MF Global was in danger of a deficiency on October 27 – she referenced a potential "seg problem" more than once that day. On October 27, after one bank requested confirmation that a $325 million transfer from a customer segregated account was unencumbered and not required to be segregated, O'Brien stated that she had kept everyone off of her affirmative confirmation because she "didn't want to take anyone down with [her]." On October 29, 2011, O'Brien admitted on a recorded phone call that she wouldn't sign a confirmation that funds were lawfully transferred from a segregated account on October 28, 2011, because she had thought at the time she was asked to sign the confirmation that they were "underseg."

For the foregoing reasons, the Commission respectfully requests that the Court hold a pre-motion conference with respect to the Commission's motion for summary judgment and grant permission for the Commission to seek summary judgment.

Respectfully submitted,

K. Brent Tomer
(646) 746-9738
Janine Gargiulo
(646) 746-9730

Christopher J. Barber, Esq.
Williams, Montgomery & John
*Counsel for Edith O'Brien*

cc: Matthew L. Mazur, Esq.
Dechert LLP
*Counsel for Jon S. Corzine*

> Defendants named above are directed to respond by 12-22-15 by letter not to exceed three (3) pages, to the matter set forth above by plaintiff USCFTC.
>
> **SO ORDERED.**
> 12-16-15
> DATE    VICTOR MARRERO, U.S.D.J.

---

[3] In order to establish aiding and abetting liability, the Commission must prove that O'Brien "in some sort associate[d] [her]self with the venture, that [s]he participate[d] in it as in something that [s]he wishes to bring about, that [s]he [sought] by [her] action to make it succeed." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 183 (2d Cir. 2013) (quotation omitted); *see also In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 177-78 (S.D.N.Y. 2014) (noting that the Second Circuit's standard for aiding and abetting liability does not differ from the three-part test articulated by the Seventh and Third Circuits, which examines the knowledge, intent and action in furtherance of the primary violation).

[4] The facts referenced in this paragraph come directly from recorded telephone conversations between O'Brien and co-workers in New York and Chicago or from e-mails to which O'Brien was a party.

3