

**U.S. COMMODITY FUTURES TRADING COMMISSION**

140 Broadway, 19th Floor
New York, New York 10005
Telephone: (646) 746-9700
Facsimile: (646) 746-9940



December 23, 2015

CHAMBERS OF
JUDGE MARRERO

Division of Enforcement

**By Facsimile**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/4/16

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

　　Re:　*Deangelis v. Corzine, et al.*, No. 11-cv-07866-VM (USCFTC)

Dear Judge Marrero:

　　We represent the U.S. Commodity Futures Trading Commission (the "Commission" or ("CFTC"), Plaintiff in the above-styled matter. We write in response to Defendant Jon S. Corzine's ("Corzine") December 18, 2015 letter seeking a pre-motion conference on his proposed motion for summary judgment or alternatively, partial summary judgment. Corzine cannot prove that he is entitled to summary judgment or partial summary judgment, and his request to make such a motion should be denied. Indeed, the Commission previously requested permission to move for summary judgment on its claims against Corzine (and O'Brien) because the evidence is so compelling that no reasonable jury could return a verdict for Defendants.

　　***Corzine Is Liable as a Controlling Person.*** Corzine argues that he is not liable as a controlling person because he had no "culpable participation" in any of the 154 unlawful transfers from customer segregated funds. (Corzine Ltr. at 2.) What Corzine neglects is that liability as a controlling person[1] means that he either failed to act in good faith to prevent the segregation violations *or* knowingly induced the violations. *First*, as set forth in our letter dated December 16, 2015 more fully, Corzine failed to act in good faith. For example, Corzine knew that one policy regarding "firm excess"—one that was specifically designed to protect customer funds—was ignored and/or violated on multiple occasions. Even without analyzing the facts regarding his culpability for directing that the firm violate its own policies, this failure to enforce a system or control with reasonable diligence demonstrates a lack of good faith that directly resulted in a loss of customer segregated funds.

　　*Second*, and alternatively, knowing inducement is satisfied here because, at the very least, Corzine had constructive knowledge of the core activities constituting MF Global's wrongdoing

---

[1] Pursuant to Section 13(b) of the Act, to be liable as a controlling person, a defendant must (1) have general control over the operation of the principally liable entity and possess the power or ability to control the specific transactions or activities upon which the primary violation was predicated, and (2) either knowingly induce, directly or indirectly, the violative acts or fail to act in good faith. 7 U.S.C. § 13c(b); *CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482, 504 (S.D.N.Y. 2004) (ordering summary judgment). Lack of good faith exists where the controlling person failed to maintain a reasonably adequate system of internal supervision and control or failed to enforce the system with reasonable diligence. *See Monieson v. CFTC*, 996 F. 2d 852, 860 (7th Cir. 1993).

The Honorable Victor Marrero
Page 2 of 4

and allowed them to continue. *See JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995). For example, while knowing that the company only had $82 million of free cash at the start of the day October 28, 2011, Corzine directed O'Brien to satisfy an overdraft far in excess of that $82 million owed by MF Global UK. Yet when that bank's Chief Risk Officer informed Corzine that the overdraft was satisfied only due to an initial transferring of $200 million from a customer segregation account and sought written confirmation that the transfer complied with CFTC customer segregation rules, Corzine did not require any prospective restrictions on the transfers of customer funds. The undisputed facts will show that he called O'Brien and received from her merely an email with a screen shot showing one transfer from a non-segregated account. These undisputed facts show that Corzine is responsible for the unlawful use of customer money, which was the only liquid source of funds immediately available.

Corzine's attempt to pare down the number of transfers for which he is responsible from 154 to 15 (see Corzine Ltr. at 2) or alternatively, from 154 to 1 (for just the transfer that Corzine admits he had a part) must fail because Corzine is responsible for all the transfers. Control person liability does not require Corzine specifically to have knowingly participated in each of the unlawful transfers for him to be responsible for all of the transfers; rather it was his "power that matters, not whether he exercised it by actually participating in or benefitting from the illegal acts." *See In re FNTC*, 1994 WL 378010, at *11 (C.F.T.C. July 20, 1994). Here, Corzine had knowledge that proprietary funds were kept in customer accounts and that there was no automated system in place that enabled MF Global to know in real time the amount of excess in those accounts. Corzine's control over the customer accounts is evidenced by not only his position as CEO and his active involvement in managing firm liquidity which relied on these customer funds, but also by his knowledge that funds from these customer accounts were used for purposes other than the benefit of the customers or to protect against a deficiency in the segregated accounts. These facts support the control over the customer funds whether or not Corzine knew the exact purpose for which the funds being removed from the 4d accounts were being used. Indeed, Corzine brazenly tries to argue he should be absolved from the majority of the transfers which he characterizes as transfers to customers from the "wrong' type of account." (Corzine Ltr at 2.) But the failure to prevent money from coming from the wrong account is the paradigmatic failure "to maintain a reasonably adequate system of internal supervision and control." *Monieson*, 996 F.2d at 860. Moreover, Corzine knew of the violation of company policy regarding the protection of customer funds and the issues raised in the audit reports regarding liquidity concerns. Accordingly, it is the CFTC that is entitled to summary judgment against Corzine as a controlling person, not the reverse.

***Corzine Is Liable For His Failure to Supervise Diligently.*** Corzine's assertion that he supervised diligently the officers, employees, and agents of MF Global, is belied by evidence of an undisputed deficiency of almost $1 billion dollars from MF Global's customer segregated accounts. The same undisputed facts that establish Corzine's liability for acting with a lack of good faith as a controlling person also show Corzine's failure to establish and ensure adequate controls and systems with regard to liquidity management, liquidity forecasting, regulatory reporting, and compliance with firm policy regarding the use of customer funds. Corzine's actions, as described above, demonstrate that he was an active CEO who not only had the ability to supervise people like O'Brien, the employee he knew in Treasury that could satisfy firm needs with funds from 4d accounts, but in fact did so: for example, he personally directed her to satisfy the bank overdraft for MFGUK. *Cf. Monieson, supra.* Alternatively, Corzine attempts to move

for partial summary judgment on a single violation of Rule 166.3. However, as described below, that mis-states the law on how the number of violations is calculated. That request for partial summary judgment is not supported by the facts or law. *See supra* at 1-2.

***Penalties Should Be Calculated Based upon Each Violative Act.*** Corzine also complains that the complaint seeks to impose a civil monetary penalty ("CMP") for each illegal transfer of funds out of a customer segregated account ("4d account") while MF Global was under-segregated in violation of the Commodity Exchange Act and CFTC Regulations. Contrary to Corzine's assertions, which are unsupported by any case law, there is ample support in the law to calculate the amount of a CMP assessed against Corzine for each illegal transfer. 7 U.S.C. § 13a-1(d)(1)(A). Corzine's undue emphasis on the amount of any potential CMP that the CFTC would seek against him without regard to the magnitude of the undisputed deficiency is extraordinarily brazen but, more importantly, legally unsound. A penalty in a civil enforcement action must focus on the gravity of the defendant's actions as measured by "the betrayal of public interest and by the need to deter threats to the integrity of the markets." *Reddy v. CFTC*, 191 F.3d 109, 128 (2d Cir. 1999). It is undisputed there was a deficiency of almost $1 billion dollars from MF Global's customer segregated accounts. Every illegal transfer or other violative act is by definition a violation subject to a penalty; to rely on something other than "the number of violative acts would also produce the result that a defendant who engaged in thousands of repeated violations could be penalized under this provision no more than one who committed a handful of violations." *SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324, 2012 WL 1036087, at *3 (S.D.N.Y. Mar. 28, 2012) (calculating maximum penalty based on over 10,000 trades).[2] The mere fact the breach of trust of customer funds held in segregated accounts occurred due to so many illegal transfers should not deter the Court from following the statutory directive in calculating the penalty for Corzine.

***Complete Restitution Is Warranted in This Matter.*** Corzine's attempt to shield himself from liability without any legal authority for the remaining amount of restitution (namely, the pre-judgment interest) owed to MF Global customers[3] by blaming the bankruptcy process should not be countenanced by this Court. It is remarkable for the CEO who presided over MF Global's demise to then blame the bankruptcy process for the length of time it takes to repay customers. Of course, the Complaint seeks pre-judgment interest, and there is no good reason why Corzine should escape responsibility for affording *full* restitution to the innocent customers.

For the foregoing reasons, the Commission respectfully requests that the Court deny Corzine's request for permission to move for summary judgment or alternatively, partial summary judgment and instead grant permission for the Commission to seek summary judgment against Corzine.

---

[2] The Court of Appeals specifically affirmed the district court's use of each wrongful transaction. 725 F.3d 279, 288 n.7 (2d Cir. 2013) (otherwise vacating penalty on stipulation due to intervening Supreme Court case regarding the five-year statute of limitations).

[3] Pursuant to this Court's previous orders, the Customers were repaid the net equity value of their accounts as of October 31, 2011. The remaining restitution owed is the pre-judgment interest, which "is therefore ordinarily awarded, absent some justification for withholding it." *See CFTC v. Aurifex Commodities Research Co.*, 2008 WL 299002, at *11 (W.D. Mich. Feb. 1, 2008); *cf. SEC v. World Information Tech.*, 590 F.Supp.2d 574, 578 (S.D.N.Y. 2008) (similarly awarding prejudgment interest on disgorgement claim).

Respectfully submitted,

K. Brent Tomer
(646) 746-9738
Janine Gargiulo
(646) 746-9730
David W. Oakland
(646) 746-9769

cc: Matthew L. Mazur, Esq.  Christopher J. Barber, Esq.
    Dechert LLP              Williams, Montgomery & John
    *Counsel for Jon S. Corzine*   *Counsel for Edith O'Brien*

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff U.S. Commodity Futures Trading Commission.

SO ORDERED.

1-4-16
DATE          VICTOR MARRERO, U.S.D.J.