UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
JOSEPH DEANGELIS, et al.,            :        11 Civ. 7866 (VM) (JCF)
                                     :
                 Plaintiffs,         :
                                     :
        - against -                  :
                                     :
JON S. CORZINE, et al.,              :
                                     :
                 Defendants.         :
- - - - - - - - - - - - - - - - - - - -:
IN RE MF GLOBAL HOLDINGS LTD.        :        12 MD 2338
INVESTMENT LITIGATION                :
                                     :
                                     :        MEMORANDUM AND   ORDER
                                     :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        "Rule 26(b)(4)(B) [of the Federal Rules of Civil Procedure] is
clear as far as it goes." Wenk v. O'Reilly, No. 2:12-CV-474, 2014
WL 1121920, at *2 (S.D. Ohio March 20, 2014).   Indeed.   This
dispute reaches the rule's fuzzy edges.   Plaintiff U.S. Commodity
Futures Trading Commission (the "CFTC") seeks an order compelling
expert witness Jerry Markham and non-testifying consultants
Cornerstone Research ("Cornerstone"), both retained by counsel for
defendant Jon S. Corzine, to produce documents in response to a
subpoena duces tecum.   Mr. Markham and Cornerstone,   through
counsel for Mr. Corzine,[1] have refused to provide the requested
documents, arguing that the materials are protected from disclosure
by Rule 26(b)(4)(B), as they constitute drafts of Mr. Markham's
report.   The CFTC contends that the documents are not drafts.   For

---

[1] Hereinafter, Mr. Markham, Mr. Corzine, and Cornerstone will
be referred to collectively (and somewhat inaccurately) as the
"defendants."

1

the reasons that follow, the CFTC's motion is denied.

<u>Background</u>

For purposes of this motion, the long and complex history of this consolidated matter is (fortunately) irrelevant.  Suffice it to say this litigation arises from "the catastrophic collapse of MF Global Holdings Limited . . . in the closing days of October of 2011."  <u>In re MF Global Holdings Ltd. Securities Litigation</u>, 982 F. Supp. 2d 277, 288 (S.D.N.Y. 2013).

On November 13, 2015, after Mr. Markham submitted an expert report pursuant to Rule 26(a)(2)(B), the CFTC took his deposition. (Letter of K. Brent Tomer dated Dec. 22, 2015 ("CFTC Letter"), at 1).  During the deposition, Mr. Markham referenced a "write-up" and a "chart."  (CFTC Letter at 1).

> Q: . . . You had mentioned, though, that others assisted you.  Can you explain the delegation of work, what you did as opposed to those that assisted you did in connection first with you[r] opening and then in connection with your rebuttal?
>
> A: You're talking about Cornerstone?
>
> Q: Yes.
>
> A: Well, in the initial report, they were pulling depositions for me and exhibits and then I would read those and ask for more and then I started writing my report.  I would ask them for documents and exhibits.  I asked them to write a write-up on the kind of the last week of the -- of the MF Global in October and some of the events leading up to that and then . . . I had them check what I -- I had written and what my sources were.
>
> Q: . . . You said [Cornerstone] prepared something regarding a summary of the last week of October?
>
> A: That's correct, and some of the events leading up to that.
>
> Q: And leading up to that?

> A: I'd asked them to say -- I saw those events in the
> record.  Can you look these things up and -- and write it
> up for me?
>
> Q: And what, if anything, did you do with their summary
> or write-up that they gave you?
>
> A: I put it in my initial draft but later took it out.
> It was just -- I wanted to make sure I had kind of an
> overall picture of the thing.
>
> Q: So it was not incorporated into the final report?
>
> A: No. I mean there may be a paragraph or so, but I don't
> think so.

(Deposition of Jerry W. Markham dated Nov. 13, 2015 ("Markham
Dep."), attached as appendix to Letter of Matthew L. Mazur dated
Dec. 28, 2015 ("Corzine Letter"), at 27-28).  Later, the following
exchange occurred:

> Q: And do you know whether anyone from Cornerstone other
> than the summary that you told us about prepared any
> other types of summaries, memos, spreadsheets, schedules
> in connection with their work in assisting you?
>
> A: I'd asked them to obtain information about the -- the
> Chicago operations and I told them the people I want and
> I -- I needed a chart.  Like I wrote out a chart in the
> report and they helped prepare -- prepare that for me.

(Markham Dep. at 37).

Following the deposition, the CFTC served subpoenas on Mr.
Markham and Cornerstone seeking:

> Any and all non-privileged documents, including but not
> limited to, charts, summaries, memos, write-ups, notes
> and/or electronic communications, i.e., emails, created
> by Cornerstone or Markham.  Such documents should
> include, but not be limited to, write-ups and summaries
> relating to the last week of October 2011 at MF Global
> and the events leading up to that last week referenced on
> pages 27-31 of Markham's Deposition Transcript ("the
> Transcript") and charts and summaries relating to the
> Chicago Operations of MF Global referenced on pages 37-38
> of the Transcript.

(CFTC Letter at 1-2).  In response, the defendants indicated that the documents responsive to the subpoena were "protected . . . under the work-product doctrine and Rule 26" and that no documents would be produced.  (Corzine Letter at 2).[2]  After the parties met and conferred to discuss the issue, the defendants again stated that no documents would be produced in response to the subpoena.  (CFTC Letter at 2).  The CFTC now seeks an order compelling production.

Discussion

    A.  Legal Standard

Rule 26(b)(4)(B) provides as follows:  "Trial-Preparation Protection for Draft Reports or Disclosures.  Rules (26)(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."  This provision was added to the Rules in 2010 "to address concerns about expert discovery."  Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

Prior to the 2010 amendment, courts read Rule 26(a)(2) -- which itself was added in 1993 and which requires the disclosure of detailed reports prepared by expert witnesses who will testify at trial -- to authorize discovery "of all communications between counsel and expert witnesses and all draft reports." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment; see, e.g., Ling

---

[2] Despite the broad language the CFTC used in its subpoena, in the present motion it only advances arguments regarding the write-up and the chart.  As such, I confine my analysis to those two documents.

<u>Nan Zheng v. Liberty Apparel Co.</u>, No. 99 Civ. 9033, 2004 WL 1746772, at *2 (S.D.N.Y. Aug. 3, 2004) (stating that Rule 26(a)(2) requires disclosure of any material considered by expert witness "whether or not it would otherwise be protected by the work product doctrine").   The breadth of the disclosure mandated by Rule 26(a)(2) "had undesirable effects" that informed the 2010 amendment.   Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.    Concerned that disclosing "their collaborative interactions with expert consultants would reveal their most sensitive and confidential cases analyses," attorneys hired two sets of experts: one set that was engaged for purposes of consultation only and was exempt from many of the disclosure requirements, and another set that would testify at trial.   Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.   Moreover, attorneys "often fe[lt] compelled to adopt a guarded attitude toward their interaction with testifying experts," and testifying experts "adopt[ed] strategies that protect[ed] against discovery but also interfere[d] with their work."   Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment.

As a result of the 2010 amendment, Rule 26(a)(2) now requires the disclosure of all "facts or data" the expert witness considered in forming her opinions.[3]  Fed. R. Civ. P. 26(a)(2)(B)(ii).  "This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all

_____

[3] The 1993 amendment required the disclosure of all "data or other information."   Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment.

attorney-expert communications and draft reports." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment. The addition of Rule 26(b)(4)(B) "make[s] [the change to Rule 26(a)(2)(B)] explicit by providing work-product protection against discovery regarding draft reports and disclosures." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment. While the amendment to Rule 26(a)(2)(B) is "meant to limit disclosure to material of a factual nature," the phrase "facts or data" is to "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients" whether or not the expert ultimately relied on that material in forming an opinion. Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment.

Thus, the provisions of Rule 26 relating to expert disclosures, as modified by the 2010 amendment, seek to strike a balance. On the one hand, the expert disclosure requirements added to the Rules in 1993 stem from the notion that "fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony." In re Pioneer Hi-Bred International, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001); cf. Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment ("[A] prohibition against discovery of information held by an expert witness produces . . . the very evils that discovery has been created to prevent."). On the other hand, "the driving purpose of the 2010 amendment" to Rule 26 was to protect "attorney mental impressions, conclusions, opinions, or legal theories" from

6

discovery; "[t]he protections for draft reports and attorney-expert communications were targeted at the areas most vulnerable to the disclosure of opinion work product." Republic of Ecuador v. Mackay, 742 F.3d 860, 870 (9th Cir. 2014); accord Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1194-95 (11th Cir. 2013); Republic of Ecuador v. For the Issuance of a Subpoena Under 28 U.S.C. § 1782(a), 735 F.3d 1179, 1185-87 (10th Cir. 2013);[4] see also Wenk, 2014 WL 1121920, at *4 (noting that 26(b)(4)(B) protects drafts because "the drafting process ordinarily entails communications between the expert and counsel" and that disclosing drafts "is likely to include revelation of attorney work product").

    B.  Application

    "It is [] well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand." In re Grand Jury Subpoenas Dated March 19 and August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003).  The defendants seem to rely on two distinct arguments to support their claim of privilege. First, the defendants argue that, because the documents at issue "exist only in early, draft versions of the expert report that were clearly marked as 'drafts,'"[5] the documents' existence within those

---

    [4] Of the federal courts of appeal, only the Ninth, Tenth, and Eleventh Circuits have considered the impact of Rule 26(b)(4)(B)'s 2010 addition to the Federal Rules of Civil Procedure.

    [5] While I do not believe this is the defendants' argument, the suggestion that a non-privileged document attains privileged status under Rule 26(b)(4)(B) simply by including the word "draft" in the electronic file name is nonsense.  It is the substance of the document and the circumstances of its creation, not its label, that dictate whether it is, in fact, a draft.

drafts confers draft status on the documents. (Corzine Letter at 2). This argument fails for the simple reason that its factual premise lacks support in the evidence the defendants submitted.[6] However, the defendants also argue that the fact that (1) the documents were created for the purpose of being included in Mr. Markham's report, and (2) that they were actually included in early versions of the report, triggers the protection of Rule 26(b)(4)(B). (Corzine Letter at 2). In light of the text and purpose of Rule 26(b)(4)(B), I agree.

When parties dispute the meaning of a rule, courts begin their analyses with the words of that rule. If the "language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," judicial inquiry "must cease." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). Rule 26(b)(4)(B) extends the work product privilege to "drafts of any report or disclosure required under Rule 26(a)(2)." Fed. R. Civ. P. 26(b)(4)(B). Although the parties dispute whether the documents

---

[6] It is evident from Mr. Markham's deposition testimony that he requested that Cornerstone provide both a "write-up" or "summary of the last week of October" and a "chart" of "the Chicago operations" and that those documents exist (or existed) separate and apart from  the draft reports in which they were later included. Moreover, the documents the defendants submitted for in camera review do not persuade me that the write-up and the chart "exist only in early, draft versions" of Mr. Markham's report. With regard to the write-up, the simple fact that the defendants have submitted both (1) a document that they say "is the 'write-up'" -- meaning, presumably, the document that Cornerstone prepared -- and (2) a separate document (which they characterize as "a full draft of [Mr.] Markham's report") incorporating the write-up, undercuts the defendants' position. As for the chart, the draft report that the defendants submitted contains comments and editing marks which suggest that the chart exists as a document independent of the report itself.

at issue are drafts, neither party attempts to identify the plain meaning of that term. A draft is "[a] preliminary sketch or rough form of a writing or document, from which the final or fair copy is made." "Draft," Oxford English Dictionary (2d ed. 1989); see also "Draft," Webster's Third New International Dictionary Unabridged (2016) ("[A] preliminary or tentative sketch, outline, or version (as of a document or picture)."). Whether the write-up and chart at issue in this case fit this definition depends on the circumstances of their creation. Cf. In re Application of the Republic of Ecuador, No. 4:11mc73, 2012 WL 5519611, at *1-2 (N.D. Fla. Nov. 2, 2012) (document "drafted for inclusion in an expert report" deemed a draft, notes that "might later be used . . . in compiling a report or might never be used at all" deemed not drafts).

Fortunately, there is strong evidence in this case that the documents at issue were in fact created for use in Mr. Markham's expert report. First, Mr. Markham clearly implies in his deposition testimony that he requested the write-up and the chart so that he could include them in the report he was drafting. For example, when asked what he did with the write-up, Mr. Markham responded, "when I write up a report, I put [the write-up] in there and then I just keep changing the report." (Markham Dep. at 29). In describing the chart, Mr. Markham stated, "I wrote out a chart in the report and [Cornerstone] helped [] prepare that for me." (Markham Dep. at 37). In each case, it seems clear that, when he requested the documents, Mr. Markham anticipated that those

9

documents would form a part of the report he was drafting.  My <u>in camera</u> review of the documents at issue confirms that Mr. Markham did in fact insert the write-up and the chart into his draft report, providing persuasive evidence that these documents were created as preliminary versions of portions of Mr. Markham's expert report.

The CFTC's arguments as to why these documents are not drafts are unconvincing.[7]  First, its claim that "notes, summaries, memoranda, and other materials created by an expert or the expert's assistants in connection with drafting a[n] expert report" cannot be considered "drafts" (CFTC Letter at 2) proves too much.  An expert's notes setting out in detail the content and structure of her report, or even just a section of her report, could properly be shielded from disclosure by Rule 26(b)(4)(B).  <u>Cf.</u> <u>Wenk</u>, 2014 WL 1121920, at *7 (setting out factors that distinguish protected and discoverable expert notes).  To the extent that the CFTC suggests that only drafts of an <u>entire</u> report, rather than <u>portions</u> thereof, are protected under Rule 26(b)(4)(B), that contention lacks merit.  <u>Cf.</u> <u>In re Application of Republic of Ecuador</u>, 280 F.R.D. 506, 512 (N.D. Cal. 2012) (protecting "draft worksheets created by [expert] or his assistants" for use in expert report), <u>aff'd sub nom.</u>

_____

[7] In fact, one of the CFTC's arguments is so illogical that it hardly merits acknowledgment.  The agency suggests that, because Mr. Markham excluded the write-up and the chart from his final report, those documents cannot be deemed drafts.  (CFTC Letter at 2).  As the defendants point out, "the very nature of a draft [is] to change through the addition and/or subtraction of material." (Corzine Letter at 3).  A rule that shields draft reports while requiring the disclosure of material excluded from the final report would be self-defeating.

Republic of Ecuador v. Mackay, 742 F.3d 860 (9th Cir. 2014).  Such a distinction is nowhere implied in the rule itself and would be at odds with the advisory committee's note, as it might unnecessarily interfere with the drafting of expert reports by, for example, preventing an expert from drafting a report one section at a time. See Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment (noting problem of experts "adopt[ing] strategies that protect against discovery but also interfere with their work").  Second, the CFTC argues that the broad expert disclosure and discovery endorsed in the 2010 advisory committee note could be undermined by an expert who "briefly insert[s]" discoverable material into a draft report in order to obtain Rule 26(b)(4)(B)'s protection. (CFTC Letter at 3).  Whether or not the CFTC's concern is valid in the abstract, my review of the evidence convinces me that no such chicanery has occurred in this case.

In sum, the evidence presented is sufficient to establish that the documents the CFTC requested are shielded from disclosure by Rule 26(b)(4)(B).  The documents were prepared not simply to aid Mr. Markham in drafting his report, but rather to form part of the report itself and were in fact included in preliminary versions of that report.  They are, in short, drafts of his report.

Conclusion

For the foregoing reasons, the CFTC's motion to compel is denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          January 7, 2016

Copies transmitted this date via ECF:

All counsel of record