

**Lowenstein Sandler**

Thomas E. Redburn Jr.
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: 973 597 2456
F: 973 597 2457
tredburn@lowenstein.com

February 23, 2018

VIA FACSIMILE (212-805-6382)

The Hon. Victor Marrero, U. S. D. J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 2/23/18

Re: *In re MF Global Holdings Limited Securities Litigation*, 1:11-cv-07866
Request for Pre-Motion Conference for:
Motion to Strike Lead Counsel's Reply or for Leave to File a Sur-reply

Dear Judge Marrero:

We represent Cadian Capital Management LP ("Cadian"), a class member in the above-referenced matter. On February 20, 2018, Lead Counsel filed its Reply Memorandum in Further Support of Lead Counsel's Motion for Resolution of Disputed Claim ("LC Reply") and a Supplemental Declaration of Rochelle Feder Hansen ("Hansen Supp. Decl."). (Docs. 1172-73.) These submissions are replete with new factual and legal assertions that could – and should – have been made in Lead Counsel's moving papers. Pursuant to Your Honor's Individual Practices, Practice II(A)(1), Cadian thus respectfully requests a pre-motion conference concerning Cadian's proposed motion to strike all new arguments and factual matters improperly raised in Lead Counsel's reply papers or, in the alternative, for leave to file a sur-reply.

**A. Background.** This dispute concerns Cadian's right as a class member to receive the full amount of its Fund Recognized Claim calculated in conformity with the Plan of Allocation that Lead Counsel proposed, the class accepted and the Court approved. In its reply papers, Lead Counsel puts forth a host of brand new arguments and factual evidence without even a word as to why they were not presented in its moving papers. None of the material is newly discovered as it consists of years-old emails. Most egregiously, Lead Counsel now asserts for the first time that it had an "agreement" with Cadian's counsel – never mentioned in its moving brief – that somehow precludes Cadian from receiving what it is entitled to under the Plan of Allocation. (LC Reply at 1-3; 5-9.) Other new arguments and evidence include (1) a June 2015 email that supposedly shows Cadian never intended to opt out of the PwC Settlement Class (but actually proves the *opposite*) (Hansen Supp. Decl., Ex. 2; LC Reply at 8-9), (2) a new, frivolous interpretation of Paragraph 18(a) of the Plan of Allocation that argues that an allocation "from" the settlement funds is different than an allocation "of" the settlement funds (LC Reply at 6-7), and (3) a request that Cadian now be completely disallowed from any allocation under the settlement, a new form of relief that utterly contradicts Lead Counsel's previous admission that Cadian had a Recognized loss of $59 million and was entitled to (at least) $3 million (*id.* at 9-10). Importantly, all of these new arguments are purportedly affirmative bases for why Lead Counsel (in its view) correctly calculated Cadian's settlement claim. As such, they were

The Hon. Victor Marrero, U. S. D. J.                                                            February 23, 2018
                                                                                                                Page 2

required to be raised in Lead Counsel's motion so that Cadian would have an opportunity to respond to them and not be sandbagged by arguments raised for the first time in *reply* papers.

**B. The New Arguments and Material in Lead Counsel's Reply Should Be Stricken.** It is axiomatic that arguments raised for the first time in a reply brief are waived and should not be considered by the Court. *Melo v. United States*, 825 F. Supp. 2d 457, 465 (S.D.N.Y. 2011) (Marrero, J.) (noting that defendant "waived this argument because he raised it for the first time in his Reply"); *PrecisionIR Inc. v. Clepper*, 693 F. Supp. 2d 286, 291 n.2 (S.D.N.Y. 2010) (Marrero, J.) (finding an argument raised for the first time in a reply brief to be "procedurally-improper" and declining to consider it); *see also United States v. Greer*, 285 F.3d 158, 170 n. 3 (2d Cir. 2002) (argument raised for the first time in reply brief is waived). Indeed, this Court's Individual Practices, Practice II(D)(1) make explicitly clear that new matters raised for the first time on reply will not be considered. This rule prevents movants from sandbagging adversaries and also ensures the Court obtains the benefit of adversarial briefing on all contested points.

Lead Counsel's inclusion in its reply papers of the raft of new arguments and evidence discussed above – all of which could have been presented in its moving brief – flouts these clear directives, prejudices Cadian, and deprives the Court of the benefits of adversarial briefing. All of these new arguments were waived, and none of the new material should be considered by the Court. Indeed, reaching perhaps the pinnacle of procedural impropriety, Lead Counsel even seeks belatedly to request new relief – prohibiting class member Cadian from any participation under the Plan of Allocation – without even filing a new motion. This kind of chicanery should not be tolerated. All new material and arguments presented by Lead Counsel for the first time on reply – including the entirety of the Hansen Supplemental Declaration – should be stricken.

**C. In the Alternative, the Court Should Allow Cadian to File a Brief Sur-reply.** In the alternative, the Court should grant Cadian leave to file a short sur-reply responding to Lead Counsel's new arguments and evidence. *See, e.g., Michael v. Bloomberg L.P.*, No. 14CV2657TPGKNF, 2016 WL 861398, at *1 (S.D.N.Y. Feb. 23, 2016) (granting leave to file sur-reply); *Terra Energy & Res. Techs., Inc. v. Terralina Pty. Ltd.*, No. 12 CIV. 1337 WHP, 2014 WL 1777984, at *3 (S.D.N.Y. Apr. 30, 2014) (granting sur-reply where reply raised new allegations and requested new relief). This would cure the prejudice to Cadian and ensure the Court receives the benefit of both sides' views on the newly-presented arguments and material.

Cadian's sur-reply would elaborate upon the following points: *First*, Lead Counsel's argument that use of the word "from" rather than "of" in Paragraph 18(a) of the Plan of Allocation somehow defeats Cadian's claim is frivolous. Paragraph 18(a) provides that a member of either the PwC Settlement Class or the Individual Defendant Settlement Class is entitled "to receive a *pro rata* distribution from Settlement Fund #1[.]" (Hansen Decl., Ex. 3 ¶ 18(a).) A *pro rata* share is a *pro rata* share, regardless of whether it is "of" or "from" the fund. "Of" and "from" mean the same thing in this context. Indeed, this is confirmed by two operative paragraphs of the Plan that Lead Counsel *ignores*. Paragraph 29 provides that "each Authorized Claimant shall receive a distribution equal to a *pro rata* share *of* the Fund based on the amount of the Authorized Claimant's Fund Recognized Claim in comparison to the total Fund Recognized Claims of all Authorized Claimants *with respect to such Fund*." (*Id.* ¶ 29 (emphasis added).) And paragraph 31 provides that an "Authorized Claimant's 'Distribution Amount' shall be the sum of his, her or its *pro rata* share *of* each Fund." (*Id.* ¶ 31 (emphasis added).) The Plan thus



The Hon. Victor Marrero, U. S. D. J.  February 23, 2018
Page 3

clearly provides that a Claimant is entitled to receive its *pro rata* share *of* Fund #1 based on the amount of its Fund Recognized Claim. As Cadian's opposition papers already refuted Lead Counsel's initial attempt to distort Paragraph 18(a)'s plain language (Cadian Mem. at 14-17). Lead Counsel cannot point to anything in the Plan's actual text to support its arbitrary reduction of Cadian's share of Fund #1.

*Second,* the alleged "agreement" with Lead Counsel completely *undercuts* Lead Counsel's arguments here and *supports* Cadian's position. To begin, Lead Counsel has its facts wrong. Cadian settled its individual claim against the Individual Defendants and agreed that the settlement class would be defined to exclude it. However, Cadian was clear that it would remain a *putative* member of the PwC Class (which had not been settled) and would retain the right to either accept any settlement the class reached with PwC or – if Cadian deemed appropriate – to opt out and pursue an individual claim against PwC. This is confirmed by both of the emails proffered by Lead Counsel – which show that Cadian reserved the option to remain in the PwC Class or opt out. (Hansen Supp. Decl., Ex. 1.) Nowhere in the December 2014 email is there any indication that Cadian agreed either to waive its right to opt out of the PwC Class or, if it chose to remain in a class settlement with PwC, to take less than what the plan of allocation for that settlement would entitle it to receive. Cadian fully complied with the terms listed in the December 2014 email. Lead Counsel's assertion that Cadian somehow agreed to accept different treatment under the Plan of Allocation is simply made up out of whole cloth.

Furthermore, the June 2015 email attached by Lead Counsel fatally undermines its contention that Cadian never intended to opt out of the PwC Settlement Class. (*Id.,* Ex. 2.) That email plainly states that Cadian still possessed its right to opt out of the PwC Class ("Cadian has separate claims and is willing to litigate them") and considered exercising that right ("Cadian is threatening an opt-out"). Cadian at that time still had timely fraud claims against PwC (a point which Lead Counsel does not dispute). (Cadian Mem. at 6.) Tellingly, Lead Counsel never responded to the June 2015 email, as one would have expected had Lead Counsel truly believed at the time that Cadian had surrendered its right to opt out. Although Cadian considered opting out, when it reviewed the Plan of Allocation and the fact that it would receive its *pro rata* share of Fund #1 – consisting of the proceeds of both settlements – Cadian *then* decided not to opt out of the PwC Settlement Class. (*See Id.* at 6-7, 21-22.) The Court then approved the Plan. Lead Counsel is now equitably estopped from seeking to retroactively amend the Plan. (*Id.* at 20-23.)

*Finally,* Lead Counsel's newly-minted argument that Cadian should receive nothing because it somehow breached its "agreement" with Lead Counsel is meritless. As discussed above, there was no breach. It is apparent that Lead Counsel harbors some resentment against Cadian for originally exercising its opt-out right and is dissatisfied with the recovery it now realizes Cadian is entitled to receive under the Plan of Allocation. However, neither reason is justification to blame Cadian (and its counsel) through a continuing stream of hyperbolic, emotional and unprofessional attacks. Cadian is entitled to have its claim paid in accordance with the plain language of the Plan of Allocation that was drafted and proposed by Lead Counsel, accepted by the class, relied upon by Cadian and approved by the Court.

**D. Conclusion.** For the foregoing reasons, the Court should strike all new arguments and materials from Lead Counsel's reply papers or, alternatively, permit Cadian to file a sur-reply.



The Hon. Victor Marrero, U. S. D. J.                              February 23, 2018
                                                                  Page 4

Respectfully submitted,

Thomas E. Redburn Jr.

TER:rb

26436/2
2/23/18 49907486.3

cc:   Rochelle Hansen, Bernstein Litowitz – Lead Counsel (via electronic mail)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Cadian Capital Management LP.

SO ORDERED.

2-22-18
DATE                VICTOR MARRERO, U.S.D.J.


Lowenstein Sandler